UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

POLM FAMILY FOUNDATION, INC.          )
P.O. Box 1071                          )
Severna Park, MD 21146                 )
                                       )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )          Civil Action No. _____
UNITED STATES OF AMERICA and           )
THE INTERNAL REVENUE SERVICE           )
1111 Constitution Avenue, N.W.         )
Washington, DC  20224                  )
                                       )
                                       )
        Defendants.                    )
_____        )
Serve On:                              )
                                       )
    Civil Processing Clerk             )
    U.S. Attorney's Office             )
    District of Columbia               )
    Judiciary Center                   )
    Civil Division                     )
    10th Floor                         )
    555 Fourth Street, N.W.            )
    Washington, D.C.  20530            )
                                       )
    The Honorable Michael B. Mukasey   )
    Attorney General                   )
    U.S. Department of Justice         )
    950 Pennsylvania Avenue, N.W.      )
    Washington, D.C.  20530-0001       )
                                       )
    The Honorable Linda E. Stiff       )
    Acting Commissioner                )
    Internal Revenue Service           )
    1111 Constitution Avenue, N.W.     )
    Room 3000                          )
    Washington, D.C.  20224            )

## COMPLAINT

Plaintiff, Polm Family Foundation, Inc. (the "Foundation"), by its undersigned attorneys, hereby files suit seeking declaratory relief against the Defendants, the United States of America and the Internal Revenue Service ("IRS"), and further states as follows:

## PARTIES

1.  The Foundation is a non-stock corporation, organized under and by virtue of the laws of the State of Maryland.

2.  The Defendants are the United States of America and the IRS, which is a federal bureau within the Department of the Treasury, with its principle place of business located at 1111 Constitution Avenue, N.W., Washington, D.C.  20224.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the parties hereto and the subject matter hereof, and venue is proper pursuant to 28 U.S.C. § 1346(e), 28 U.S.C. § 2201, and 26 U.S.C. § 7428.  This is an action for a declaratory judgment for the purpose of determining a question of actual controversy between the parties as more fully appears below.

## FACTS

4.  The Foundation was incorporated on or about July 27, 2006. It is organized and operated exclusively for charitable or religious purposes which constitute public charitable

purposes under the laws of the State of Maryland by conducting and supporting activities for the benefit of, to perform the functions of, and/or to carry out the purposes of (collectively, the "Qualified Purposes") of the class of organizations ("Qualified Organizations") described in Section 501(c)(3) and qualified under Sections 509(a)(1) or 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time (the "Code"), which support, promote, and/or perform public health and/or Christian objectives, including but not limited to Christian evangelism, edification and stewardship (all of such organizations collectively being the "Supported Class").

5. On or about April 10, 2007, the Foundation petitioned the IRS for tax exempt status by filing a substantially complete Form 1023 pursuant to Revenue Procedure 2007-52. This substantially complete form was submitted to the IRS Center in Covington, Kentucky. In particular, the Foundation sought classification as an exempt organization under Section 501(c)(3) of the Code and as a Type 2 supporting organization under Section 509(a)(3) of the Code. A copy of this Form 1023 and supporting documentation is attached hereto as Exhibit A.

6. On or about April 12, 2007, the IRS acknowledged to the Foundation that it received its Form 1023. A copy of this acknowledgement letter is attached hereto as Exhibit B. However, in that written acknowledgment, the IRS warned the Foundation that it was "experiencing delays in working applications that require further development" but did not specify a date by which a determination was expected to be reached.

7. On September 27, 2007, Mrs. A. Morris of the IRS District Office in Baltimore, Maryland requested additional information from the Foundation in order to assist with the consideration and processing of the Foundation's application. A copy of that letter request is

attached hereto as Exhibit C. The requested information was provided by the Foundation to Mrs.

Morris on October 31, 2007. A copy that submission is attached hereto as Exhibit D.

8.    After the 270 day period elapsed on January 7, 2008, the Foundation had three

telephone conversations with Mrs. Morris, in which all but one issue was resolved with the IRS.

Copies of letters dated March 6, 2008 and March 19, 2008 confirming the status of the case are

attached hereto as Exhibits E and F, respectively

9.    The remaining unresolved issue is whether the creators/donors to the Foundation can

appoint independent Managing Directors to run the Foundation. The IRS claims, on page 5 of its

September 27, 2007 request for additional information, that "[s]ince Mr. Polm [the

creator/donor] and his relatives appoint the governing board, it [the Foundation] is controlled

directly by disqualified persons."

10.    This issue has already been decided against the IRS by this Court in *The Thomas

Kinkade Foundation Charitable Trust v. United States of America and The Internal Revenue

Service* (Civil Action No. 1:02-CF-01973 RMC), which found by necessary implication that the

appointment power held by a creator/donor did not constitute direct or indirect control under

Section 509(a)(3)(C) of the Code. Copies of the Memorandum Opinion and Order in that case

are attached hereto as Exhibits G and H, respectively.

11.    This justification for denial of tax exempt status is incorrect, not factually

supportable, and contrary to IRS regulations, governing case law, and most importantly, this

Court's prior decision on point.

12.    The IRS has a statutory obligation to provide a determination letter to the Foundation

within 270 days of the filing of a substantially complete Form 1023. *See* 26 U.S.C. § 7428(b)(2).

4

As of March 17, 2008 (nearly 365 days from the filing), the Foundation had not received a determination from the IRS, and is now well beyond the statutory timeframe within which one was required to have been issued.

## COUNT I

### (Declaratory Judgment)

13. The provisions of paragraphs 1 through 12 above are hereby incorporated by reference as if fully set forth herein.

14. Under 28 U.S.C. § 2201 of the Declaratory Judgment Act and 26 U.S.C. § 7428 of the Code, this Court is empowered to issue a declaratory judgment regarding the initial qualification of an organization as an organization described in Section 501(c)(3) of the Code, and of an organization as a private foundation under Section 509(a) of the Code.

15. The Foundation hereby seeks an Order declaring that it is exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code and as a Type 2 supporting organization described in Section 509(a)(3) of the Code.

16. The unexplained and inexcusable delay in ruling on the substantially complete Form 1023 Petition has caused the Foundation hardship and irreparable injury by thwarting significant and worthy donations from ready and willing donors. Accordingly, there is an actual controversy within the jurisdiction of this Court and declaratory relief will effectively adjudicate the rights of the parties.

17. The Foundation is entitled to the relief requested because more than 270 days have passed since the filing of the substantially complete Form 1023 on April 10, 2007, and through no fault of the Foundation, the IRS still has not issued a Notice of Determination with respect to

the Petition. Due to the passage of the statutorily prescribed timeframe, all administrative remedies are deemed exhausted as a matter of law pursuant to 26 U.S.C. § 7428(b)(2).

18. Pursuant to § 7430(a) of the Code, the Foundation is entitled to reasonable attorney's fees, costs and expenses in the prosecution of this action.

WHEREFORE, for the foregoing reasons, the Foundation respectfully requests that this Honorable Court enter an Order:

(a) declaring that Polm Family Foundation, Inc. is exempt from federal income tax under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code and as a Type 2 supporting organization described in Section 509(a)(3) of the Code; and

(b) awarding the Foundation its reasonable attorney's fees, costs and expenses incurred in the prosecution of this action; and

(c) awarding such other and further relief as this Court deems necessary and proper.


Respectfully submitted,


Russell J. Pope (No. 426865)
POPE & HUGHES
29 W. Susquehanna Avenue
Suite 110
Towson, Maryland 21204
(410) 494-7777

Attorneys for Polm Family Foundation, Inc.

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Polm Family Foundation, Inc.<br>P. O. Box 1071<br>Severna Park, MD 21146 | United States of America and The Internal Revenue Service<br>1111 Constitution Avenue, N.W.<br>Washington, D.C. 20224 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Anne Arundel, MD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Russell J. Pope, Esquire
POPE & HUGHES, P.A.
29 W. Susquehanna Ave., Suite 110
Towson, MD 21204
410-494-7777

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
  Plaintiff

● 2 U.S. Government
  Defendant

○ 3 Federal Question
  (U.S. Government Not a Party)

○ 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one in a corresponding Nature of Suit**)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If<br>Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☒ 870 Taxes (US plaintiff or<br>defendant<br>☐ 871 IRS-Third Party 26<br>USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure<br>of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational<br>Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC<br>Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced &<br>Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>Exchange<br>☐ 875 Customer Challenge 12 USC<br>3410<br>☐ 900 Appeal of fee determination<br>under equal access to Justice<br>☐ 950 Constitutionality of State<br>Statutes<br>☐ 890 Other Statutory Actions (if<br>not administrative agency<br>review or Privacy Act |

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

26 USC Sec. 7428; 28 USC Sec. 2201 - Declaratory Judgment seeking tax exempt status

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____ Check YES only if demanded in complaint
JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 3/24/08   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

EXHIBIT A - 1

EMANUEL J. KALLINA, II *
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ *

* Also licensed to practice in D.C.
• Only licensed to practice in Louisiana

# KALLINA & ASSOCIATES, LLC
## LAW OFFICE
### THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND  21204

STAFF:
Cheryl A. Jones
Robert M. Sk1pparek
Antoinette C. Lew
Erin T. Mayer
Lorraine M. Smick

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

April 10, 2007

**VIA FEDERAL EXPRESS**
Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

Re:    Application for Recognition of Exemption
Taxpayer:    Polm Family Foundation, Inc.
EIN:    20-5661841

Dear Sir or Madam:

Enclosed please find a completed Application for Recognition of Exemption (Form 1023) and Schedule D as part of the request for a determination by the Polm Family Foundation, Inc. ("Foundation") to be recognized as a tax-exempt supporting organization under Section 509(a)(3) of the Internal Revenue Code of 1986, as amended ("Code"). This Application includes the following:

1.    Completed Form 1023, to the extent of pages 1 through 12 (Parts I through XI), Schedule D, and attachments relating thereto;
2.    A user fee in the amount of $750;
3.    Form 1023 Checklist; and
4.    Copies of the Foundation's Articles of Incorporation and By-Laws (See, tabs marked "V" and "VI" respectively in the Submission Binder).

It is submitted that the Foundation comes within the intent of Code Section 509(a)(3) and the Treasury Regulations thereunder.  In accordance with its organizing documents, the Foundation has been formed for the support or benefit of, to perform the functions of, or to carry out the purposes of the class of charities which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code ("Qualified Organizations"), as described in Treasury Regulation section 1.509(a)-4(g), whose purposes are similar to, but no

Internal Revenue Service
April 10, 2007
Page 2 of 2

broader than the purposes designated by the Foundation's Articles of Incorporation and By-Laws ("Supported Class"). Specifically, the Foundation meets the Organizational and Operational Tests under Code Section 509(a)(3) by being "supervised or controlled in connection with" one or more Qualified Organizations within the Supported Class.

Pursuant to Section 2.4 of the Foundation's By-Laws, in accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Foundation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class.

*For these reasons, the Foundation qualifies as a Code Section 509(a)(3) supporting organization.*

**MISCELLANEOUS**

The issues pending with respect to this Application for Recognition of Exemption are not now pending before any field office of the Internal Revenue Service.

A Power of Attorney (Form 2848), authorizing Kallina & Associates, LLC, to represent the Foundation before the Internal Revenue Service with respect to this matter is also enclosed. It is requested that all correspondence with respect to this Application be addressed to me. If any additional information is desired, please telephone me at the number set forth above.

A conference is hereby requested, if any decision should be under consideration inconsistent with the requested exemption letter, before any such decision is actually made.

Thank you for your consideration.

Respectfully submitted,

Emanuel J. Kallina, II

EJK/caj
Enclosures
cc:    Mr. Richard E. Polm, Director
F:\Work\Polm, Rick\Documents\Polm Family Foundation\Cover letter to IRS.doc

**POLM FAMILY FOUNDATION INC**
PO BOX 1071
SEVERNA PARK, MD 21146

1002

7-11-520

DATE 1/26/07

PAY
TO THE
ORDER OF   US TREASURY

$ 750.00

SEVEN HUNDRED FIFTY AND NO/100————————————————— DOLLARS

**M&T Bank**
Manufacturers and Traders Trust Company
Severna Park Office

FOR

⑈00100 2⑈ ⑆052000113⑆ 984173224⑈

# Polm Family Foundation, Inc.

Application for Recognition of Exemption (Form 1023)

SUBMISSION BINDER

## TABLE OF CONTENTS

|  | Tab |
|---|---|
| Form 1023 Checklist | I |
| Form 2848, Power of Attorney and Declaration of Representative | II |
| Cover Letter | III |
| Application for Recognition of Exemption (Form 1023) | IV |
| Copy of Polm Family Foundation, Inc. Articles of Incorporation | V |
| Copy of Polm Family Foundation, Inc. By-Laws | VI |
| Attachments to Form 1023 | VII |

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Table of Contents.doc

# Tab I

# Form 1023 Checklist
## (Revised June 2006)

Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code

___

**Note.** *Retain a copy of the completed Form 1023 in your permanent records. Refer to the General Instructions regarding Public Inspection of approved applications.*

**Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.**

☒ Assemble the application and materials in this order:
- Form 1023 Checklist
- Form 2848, *Power of Attorney and Declaration of Representative* (if filing)
- Form 8821, *Tax Information Authorization* (if filing)
- Expedite request (if requesting)
- Application (Form 1023 and Schedules A through H, as required)
- Articles of organization
- Amendments to articles of organization in chronological order
- Bylaws or other rules of operation and amendments
- Documentation of nondiscriminatory policy for schools, as required by Schedule B
- Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
- All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

☒ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

☒ Employer Identification Number (EIN)

☒ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.
- You must provide specific details about your past, present, and planned activities.
- Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
- Describe your purposes and proposed activities in specific easily understood terms.
- Financial information should correspond with proposed activities.

☒ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | |
|---|---|---|
| Schedule A  Yes ___  No _X_ | Schedule E  Yes ___  No _X_ |
| Schedule B  Yes ___  No _X_ | Schedule F  Yes ___  No _X_ |
| Schedule C  Yes ___  No _X_ | Schedule G  Yes ___  No _X_ |
| Schedule D  Yes _X_  No ___ | Schedule H  Yes ___  No _X_ |

☒ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.

- Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) <u>Page 1, Item Third</u>
- Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law <u>Page 3, Item Eighth</u>

☒ Signature of an officer, director, trustee, or other official who is authorized to sign the application.

- Signature at Part XI of Form 1023.

☒ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
P.O. Box 192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

Tab II

**Form 2848**
(Rev. March 2004)
Department of the Treasury
Internal Revenue Service

# Power of Attorney
## and Declaration of Representative

► Type or print. ► See the separate instructions.

OMB No. 1545-0150

For IRS Use Only

Received by:
Name _____
Telephone _____
Function _____
Date _____

**Part I**  **Power of Attorney**
*Caution: Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1   Taxpayer Information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Palm Family Foundation, Inc.<br>P.O. Box 1071<br>Severna Park, Maryland 21146 | | 20-5661841 |
| | Daytime telephone number<br>410-987-3100 | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2   Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Emanuel J. Kallina, II<br>1122 Kenilworth Drive, Suite 507<br>Towson, MD 21204 | CAF No. 2600-86715R<br>Telephone No. 410-377-2170<br>Fax No. 443-797-1147<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | |
| K. Brigid Peterson<br>1122 Kenilworth Drive, Suite 507<br>Towson, MD 21204 | CAF No. 0303-34441R<br>Telephone No. 410-377-2170<br>Fax No. 443-797-1147<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | |
| Ellen M. Hennessey<br>1122 Kenilworth Drive, Suite 507<br>Towson, MD 21204 | CAF No. 03-0039196R<br>Telephone No. 410-377-2170<br>Fax No. 443-797-1147<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3   Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Application for Recognition of Tax Exempt Status | Form 1023 | 2006-2007-2008 |
| Income Tax Return | Form 990 | 2006-2007-2008 |
| | | |

**4   Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific uses not recorded on CAF. .................... ► ☐

**5   Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See Unenrolled Return Preparer on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____
_____
_____
_____

**6   Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ►

For Privacy Act and Paperwork Reduction Notice, see page 4 of the Instructions.
ISA
STF FED4675F.1

Form **2848** (Rev. 3-2004)

Form 2848 (Rev. 5-2004)                                                                                    Page 2

7    Notices and communications. Original notices and other written communications will be sent to you and a copy to the
     first representative listed on line 2.
  a  If you also want the second representative listed to receive a copy of notices and communications, check this box .... ▶ ☐
  b  If you do not want any notices or communications sent to your representative(s), check this box .................. ▶ ☐
8    Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier
     power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by
     this document. If you do not want to revoke a prior power of attorney, check here ...................... ▶ ☐
     **YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**
9    Signature of taxpayer(s). If a tax matter concerns a joint return, both husband and wife must sign if joint representation is
     requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor,
     receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf
     of the taxpayer.

     ▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| Signature | Date | Title (if applicable) |
|---|---|---|
| *R[signature]* | 2\12\07 | Director |
| Richard E. Polm | | Polm Family Foundation, Inc. |
| Print Name       PIN Number | | Print name of taxpayer from line 1 if other than individual |
| Signature | Date | Title (if applicable) |
| Print Name       PIN Number | | |

**Part II**   Declaration of Representative

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic
Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

• I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
• I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning
  the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
• I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
• I am one of the following:

  a  Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
  b  Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
  c  Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
  d  Officer — a bona fide officer of the taxpayer's organization.
  e  Full-Time Employee — a full-time employee of the taxpayer.
  f  Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
  g  Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the
     authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
  h  Unrolled Return Preparer — the authority to practice before the Internal Revenue Service is limited by Treasury Department
     Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under
     examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL
  BE RETURNED. See the Part II instructions.**

| Designation — insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | Maryland | | |
| a | Maryland | *K. Brigid Peterson* | 4/9/07 |
| a | Maryland | *[signature]* | 4/10/07 |

STF FED4575F.2                                                                              Form **2848** (Rev. 3-2004)

Form 2848 (Rev, 3-2004)                                                                                                    Page 2

7    Notices and communications. Original notices and other written communications will be sent to you and a copy to the
     first representative listed on line 2.
   a   If you also want the second representative listed to receive a copy of notices and communications, check this box  ► ☐
   b   If you do not want any notices or communications sent to your representative(s), check this box  ..................... ► ☐
8    Retention/revocation of prior power(s) of attorney. The filing of this power of attorney automatically revokes all earlier
     power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by
     this document. If you do not want to revoke a prior power of attorney, check here  ........................................ ► ☐
     YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.

9    Signature of taxpayer(s). If a tax matter concerns a joint return, both husband and wife must sign if joint representation is
     requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor,
     receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf
     of the taxpayer.

     ► IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.

-------------------------------------           ---------------------------           -------------------------------
            Signature                                  2/12/07                                  Director
                                                         Date                                Title (if applicable)

       Richard E. Palm                  [        ]              Palm Family Foundation, Inc.
-------------------------------------   [        ]   ---------------------------------------------------
          Print Name                      PIN Number           Print name of taxpayer from line 1 if other than individual

-------------------------------------           ---------------------------           -------------------------------
            Signature                                    Date                                Title (if applicable)

-------------------------------------   [        ]
          Print Name                      PIN Number

---

**Part II**    Declaration of Representative

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic
Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:
   • I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
   • I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning
     the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
   • I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
   • I am one of the following:
   a   Attorney — a member in good standing of the bar of the highest court of the jurisdiction shown below.
   b   Certified Public Accountant — duly qualified to practice as a certified public accountant in the jurisdiction shown below.
   c   Enrolled Agent — enrolled as an agent under the requirements of Treasury Department Circular No. 230.
   d   Officer — a bona fide officer of the taxpayer's organization.
   e   Full-Time Employee — a full-time employee of the taxpayer.
   f   Family Member — a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).
   g   Enrolled Actuary — enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the
       authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).
   h   Unenrolled Return Preparer — the authority to practice before the Internal Revenue Service is limited by Treasury Department
       Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under
       examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

     ► IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL
       BE RETURNED. See the Part II instructions.

| Designation — insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | Maryland | | 4/10/07 |
| a | Maryland | Robert Peterson | 4/9/07 |
| d | Maryland | | 4/10/07 |

STF FED4676F.2                                                                                       Form **2848** (Rev. 3-2004)

Tab III

EMANUEL J. KALLINA, II •
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ •

• Also licensed to practice in D.C.
- Only licensed to practice in Louisiana

# KALLINA & ASSOCIATES, LLC
## LAW OFFICE
### THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Robert M. Kirkpatrick
Antoinette C. Law
Erin T. Mayer
Lorraine M. Smith

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

April 10, 2007

**VIA FEDERAL EXPRESS**
Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

  Re:  Application for Recognition of Exemption
     Taxpayer: Polm Family Foundation, Inc.
     EIN:   20-5661841

Dear Sir or Madam:

  Enclosed please find a completed Application for Recognition of Exemption (Form 1023) and Schedule D as part of the request for a determination by the Polm Family Foundation, Inc. ("Foundation") to be recognized as a tax-exempt supporting organization under Section 509(a)(3) of the Internal Revenue Code of 1986, as amended ("Code"). This Application includes the following:

1. Completed Form 1023, to the extent of pages 1 through 12 (Parts I through XI), Schedule D, and attachments relating thereto;
2. A user fee in the amount of $750;
3. Form 1023 Checklist; and
4. Copies of the Foundation's Articles of Incorporation and By-Laws (See, tabs marked "V" and "VI" respectively in the Submission Binder).

  It is submitted that the Foundation comes within the intent of Code Section 509(a)(3) and the Treasury Regulations thereunder. In accordance with its organizing documents, the Foundation has been formed for the support or benefit of, to perform the functions of, or to carry out the purposes of the class of charities which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code ("Qualified Organizations"), as described in Treasury Regulation section 1.509(a)-4(g), whose purposes are similar to, but no

Internal Revenue Service
April 10, 2007
Page 2 of 2

broader than the purposes designated by the Foundation's Articles of Incorporation and By-Laws ("Supported Class"). Specifically, the Foundation meets the Organizational and Operational Tests under Code Section 509(a)(3) by being "supervised or controlled in connection with" one or more Qualified Organizations within the Supported Class.

Pursuant to Section 2.4 of the Foundation's By-Laws, in accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Foundation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class.

*For these reasons, the Foundation qualifies as a Code Section 509(a)(3) supporting organization.*

**MISCELLANEOUS**

The issues pending with respect to this Application for Recognition of Exemption are not now pending before any field office of the Internal Revenue Service.

A Power of Attorney (Form 2848), authorizing Kallina & Associates, LLC, to represent the Foundation before the Internal Revenue Service with respect to this matter is also enclosed. It is requested that all correspondence with respect to this Application be addressed to me. If any additional information is desired, please telephone me at the number set forth above.

A conference is hereby requested, if any decision should be under consideration inconsistent with the requested exemption letter, before any such decision is actually made.

Thank you for your consideration.

Respectfully submitted,

Emanuel J. Kallina, II

EJK/caj
Enclosures
cc:    Mr. Richard E. Polm, Director
F:\Work\Polm, Rick\Documents\Polm Family Foundation\Cover letter to IRS.doc

Tab IV

Form **1023**
(Rev. June 2006)
Department of the Treasury
Internal Revenue Service

**Application for Recognition of Exemption**
**Under Section 501(c)(3) of the Internal Revenue Code**

OMB No. 1545-0056

Note: *If exempt status is approved, this application will be open for public inspection.*

Use the instructions to complete this application and for a definition of all **bold** items. For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at www.irs.gov for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I – XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

**Part I**  Identification of Applicant

| | |
|---|---|
| 1  Full name of organization (exactly as it appears in your organizing document) <br><br> Polm Family Foundation, Inc. | 2  c/o Name (if applicable) |
| 3  Mailing address (Number and street) (see instructions)      Room/Suite <br><br> P.O. Box 1071 | 4  Employer Identification Number (EIN) <br><br> 20-5661841 |
| City or town, state or country, and ZIP + 4 <br><br> Severna Park, MD  21146 | 5  Month the annual accounting period ends (01 – 12) <br><br> 12 |

6  Primary contact (officer, director, trustee, or authorized representative)

a Name: Emanuel J. Kallina, II

b Phone: 410-377-2170 x. 223

c Fax: (optional) 443-797-1147

7  Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative.    ☒ Yes  ☐ No

8  Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role.    ☐ Yes  ☒ No

9a  Organization's website: none

b  Organization's email: (optional) none

10  Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ.    ☐ Yes  ☒ No

11  Date incorporated if a corporation, or formed, if other than a corporation.  (MM/DD/YYYY)  07/27/2006

12  Were you formed under the laws of a foreign country? If "Yes," state the country.    ☐ Yes  ☒ No

For Paperwork Reduction Act Notice, see page 24 of the instructions.    Form **1023** (Rev. 6-2006)

ISA
STF FED2126F.1

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page **2**

## Part II    Organizational Structure

You must be a corporation (including a limited liability company), an unincorporated association, or a trust to be tax exempt. (See instructions.) DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.

| | | | |
|---|---|---|---|
| 1 | Are you a corporation? If "Yes," attach a copy of your articles of incorporation showing certification of filing with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification. | ☒ Yes | ☐ No |
| 2 | Are you a limited liability company (LLC)? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application. | ☐ Yes | ☒ No |
| 3 | Are you an unincorporated association? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments. | ☐ Yes | ☒ No |
| 4a | Are you a trust? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments. | ☐ Yes | ☒ No |
| b | Have you been funded? If "No," explain how you are formed without anything of value placed in trust. | ☐ Yes | ☐ No |
| 5 | Have you adopted bylaws? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected. | ☒ Yes | ☐ No |

## Part III    Required Provisions in Your Organizing Document

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. DO NOT file this application until you have amended your organizing document. Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

| | | |
|---|---|---|
| 1 | Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. Location of Purpose Clause (Page, Article, and Paragraph): Page 1, Item Third | ☒ |
| 2a | Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c. | ☒ |
| 2b | If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a. Page 3, Item Eighth | |
| 2c | See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: | ☐ |

## Part IV    Narrative Description of Your Activities

Using an attachment, describe your past, present, and planned activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

## Part V    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors

1a List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual compensation, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|---|---|---|---|
| see attached | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page 3

**Part V**    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

b   List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|--------------------------------------------------|
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |

c   List the names, names of businesses, and mailing addresses of your five highest compensated independent contractors that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|--------------------------------------------------|
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The following "Yes" or "No" questions relate to *past, present, or planned* relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, and 1c.

2a   Are any of your officers, directors, or trustees related to each other through family or business relationships? If "Yes," identify the individuals and explain the relationship.    ☒ Yes   ☐ No

b   Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees.    ☒ Yes   ☐ No

c   Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship.    ☐ Yes   ☒ No

3a   For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

b   Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through common control? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement.    ☐ Yes   ☒ No

4   In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use.

a   Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy?    ☒ Yes   ☐ No

b   Do you or will you approve compensation arrangements in advance of paying compensation?    ☒ Yes   ☐ No

c   Do you or will you document in writing the date and terms of approved compensation arrangements?    ☒ Yes   ☐ No

Form 1023 (Rev. 6-2006)    Name: **Palm Family Foundation, Inc.**    EIN: 20-5661841    Page **4**

**Part V**    Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

**d** Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements? — ☒ Yes  ☐ No

**e** Do you or will you approve compensation arrangements based on information about compensation paid by similarly situated taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the Instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. — ☒ Yes  ☐ No

**f** Do you or will you record in writing both the information on which you relied to base your decision and its source? — ☒ Yes  ☐ No

**g** If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is reasonable for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c.

**5a** Have you adopted a conflict of interest policy consistent with the sample conflict of interest policy in Appendix A to the Instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c. — ☒ Yes  ☐ No

**b** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

**c** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?

Note: A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14.

**6a** Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the Instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. — ☐ Yes  ☒ No

**b** Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees who receive or will receive compensation of more than $50,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the Instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation. — ☐ Yes  ☒ No

**7a** Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine that you pay no more than fair market value. Attach copies of any written contracts or other agreements relating to such purchases. — ☒ Yes  ☐ No

**b** Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales. — ☐ Yes  ☒ No

**8a** Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f. — ☐ Yes  ☒ No

**b** Describe any written or oral arrangements that you made or intend to make.

**c** Identify with whom you have or will have such arrangements.

**d** Explain how the terms are or will be negotiated at arm's length.

**e** Explain how you determine you pay no more than fair market value or you are paid at least fair market value.

**f** Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**9a** Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f. — ☐ Yes  ☒ No

Form **1023** (Rev. 6-2006)

STF FED2129F.4

Form 1023 (Rev. 6-2006)    Name: **Polm Family Foundation, Inc.**    EIN: 20-5661841    Page **5**

**Part V**  Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)*

  **b** Describe any written or oral arrangements you made or intend to make.

  **c** Identify with whom you have or will have such arrangements.

  **d** Explain how the terms are or will be negotiated at arm's length.

  **e** Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.

  **f** Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**Part VI**  Your Members and Other Individuals and Organizations That Receive Benefits From You

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| **1a** | In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals. | ☐ Yes | ☒ No |
| **b** | In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations. | ☒ Yes | ☐ No |
| **2** | Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. | ☐ Yes | ☒ No |
| **3** | Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. | ☐ Yes | ☒ No |

**Part VII**  Your History

The following "Yes" or "No" questions relate to your history. (See instructions.)

| | | | |
|---|---|---|---|
| **1** | Are you a successor to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G. | ☐ Yes | ☒ No |
| **2** | Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. | ☐ Yes | ☒ No |

**Part VIII**  Your Specific Activities

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past, present,* and *planned* activities. (See instructions.)

| | | | |
|---|---|---|---|
| **1** | Do you support or oppose candidates in political campaigns in any way? If "Yes," explain. | ☐ Yes | ☒ No |
| **2a** | Do you attempt to influence legislation? If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. | ☐ Yes | ☒ No |
| **b** | Have you made or are you making an election to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. | ☐ Yes | ☐ No |
| **3a** | Do you or will you operate bingo or gaming activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. | ☐ Yes | ☒ No |
| **b** | Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies or any written contracts or other agreements relating to such arrangements. | ☐ Yes | ☒ No |
| **c** | List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo. | | |

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page 6

**Part VIII    Your Specific Activities** *(Continued)*

**4a** Do you or will you undertake fundraising? If "Yes," check all the fundraising programs you do or will conduct. (See instructions.) ☐ Yes ☒ No

☐ mail solicitations ☐ phone solicitations
☐ email solicitations ☐ accept donations on your website
☐ personal solicitations ☐ receive donations from another organization's website
☐ vehicle, boat, plane, or similar donations ☐ government grant solicitations
☐ foundation grant solicitations ☐ Other

Attach a description of each fundraising program.

**b** Do you or will you have written or oral contracts with any individuals or organizations to raise funds for you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. Also, attach a copy of any contracts or agreements. ☐ Yes ☒ No

**c** Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these arrangements. Include a description of the organizations for which you raise funds and attach copies of all contracts or agreements. ☐ Yes ☒ No

**d** List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.

**e** Do you or will you maintain separate accounts for any contributor under which the contributor has the right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the types of investments, distributions from the types of investments, or the distribution from the donor's contribution account. If "Yes," describe this program, including the type of advice that may be provided and submit copies of any written materials provided to donors. ☐ Yes ☒ No

**5** Are you affiliated with a governmental unit? If "Yes," explain. ☐ Yes ☒ No

**6a** Do you or will you engage in economic development? If "Yes," describe your program. ☐ Yes ☒ No

**b** Describe in full who benefits from your economic development activities and how the activities promote exempt purposes.

**7a** Do or will persons other than your employees or volunteers develop your facilities? If "Yes," describe each facility, the role of the developer, and any business or family relationship(s) between the developer and your officers, directors, or trustees. ☐ Yes ☒ No

**b** Do or will persons other than your employees or volunteers manage your activities or facilities? If "Yes," describe each activity and facility, the role of the manager, and any business or family relationship(s) between the manager and your officers, directors, or trustees. ☐ Yes ☒ No

**c** If there is a business or family relationship between any manager or developer and your officers, directors, or trustees, identify the individuals, explain the relationship, describe how contracts are negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any contracts or other agreements.

**8** Do you or will you enter into joint ventures, including partnerships or limited liability companies treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3) organizations? If "Yes," describe the activities of these joint ventures in which you participate. ☐ Yes ☒ No

**9a** Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines 9b through 9d. If "No," go to line 10. ☐ Yes ☒ No

**b** Do you provide child care so that parents or caretakers of children you care for can be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k). ☐ Yes ☐ No

**c** Of the children for whom you provide child care, are 85% or more of them cared for by you to enable their parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k). ☐ Yes ☐ No

**d** Are your services available to the general public? If "No," describe the specific group of people for whom your activities are available. Also, see the instructions and explain how you qualify as a childcare organization described in section 501(k). ☐ Yes ☐ No

**10** Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other intellectual property? If "Yes," explain. Describe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed. ☐ Yes ☒ No

Form **1023** (Rev. 6-2006)

STF FED2129F.6

Attachment to Form 1023
Part VIII, Lines 11 and 13

Polm Family Foundation, Inc.
EIN: 20-5661841

The Foundation may be the recipient of non-cash gifts such as S-stock, LLC interest, and partnership interests, but has not yet accepted any contributions of the type described in Part VIII, Line 11.

First and foremost, no gifts will be accepted by the Foundation unless the donor clearly understands that charitable intent and promotion of the Foundation's charitable purposes must be the primary purpose of any gift. The Foundation will not allow potential donors to impose any legal conditions on the Foundation's acceptance of such contributions, other than those conditions which are advisory in nature.

The Foundation plans to make grants, loans or other distributions to one or more Supported Organizations, as named in its governing instrument. The Foundation's activities will be conducted and funds will be distributed by the Foundation's Board of Directors, who will meet at least annually to review and approve all decisions and information with respect to such distributions. The Directors will keep records to account for each contribution made to the Foundation, as well as the subsequent management, liquidation and distribution of such gift to a Supported Organization. The Directors will also ensure that any Supported Organization receiving a grant, loan or other distribution from the Foundation is a 501(c)(3) organization in good standing, that its mission statement is consistent with the Foundation's Qualified Purposes, and that it falls within the Supported Class.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part VIII - Line 11 and 13.doc

Form 1023 (Rev. 6-2006)   Name: Palm Family Foundation, Inc.   EIN: 20-5661841   Page **7**

| **Part VIII** | Your Specific Activities *(Continued)* |
|---|---|

**11** Do you or will you accept contributions of: real property; conservation easements; closely held securities; intellectual property such as patents, trademarks, and copyrights; works of music or art; licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes," describe each type of contribution, any conditions imposed by the donor on the contribution, and any agreements with the donor regarding the contribution.  ☒ Yes  ☐ No

**12a** Do you or will you operate in a foreign country or countries? If "Yes," answer lines 12b through 12d. If "No," go to line 13a.  ☐ Yes  ☒ No
  **b** Name the foreign countries and regions within the countries in which you operate.
  **c** Describe your operations in each country and region in which you operate.
  **d** Describe how your operations in each country and region further your exempt purposes.

**13a** Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b through 13g. If "No," go to line 14a.  ☒ Yes  ☐ No
  **b** Describe how your grants, loans, or other distributions to organizations further your exempt purposes.
  **c** Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract.  ☐ Yes  ☒ No
  **d** Identify each recipient organization and any relationship between you and the recipient organization.
  **e** Describe the records you keep with respect to the grants, loans, or other distributions you make.
  **f** Describe your selection process, including whether you do any of the following:
    (i) Do you require an application form? If "Yes," attach a copy of the form.  ☐ Yes  ☒ No
    (ii) Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the purposes for which the grant was made, provides for periodic written reports concerning the use of grant funds, requires a final written report and an accounting of how grant funds were used, and acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear to be, misused.  ☐ Yes  ☒ No
  **g** Describe your procedures for oversight of distributions that assure you the resources are used to further your exempt purposes, including whether you require periodic and final reports on the use of resources.

**14a** Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer lines 14b through 14f. If "No," go to line 15.  ☐ Yes  ☒ No
  **b** Provide the name of each foreign organization, the country and regions within a country in which each foreign organization operates, and describe any relationship you have with each foreign organization.

  **c** Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or specific organization? If "Yes," list all earmarked organizations or countries.  ☐ Yes  ☐ No

  **d** Do your contributors know that you have ultimate authority to use contributions made to you at your discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this information to contributors.  ☐ Yes  ☐ No

  **e** Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided, and other relevant information.  ☐ Yes  ☐ No

  **f** Do you or will you use any additional procedures to ensure that your distributions to foreign organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures, including site visits by your employees or compliance checks by impartial experts, to verify that grant funds are being used appropriately.  ☐ Yes  ☐ No

Form **1023** (Rev. 6-2006)

Form 1023 (Rev. 6-2006)     Name: Polm Family Foundation, Inc.     EIN: 20-5661841     Page 8

## Part VIII  Your Specific Activities *(Continued)*

| | | | |
|---|---|---|---|
| 15 | Do you have a close connection with any organizations? If "Yes," explain. | ☐ Yes | ☒ No |
| 16 | Are you applying for exemption as a cooperative hospital service organization under section 501(e)? If "Yes," explain. | ☐ Yes | ☒ No |
| 17 | Are you applying for exemption as a cooperative service organization of operating educational organizations under section 501(f)? If "Yes," explain. | ☐ Yes | ☒ No |
| 18 | Are you applying for exemption as a charitable risk pool under section 501(n)? If "Yes," explain. | ☐ Yes | ☒ No |
| 19 | Do you or will you operate a school? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☒ No |
| 20 | Is your main function to provide hospital or medical care? If "Yes," complete Schedule C. | ☐ Yes | ☒ No |
| 21 | Do you or will you provide low-income housing or housing for the elderly or handicapped? If "Yes," complete Schedule F. | ☐ Yes | ☒ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. | ☐ Yes | ☒ No |

Note: Private foundations may use Schedule H to request advance approval of individual grant procedures.

STF FED2125F.8

Form 1023 (Rev. 6-2005)    Name: **Polm Family Foundation, Inc.**    EIN: 20-5661841    Page **9**

**Part IX**  Financial Data

For purposes of this schedule, years in existence refer to completed tax years. If in existence 4 or more years, complete the schedule for the most recent 4 tax years. If in existence more than 1 year but less than 4 years, complete the statements for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. If in existence less than 1 year, provide projections of your likely revenues and expenses for the current year and the 2 following years, based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. (See Instructions.)

### A. Statement of Revenues and Expenses

| | Type of revenue or expense | Current tax year (a) From 1/2007 To 12/2007 | (b) From 1/2008 To 12/2008 | (c) From 1/2009 To 12/2009 | (d) From ___ To ___ | (e) Provide Total for (a) through (d) |
|---|---|---|---|---|---|---|
| Revenues | 1  Gifts, grants, and contributions received (do not include unusual grants) | 400,000.00 | 400,000.00 | 400,000.00 | | 1,200,000.00 |
| | 2  Membership fees received | | | | | 0.00 |
| | 3  Gross investment income | | | | | 0.00 |
| | 4  Net unrelated business income | | | | | 0.00 |
| | 5  Taxes levied for your benefit | | | | | 0.00 |
| | 6  Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge) | | | | | 0.00 |
| | 7  Any revenue not otherwise listed above or in lines 9–12 below (attach an itemized list) | | | | | 0.00 |
| | 8  Total of lines 1 through 7 | 400,000.00 | 400,000.00 | 400,000.00 | | 1,200,000.00 |
| | 9  Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes (attach itemized list) | | | | | 0.00 |
| | 10  Total of lines 8 and 9 | 400,000.00 | 400,000.00 | 400,000.00 | | 1,200,000.00 |
| | 11  Net gain or loss on sale of capital assets (attach schedule and see instructions) | | | | | 0.00 |
| | 12  Unusual grants | | | | | 0.00 |
| | 13  Total Revenue Add lines 10 through 12 | 400,000.00 | 400,000.00 | 400,000.00 | | 1,200,000.00 |
| Expenses | 14  Fundraising expenses | | | | | |
| | 15  Contributions, gifts, grants, and similar amounts paid out (attach an itemized list) | 360,000.00 | 360,000.00 | 360,000.00 | | |
| | 16  Disbursements to or for the benefit of members (attach an itemized list) | | | | | |
| | 17  Compensation of officers, directors, and trustees | 0 | 0 | 0 | | |
| | 18  Other salaries and wages | 0 | 0 | 0 | | |
| | 19  Interest expense | | | | | |
| | 20  Occupancy (rent, utilities, etc.) | | | | | |
| | 21  Depreciation and depletion | | | | | |
| | 22  Professional fees | 5,000.00 | 5,000.00 | 5,000.00 | | |
| | 23  Any expense not otherwise classified, such as program services (attach itemized list) | 25,000.00 | 25,000.00 | 25,000.00 | | |
| | 24  Total Expenses Add lines 14 through 23 | 390,000.00 | 390,000.00 | 390,000.00 | | |

STF FED2129F.9    Form **1023** (Rev. 6-2005)

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page **10**

**Part IX** Financial Data *(Continued)*

| B. Balance Sheet (for your most recently completed tax year) | Year End: 2006 |
|---|---|

**Assets** — (Whole dollars)

| | | | |
|---|---|---|---:|
| 1 | Cash ........................................................................... | 1 | 100 |
| 2 | Accounts receivable, net........................................................ | 2 | |
| 3 | Inventories ..................................................................... | 3 | |
| 4 | Bonds and notes receivable (attach an itemized list)........................... | 4 | |
| 5 | Corporate stocks (attach an itemized list)..................................... | 5 | |
| 6 | Loans receivable (attach an itemized list)..................................... | 6 | |
| 7 | Other investments (attach an itemized list) .................................... | 7 | |
| 8 | Depreciable and depletable assets (attach an itemized list) .................... | 8 | |
| 9 | Land........................................................................... | 9 | |
| 10 | Other assets (attach an itemized list) ........................................ | 10 | |
| 11 | Total Assets (add lines 1 through 10) .................................. | 11 | 100 |

**Liabilities**

| | | | |
|---|---|---|---:|
| 12 | Accounts payable .............................................................. | 12 | |
| 13 | Contributions, gifts, grants, etc. payable ..................................... | 13 | |
| 14 | Mortgages and notes payable (attach an itemized list) .......................... | 14 | |
| 15 | Other liabilities (attach an itemized list) .................................... | 15 | |
| 16 | Total Liabilities (add lines 12 through 15) ............................ | 16 | 0 |

**Fund Balances or Net Assets**

| | | | |
|---|---|---|---:|
| 17 | Total fund balances or net assets ............................................. | 17 | |
| 18 | Total Liabilities and Fund Balances or Net Assets (add lines 16 and 17) ........ | 18 | 0 |

19 Have there been any substantial changes in your assets or liabilities since the end of the period shown above? If "Yes," explain.  ☐ Yes  ☒ No

**Part X** Public Charity Status

Part X is designed to classify you as an organization that is either a private foundation or a public charity. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a private operating foundation. (See instructions.)

1a Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed. If you are unsure, see the instructions.  ☐ Yes  ☒ No

b As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2.  ☐

2 Are you a private operating foundation? To be a private operating foundation you must engage directly in the active conduct of charitable, religious, educational, and similar activities, as opposed to indirectly carrying out these activities by providing grants to individuals or other organizations. If "Yes," go to line 3. If "No," go to the signature section of Part XI.  ☐ Yes  ☐ No

3 Have you existed for one or more years? If "Yes," attach financial information showing that you are a private operating foundation; go to the signature section of Part XI. If "No," continue to line 4.  ☐ Yes  ☐ No

4 Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit or opinion from a certified public accountant or accounting firm with expertise regarding this tax law matter), that sets forth facts concerning your operations and support to demonstrate that you are likely to satisfy the requirements to be classified as a private operating foundation; or (2) a statement describing your proposed operations as a private operating foundation?  ☐ Yes  ☐ No

5 If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below. You may check only one box.

The organization is not a private foundation because it is:

a 509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A.  ☐

b 509(a)(1) and 170(b)(1)(A)(ii)—a school. Complete and attach Schedule B.  ☐

c 509(a)(1) and 170(b)(1)(A)(iii)—a hospital, a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital. Complete and attach Schedule C.  ☐

d 509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, g, or h or a publicly supported section 501(c)(4), (5), or (6) organization. Complete and attach Schedule D.  ☒

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page **11**

**Part X    Public Charity Status** *(Continued)*

e  509(a)(4)—an organization organized and operated exclusively for testing for public safety. ☐

f  509(a)(1) and 170(b)(1)(A)(iv)—an organization operated for the benefit of a college or university that is owned or operated by a governmental unit. ☐

g  509(a)(1) and 170(b)(1)(A)(vi)—an organization that receives a substantial part of its financial support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public. ☐

h  509(a)(2)—an organization that normally receives not more than one-third of its financial support from gross investment income and receives more than one-third of its financial support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions). ☐

i  A publicly supported organization, but unsure if it is described in 5g or 5h. The organization would like the IRS to decide the correct status. ☐

6  If you checked box g, h, or i in question 5 above, you must request either an advance or a definitive ruling by selecting one of the boxes below. Refer to the instructions to determine which type of ruling you are eligible to receive.

a  **Request for Advance Ruling:** By checking this box and signing the consent, pursuant to section 6501(c)(4) of the Code you request an advance ruling and agree to extend the statute of limitations on the assessment of excise tax under section 4940 of the Code. The tax will apply only if you do not establish public support status at the end of the 5-year advance ruling period. The assessment period will be extended for the 5 advance ruling years to 8 years, 4 months, and 15 days beyond the end of the first year. You have the right to refuse or limit the extension to a mutually agreed-upon period of time or issue(s). Publication 1035, *Extending the Tax Assessment Period*, provides a more detailed explanation of your rights and the consequences of the choices you make. You may obtain Publication 1035 free of charge from the IRS web site at *www.irs.gov* or by calling toll-free 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled. If you decide not to extend the statute of limitations, you are not eligible for an advance ruling. ☐

Consent Fixing Period of Limitations Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code

For Organization

_____    _____    _____
(Signature of Officer, Director, Trustee, or other    (Type or print name of signer)    (Date)
authorized official)

_____
(Type or print title or authority of signer)

For IRS Use Only

_____    _____
IRS Director, Exempt Organizations    (Date)

b  **Request for Definitive Ruling:** Check this box if you have completed one tax year of at least 8 full months and you are requesting a definitive ruling. To confirm your public support status, answer line 6b(i) if you checked box g in line 5 above. Answer line 6b(ii) if you checked box h in line 5 above. If you checked box i in line 5 above, answer both lines 6b(i) and (ii). ☐

(i)  (a) Enter 2% of line 8, column (e) on Part IX-A. Statement of Revenues and Expenses.

(b) Attach a list showing the name and amount contributed by each person, company, or organization whose gifts totaled more than the 2% amount. If the answer is "None," check this box. ☐

(ii)  (a) For each year amounts are included on lines 1, 2, and 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each disqualified person. If the answer is "None," check this box. ☐

(b) For each year amounts are included on line 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each payer, other than a disqualified person, whose payments were more than the larger of (1) 1% of line 10, Part IX-A. Statement of Revenues and Expenses, or (2) $5,000. If the answer is "None," check this box. ☐

7  Did you receive any unusual grants during any of the years shown on Part IX-A. Statement of Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and amount of the grant, a brief description of the grant, and explain why it is unusual.    ☐ Yes    ☒ No

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page 12

**Part XI    User Fee Information**

You must include a user fee payment with this application. It will not be processed without your paid user fee. If your average annual gross receipts have exceeded or will exceed $10,000 annually over a 4-year period, you must submit payment of $750. If your gross receipts have not exceeded or will not exceed $10,000 annually over a 4-year period, the required user fee payment is $300. See instructions for Part XI, for a definition of gross receipts over a 4-year period. Your check or money order must be made payable to the United States Treasury. User fees are subject to change. Check our website at www.irs.gov and type "User Fee" in the keyword box, or call Customer Account Services at 1-877-829-5500 for current information.

| | | | |
|---|---|---|---|
| 1 | Have your annual gross receipts averaged or are they expected to average not more than $10,000?<br>If "Yes," check the box on line 2 and enclose a user fee payment of $300 (Subject to change—see above).<br>If "No," check the box on line 3 and enclose a user fee payment of $750 (Subject to change—see above). | ☐ Yes | ☒ No |
| 2 | Check the box if you have enclosed the reduced user fee payment of $300 (Subject to change). | | ☐ |
| 3 | Check the box if you have enclosed the user fee payment of $750 (Subject to change). | | ☒ |

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

Please
Sign
Here ▶

(Signature of Officer, Director, Trustee, or other authorized official)

Richard E. Polm
(Type or print name of signer)

Director
(Type or print title or authority of signer)

2|12|07
(Date)

**Reminder:** Send the completed Form 1023 Checklist with your filled-in application.    Form 1023 (Rev. 6-2006)

Form 1023 (Rev. 6-2006)    Name: Polm Family Foundation, Inc.    EIN: 20-5661841    Page **18**

## Schedule D. Section 509(a)(3) Supporting Organizations

| **Section I** | Identifying Information About the Supported Organization(s) |

1  State the names, addresses, and EINs of the supported organizations. If additional space is needed, attach a separate sheet.

| Name | Address | EIN |
|------|---------|-----|
| see attached | | |
| | | |

2  Are all supported organizations listed in line 1 public charities under section 509(a)(1) or (2)? If "Yes," go to Section II. If "No," go to line 3.    ☒ Yes    ☐ No

3  Do the supported organizations have tax-exempt status under section 501(c)(4), 501(c)(5), or 501(c)(6)?    ☐ Yes    ☐ No

If "Yes," for each 501(c)(4), (5), or (6) organization supported, provide the following financial information:

- Part IX-A. Statement of Revenues and Expenses, lines 1–13 and
- Part X, lines 6b(ii)(a), 6b(ii)(b), and 7.

If "No," attach a statement describing how each organization you support is a public charity under section 509(a)(1) or (2).

| **Section II** | Relationship with Supported Organization(s)—Three Tests |

To be classified as a supporting organization, an organization must meet one of three relationship tests:

Test 1: "Operated, supervised, or controlled by" one or more publicly supported organizations, or
Test 2: "Supervised or controlled in connection with" one or more publicly supported organizations, or
Test 3: "Operated in connection with" one or more publicly supported organizations.

1  Information to establish the "operated, supervised, or controlled by" relationship (Test 1)
Is a majority of your governing board or officers elected or appointed by the supported organization(s)? If "Yes," describe the process by which your governing board is appointed and elected; go to Section III. If "No," continue to line 2.    ☐ Yes    ☒ No

2  Information to establish the "supervised or controlled in connection with" relationship (Test 2)
Does a majority of your governing board consist of individuals who also serve on the governing board of the supported organization(s)? If "Yes," describe the process by which your governing board is appointed and elected; go to Section III. If "No," go to line 3.    ☒ Yes    ☐ No

3  Information to establish the "operated in connection with" responsiveness test (Test 3)
Are you a trust from which the named supported organization(s) can enforce and compel an accounting under state law? If "Yes," explain whether you advised the supported organization(s) in writing of these rights and provide a copy of the written communication documenting this; go to Section II, line 5. If "No," go to line 4a.    ☐ Yes    ☐ No

4  Information to establish the alternative "operated in connection with" responsiveness test (Test 3)
a  Do the officers, directors, trustees, or members of the supported organization(s) elect or appoint one or more of your officers, directors, or trustees? If "Yes," explain and provide documentation; go to line 4d, below. If "No," go to line 4b.    ☐ Yes    ☐ No

b  Do one or more members of the governing body of the supported organization(s) also serve as your officers, directors, or trustees or hold other important offices with respect to you? If "Yes," explain and provide documentation; go to line 4d, below. If "No," go to line 4c.    ☐ Yes    ☐ No

c  Do your officers, directors, or trustees maintain a close and continuous working relationship with the officers, directors, or trustees of the supported organization(s)? If "Yes," explain and provide documentation.    ☐ Yes    ☐ No

d  Do the supported organization(s) have a significant voice in your investment policies, in the making and timing of grants, and in otherwise directing the use of your income or assets? If "Yes," explain and provide documentation.    ☐ Yes    ☐ No

e  Describe and provide copies of written communications documenting how you made the supported organization(s) aware of your supporting activities.

STF FED2129F.18

Form 1023 (Rev. 6-2006)    Name: **Polm Family Foundation, Inc.**    EIN: 20-5661841    Page **19**

## Schedule D. Section 509(a)(3) Supporting Organizations (Continued)

### Section II    Relationship with Supported Organization(s)—Three Tests (Continued)

**5** Information to establish the "operated in connection with" integral part test (Test 3)

Do you conduct activities that would otherwise be carried out by the supported organization(s)? If "Yes," explain and go to Section III. If "No," continue to line 6a.   ☐ Yes   ☐ No

**6** Information to establish the alternative "operated in connection with" integral part test (Test 3)

**a** Do you distribute at least 85% of your annual net income to the supported organization(s)? If "Yes," go to line 6b. (See instructions.)   ☐ Yes   ☐ No

If "No," state the percentage of your income that you distribute to each supported organization. Also explain how you ensure that the supported organization(s) are attentive to your operations.

**b** How much do you contribute annually to each supported organization? Attach a schedule.

**c** What is the total annual revenue of each supported organization? If you need additional space, attach a list.

**d** Do you or the supported organization(s) earmark your funds for support of a particular program or activity? If "Yes," explain.   ☐ Yes   ☐ No

**7a** Does your organizing document specify the supported organization(s) by name? If "Yes," state the article and paragraph number and go to Section III. If "No," answer line 7b.   ☐ Yes   ☐ No

**b** Attach a statement describing whether there has been an historic and continuing relationship between you and the supported organization(s).

### Section III    Organizational Test

**1a** If you met relationship Test 1 or Test 2 in Section II, your organizing document must specify the supported organization(s) by name, or by naming a similar purpose or charitable class of beneficiaries. If your organizing document complies with this requirement, answer "Yes." If your organizing document does not comply with this requirement, answer "No," and see the instructions.   ☒ Yes   ☐ No

**b** If you met relationship Test 3 in Section II, your organizing document must generally specify the supported organization(s) by name. If your organizing document complies with this requirement, answer "Yes," and go to Section IV. If your organizing document does not comply with this requirement, answer "No," and see the instructions.   ☐ Yes   ☐ No

### Section IV    Disqualified Person Test

You do not qualify as a supporting organization if you are controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than **foundation managers** or one or more organizations that you support. Foundation managers who are also disqualified persons for another reason are disqualified persons with respect to you.

**1a** Do any persons who are disqualified persons with respect to you, (except individuals who are disqualified persons only because they are foundation managers), appoint any of your foundation managers? If "Yes," (1) describe the process by which disqualified persons appoint any of your foundation managers, (2) provide the names of these disqualified persons and the foundation managers they appoint, and (3) explain how control is vested over your operations (including assets and activities) by persons other than disqualified persons.   ☒ Yes   ☐ No

**b** Do any persons who have a family or business relationship with any disqualified persons with respect to you, (except individuals who are disqualified persons only because they are foundation managers), appoint any of your foundation managers? If "Yes," (1) describe the process by which individuals with a family or business relationship with disqualified persons appoint any of your foundation managers, (2) provide the names of these disqualified persons, the individuals with a family or business relationship with disqualified persons, and the foundation managers appointed, and (3) explain how control is vested over your operations (including assets and activities) in individuals other than disqualified persons.   ☒ Yes   ☐ No

**c** Do any persons who are disqualified persons, (except individuals who are disqualified persons only because they are foundation managers), have any influence regarding your operations, including your assets or activities? If "Yes," (1) provide the names of these disqualified persons, (2) explain how influence is exerted over your operations (including assets and activities), and (3) explain how control is vested over your operations (including assets and activities) by individuals other than disqualified persons.   ☒ Yes   ☐ No

Form **1023** (Rev. 6-2006)

EXHIBIT A - 2

Tab V



# ARTICLES OF INCORPORATION
## OF
## POLM FAMILY FOUNDATION, INC.

POLM FAMILY FOUNDATION, INC., a Maryland non-stock corporation, having its principal office in Maryland in Baltimore County, Maryland ("Corporation"), hereby certifies to the State Department of Assessments and Taxation of Maryland that:

FIRST: The undersigned, Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204, being over eighteen (18) years of age and acting as incorporator, hereby forms a non-stock corporation under the Maryland General Corporation Law, as amended from time to time ("Maryland General Corporation Law").

SECOND:      The name of the Corporation is:  POLM FAMILY FOUNDATION, INC.

THIRD:      (A)      The Corporation is organized and shall be operated exclusively for charitable, religious and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations ("Qualified Organizations") organized under Sections 501(c)(3), 509(a)(1), and 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time ("Code") which support and promote religious, charitable, scientific, literary and/or educational causes, especially those religious organizations that promote Christian evangelism, edification and stewardship, including but not limited to those organizations specified in the Corporation's By-Laws (all of such organizations collectively being the "Supported Class").  Each Qualified Purpose must constitute a public charitable purpose under Maryland Law.

(B)      Within the Supported Class, the Corporation may substitute Qualified Organizations, benefit new or additional Qualified Organizations, and vary the amount of its support among Qualified Organizations, in any manner consistent with Treasury Regulation Section 1.509(a)-4(d)(3), other Treasury Regulations, and Internal Revenue Service pronouncements.

(C)      The Corporation shall be supervised or controlled in connection with one or more of the Qualified Organizations which are defined in the Supported Class.

(D)      The Corporation is authorized to accept gifts of property, whether real or personal, tangible or intangible, to be used in furtherance of its tax-exempt purpose.

(E)      The Corporation shall have and exercise to the extent necessary or desirable for the accomplishment of the aforesaid purposes, and to the extent that they are not

© 2006 Kallina & Associates, LLC.

STATE OF MARYLAND

I hereby certify that this is a true and complete copy of the 5 page document on file in this office. DATED: 1/2/00
STATE DEPARTMENT OF ASSESSMENTS AND TAXATION
BY: _____  Custodian
This stamp replaces our previous certification system. Effective: 6/95

inconsistent with the charitable purposes of the Corporation, any and all powers conferred upon non-stock corporations by the Maryland General Corporation Law.

FOURTH:    The post office address of the principal office in this State is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. The resident agent of the Corporation in this State is Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. Said resident agent is a citizen of the State of Maryland and actually resides therein.

FIFTH:    The Corporation is not authorized to issue any capital stock.

SIXTH:    (A)    The business and affairs of the Corporation shall be managed under the direction of its Board of Directors ("Board"), consisting initially of RICHARD E. POLM, THERESA E. POLM, LEW SCHRUMM, CARL FRANCIS WIESNER, JR. and EMANUEL J. KALLINA, II.

(B)    Notwithstanding anything in these Articles of Incorporation, the Charter, or the By-Laws to the contrary, control and management of the Corporation shall be vested in members of the Board who are officers, directors, and/or trustees of Qualified Organizations within the Supported Class ("Managing Directors"). Managing Directors shall always have majority vote on the Board and on every committee of the Board.

(C)    Election and appointment of the Board, the maximum and minimum number, and the classification thereof, shall be set forth in the Corporation's By-Laws. The number of members of the Board may be increased or decreased in the manner provided in the By-Laws, but shall never be less than the minimum number required by the Maryland General Corporation Law.

SEVENTH:    Notwithstanding any other provision of these Articles, the powers of the Corporation shall be subject to the following terms, provisions and limitations:

(A)    No part of the net earnings of the Corporation shall inure to the benefit of any member, director or officer of the Corporation, or any private person, except that reasonable compensation may be paid for services actually rendered to or for the Corporation, and no member, director or officer of the Corporation or any private person shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the Corporation.

(B)    Except as provided and permitted under Code Sections 501(h) and 4911, no substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidates for public office.

2 of 4

© 2005 Kallina & Associates, LLC .   .

(C)    The Corporation shall not directly or indirectly conduct or carry on any activities not permitted to be conducted or carried on (i) by an organization exempt from federal income taxation under Code Section 501(c)(3) of the Code, specifically Code Section 509(a)(3); or (ii) by an organization, contributions to which are deductible under Code Section 170(c)(2).

EIGHTH:    Upon the dissolution of the Corporation, the Board shall, after paying or making provision for the payment of all of the liabilities of the Corporation, distribute all assets of the Corporation, pursuant to a plan of distribution adopted by the Directors, to any Qualified Organization within the Supported Class, or to the federal government, or to a state or local government. Any assets not so disposed of shall be disposed of by the Circuit Court of the county in which the principal office of the Corporation is then located, exclusively for the purposes specified in such plan of distribution (or if there is no plan of distribution, for purposes similar or analogous to the purposes described in Article THIRD above), as determined by such court.

NINTH:    To the maximum extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation Law, no director or officer of the Corporation shall have any liability to the Corporation or its members for money damages. This limitation on liability applies to events occurring at the time a person serves as a director or officer of the Corporation whether or not such person is a director or officer at the time of any proceeding in which liability is asserted. No amendment or repeal of this Article NINTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article NINTH, shall apply to or affect in any respect the liability of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

TENTH:    To the maximum extent permitted by the Maryland General Corporation Law, the Corporation shall (i) indemnify its currently acting, and its former, directors and officers against any and all liabilities and expenses incurred in connection with their services in such capacities, and shall indemnify its employees and agents and persons who serve and have served, at its request as a director, officer, partner, trustee, employee or agent of another corporation, partnership, joint venture or other enterprise, and (ii) advance expenses to its directors, officers and other indemnified persons, if any. In addition, the Corporation may, by By-Law resolution or agreement, make further provision for indemnification of directors, officers, employees and agents. No amendment or repeal of this Article TENTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article TENTH, shall apply to or affect in any respect the indemnification of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

ELEVENTH:  The Corporation reserves the right to make from time to time, by the vote or written assent of a majority of its Board, any amendments to these Articles which may now or hereafter be authorized by law.

3 of 4

© 2006 Kellina & Associates, LLC

TWELFTH:   If, for any reason, the Corporation does not qualify as a supporting organization under Code Section 509(a)(3), then the Board shall attempt to qualify the Corporation as either a "private operating foundation" under Code Section 4942(j), or as a private foundation qualifying under Code Section 170(b)(1)(E)(ii), a so-called "conduit foundation," including, for example, amending this organizing instrument to qualify the Corporation as a private operating foundation or a conduit foundation.  If, for any reason, the Corporation does not qualify as a supporting organization or a conduit foundation, then the Board shall attempt to qualify the Corporation as a "private foundation" within the meaning of Code Section 509, and the Corporation's income for each taxable year shall be distributed at such time and in such manner as not to subject it to tax under Code Section 4942, the Corporation shall be prohibited from engaging in any act of self-dealing as defined in Code Section 4941(d), from retaining any excess business holdings as defined in Code Section 4943(c), from making any investments in such manner as to subject this Corporation to tax under Code Section 4944, and from making any taxable expenditures as defined in Code Section 4945(d).

IN WITNESS WHEREOF, the undersigned incorporator has signed these Articles of Incorporation on the 21ˢᵗ day of July, 2006 and has acknowledged the same to be the act of such incorporator.

WITNESS:


_Cheryl A Jones_                    _Emanuel J. Kallina, II_
                                    Emanuel J. Kallina, II, Incorporator


F:\Work\Palm, Rick\Documents\Palm Family Foundation\Articles of Incorporation-final.doc


© 2006 Kallina & Associates, LLC              4 of 4

State of Maryland
**Department of
Assessments and Taxation**

Charter Division



Robert L. Ehrlich, Jr.
*Governor*

C. John Sullivan, Jr.
*Director*

Paul B. Anderson
*Administrator*

Date: 07/27/2006

EMANUEL J. KALLINA, II
CHERYL A. JONES
1122 KENILWORTH DR.
SUITE 507
TOWSON                    MD  21204

THIS LETTER IS TO CONFIRM ACCEPTANCE OF THE FOLLOWING FILING:

ENTITY NAME         : POLM FAMILY FOUNDATION, INC.
DEPARTMENT ID       : D11418563
TYPE OF REQUEST     : ARTICLES OF INCORPORATION
DATE FILED          : 07-27-2006
TIME FILED          : 11:18 AM
RECORDING FEE       : $100.00
ORG. & CAP FEE      : $20.00
EXPEDITED FEE       : $70.00
COPY FEE            : $24.00
POSTAGE FEE         : $5.00
FILING NUMBER       : 1000361993438682
CUSTOMER ID         : 0001823949
WORK ORDER NUMBER   : 0001266987


PLEASE VERIFY THE INFORMATION CONTAINED IN THIS LETTER. NOTIFY THIS DEPARTMENT
IN WRITING IF ANY INFORMATION IS INCORRECT. INCLUDE THE CUSTOMER ID AND THE WORK
ORDER NUMBER ON ANY INQUIRIES. EVERY YEAR THIS ENTITY MUST FILE A PERSONAL
PROPERTY RETURN IN ORDER TO MAINTAIN ITS EXISTENCE EVEN IF IT DOES NOT OWN
PERSONAL PROPERTY. A BLANK RETURN WILL BE MAILED BY FEBRUARY OF THE YEAR FOR
WHICH THE RETURN IS DUE.


Charter Division
Baltimore Metro Area (410) 767-1350
Outside Metro Area (888) 246-5941

*301 West Preston Street-Room 801-Baltimore, Maryland 21201-2395
Telephone (410)767-4950 / Toll free in Maryland (888)246-5941
MRS (Maryland Relay Service) (800)735-2258 TT/Voice- Fax (410)333-7097
Website: www.dat.state.md.us*

0004084851

CACCPT

# Tab VI

# POLM FAMILY FOUNDATION, INC.
# BY-LAWS

## TABLE OF CONTENTS

| | | |
|---|---|---|
| Section 1 | Purpose and Plan | 1 |
| 1.1 | Statement of Purpose | 1 |
| 1.2 | Purpose of these By-Laws | 1 |
| | | |
| Section 2 | Board of Directors | 1 |
| 2.1 | Function of Directors | 1 |
| 2.2 | Number of Directors | 1 |
| 2.3 | Classes of Directors | 1 |
| 2.3.1 | Managing Directors | 1 |
| 2.3.2 | Other Director | 2 |
| 2.3.3 | Different Classes | 2 |
| 2.4 | Eligibility and Tenure of Directors | 2 |
| 2.5 | Removal of Director | 2 |
| 2.6 | Vacancy on Board | 2 |
| 2.7 | Chairman of the Board | 2 |
| 2.8 | Compensation | 2 |
| 2.9 | Committees | 3 |
| | | |
| Section 3 | Meetings of the Directors | 3 |
| 3.1 | Annual Meetings | 3 |
| 3.2 | Special Meetings | 3 |
| 3.3 | Place of Holding Meetings | 3 |
| 3.4 | Notice of Meetings | 3 |
| 3.5 | Quorum | 3 |
| 3.6 | Conduct of Meetings | 4 |
| 3.7 | Order of Affairs | 4 |
| 3.8 | Voting | 4 |
| 3.9 | Informal Action by Trustees | 4 |
| 3.10 | Telephonic Meetings | 4 |
| | | |
| Section 4 | Officers | 4 |
| 4.1 | Election, Tenure and Compensation | 4 |
| 4.2 | Powers and Duties of the President | 5 |
| 4.3 | Powers and Duties of a Vice President | 5 |
| 4.4 | Powers and Duties of a Secretary | 5 |
| 4.5 | Powers and Duties of a Treasurer | 6 |
| 4.6 | Assistant Secretary | 6 |
| 4.7 | Assistant Treasurer | 6 |

i

© 2006 Kallina & Associates, LLC

Section 5  Liability and Indemnification of Directors, Officers and Employees ........................ 6
5.1        Liability. .................................................................................................................. 6
5.2        Indemnification. ...................................................................................................... 7
5.3        Bonds. ...................................................................................................................... 8

Section 6  Bank Accounts and Loans. ...................................................................................... 8
6.1        Bank Accounts. ....................................................................................................... 8
6.2        Loans. ....................................................................................................................... 8

Section 7  Miscellaneous Provisions ........................................................................................ 9
7.1        Books and Records. ................................................................................................ 9
7.2        Fiscal Year. .............................................................................................................. 9
7.3        Notices. .................................................................................................................... 9
7.4        Amendment of By Laws. ......................................................................................... 9
7.5        Conflicts. .................................................................................................................. 9
7.6        Governing Law. ....................................................................................................... 9
7.7        Headings. ................................................................................................................. 9
7.8        Counterparts. ........................................................................................................... 9

© 2006 Kallina & Associates, LLC

# POLM FAMILY FOUNDATION, INC.

# BY-LAWS

## SECTION 1  Purpose and Plan

1.1     <u>Statement of Purpose</u>.  POLM FAMILY FOUNDATION, INC., a Maryland non-stock corporation ("Corporation"), is organized and shall be operated exclusively for charitable, religious and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes of (collectively the "Qualified Purposes") the class of organizations ("Qualified Organizations") organized under Sections 501(c)(3), 509(a)(1), and 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), which support and promote religious, charitable, scientific, literary and/or educational causes, especially those religious organizations that promote Christian evangelism, edification and stewardship, including but not limited to those organizations specified on Schedule A, which is attached hereto and incorporated herein by reference (all of such organizations collectively being the "Supported Class").  Each Qualified Purpose must constitute a charitable purpose under Maryland Law.

1.2     <u>Purpose of these By-Laws</u>.  These By-Laws are adopted to provide rules for the Corporation's governance and functioning.

## SECTION 2  Board of Directors

2.1     <u>Function of Directors</u>.  The affairs of the Corporation shall be managed under the direction of its Board of Directors (sometimes "Board" or "Directors").

2.2     <u>Number of Directors</u>.  The number of members of the Board shall be not less than two (2) nor more than twenty-five (25), as determined by the Board.

2.3     <u>Classes of Directors</u>.  The Board shall be divided into two classes: (i) the "Managing Directors," who as a group shall have six (6) votes; and (ii) the "Other Directors," who as a group shall have five (5) votes.

2.3.1     <u>Managing Director</u>.  A Managing Director shall be a person who is an officer, director and/or trustee of a Qualified Organization within the Corporation's Supported Class and who is not a "disqualified person" as defined in Code Section 4946(a).  The number of votes of each Managing Director shall be equal to the result obtained by dividing six (6) by the total number of Managing Directors appointed as Directors.  For example, if there are two (2) Managing Directors, each Managing Director shall have three (3) votes.

© 2006 Kallina & Associates, LLC                    1

2.3.2   Other Director.  Each Other Director shall be a person who is not an officer, director, or trustee of a Qualified Organization within the Corporation's Supported Class and/or is a "disqualified person" as defined in Code Section 4946(a).   The number of votes of each of the Other Directors shall be equal to the result obtained by dividing five (5) by the total number of Other Directors appointed as Directors.  For example, if there are two (2) Other Directors, each of the Other Directors shall have two and one-half (2 1/2) votes.

2.3.3   Different Classes.  By amendment to these By-Laws, the Board may divide the Directors into different classes and may delegate rights, duties and authority to one or more classes, to the exclusion, if the Board desires, of another class or other classes; provided, however, that in each class of Directors, the number of votes held by the Managing Directors shall always be six (6), and the number of votes of the Other Directors shall always be five (5).

2.4   Eligibility and Tenure of Directors.  Except as may be specifically provided below to the contrary, the Directors shall be appointed each year at the annual meeting of the Board and shall hold office until the annual meeting of the Board next succeeding their appointment and thereafter until their respective successors have been duly appointed.  In accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Corporation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class.  Directors shall be appointed by the following individual(s) or entity(ies) ("Appointor") in the following sequence (the next individual(s)/entity(ies) in the sequence becoming the Appointor in the event of the death, disability, or inability to appoint of the immediately preceding individual(s)/entity(ies): First, Richard E. Polm; Second, Theresa E. Polm; Third, the living adult children of Richard E. Polm and Theresa E. Polm; Fourth, the existing Directors of the Corporation; and Fifth, the majority vote of those Qualified Organizations within the Supported Class who have received grants from the Corporation within the preceding twenty-four (24) months.

2.5   Removal of Director.  Any Director may be removed from office with or without cause by an affirmative vote of at least two-thirds (2/3) of the Board of Directors.

2.6   Vacancy on Board.  In the case of any vacancy on the Board, the Directors may, by an affirmative vote of at least two-thirds (2/3) of the Board of Directors, appoint a Director to fill such vacancy.

2.7   Chairman of the Board.  The Directors shall elect a chairman ("Chairman") to preside at all meetings of the Board at which the chairman is present, and the chairman shall be an ex-officio member of all standing committees.  The Chairman shall exercise such powers as may be assigned by the Board and shall be subject to the control of the Board.

2.8   Compensation.  Each Director shall be entitled to receive reimbursement from the Corporation for expenses incurred in attending any meeting of the Board.  In general, the Directors shall not receive any stated salary for their services; provided, however, that the Board may fix a sum to be allowed for attendance at each of its meetings and such sum may be payable, in the Board's discretion, even if a meeting is adjourned because a quorum is not present.

© 2006 Kallina & Associates, LLC                    2

2.9    Committees. The Board shall appoint from among its members an Executive Committee to manage and oversee the day-to-day operations of the Corporation. The Executive Committee shall report and be responsible to the full Board, which shall review and approve (or disapprove) the actions of the Executive Committee at least annually. The Executive Committee, as with all other committees of the Board, shall consist of Managing Directors who collectively shall have six (6) votes, and Other Directors who collectively shall have five (5) votes, similar to the voting structure of the Board as a whole. In addition to the Executive Committee, the Board may appoint by resolution such committee(s) as it may deem appropriate, and may grant such committee(s) the right to exercise the powers of the Board. All such committee(s) shall have all the powers delegated by the Board except for the power to direct distribution of all or substantially all of the Corporation's assets. Each committee may fix rules of procedure for its affairs. Every such committee so established must contain at least two directors including one Managing Director, and the allocation of votes among Managing Directors and Other Directors shall be the same as the voting structure for the overall Board, as outlined above in Section 2.3.

**SECTION 3  Meetings of the Directors**

3.1    Annual Meetings. The annual meeting of the Board for the transaction of its affairs shall be held in March, or on such other day as shall be set by the Board.

3.2    Special Meetings. Special meetings of the Board may be called at any time for any purpose by the Chairman of the Board, the President or a majority of the Board, and must be called by the Secretary of the Board upon the request in writing of at least twenty-five percent (25%) of the Directors. Such call and/or request shall state the purpose(s) of the meeting. Matters coming before the Board at a special meeting shall be confined to the purpose(s) stated in the notice of the meeting.

3.3    Place of Holding Meetings. Meetings of the Board shall be held at the principal office of the Corporation, unless otherwise designated by the Board.

3.4    Notice of Meetings. Written notice of each meeting of the Board shall be mailed, postpaid, by the Secretary to each Director at his or her last known post office address, as it appears on the books of the Corporation, at least ten (10) days before the meeting. Each notice shall state the place, day and hour at which the meeting is to be held and, in the case of any special meeting, shall state briefly the purpose(s) thereof. No failure to give notice or irregularity in such notice shall affect the validity of the proceedings at such meeting. Notwithstanding the foregoing provisions, each person entitled to notice may waive such notice by signing a waiver of notice or consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or by attending the meeting without protest prior to the meeting or at its commencement. These waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meetings.

3.5    Quorum. The presence of Directors comprising a majority vote of all Directors shall constitute a quorum at meetings of the Board. In the absence of a quorum, the meeting may be adjourned from time to time by a majority vote of the Directors present or represented,

© 2006 Kallina & Associates, LLC

without any notice other than by announcement at the meeting, until a quorum is present. At any resumption of an adjourned meeting at which a quorum is present, any matters may be transacted which might have been transacted if the meeting had been held as originally called.

3.6    Conduct of Meetings. Meetings of the Board shall be presided over and chaired by the Chairman of the Board or, in his or her absence, by the President or, in his or her absence, by a chairman to be elected at the meeting. The Secretary of the Corporation or, in his or her absence, any Assistant Secretary shall act as secretary of such meetings or, if none of said officers is present, the chairman shall appoint a person to act as secretary of the meeting.

3.7    Order of Affairs. All meetings of the Board shall be conducted in the following order: (a) call to order; (b) proof of the due calling of the meeting; (c) presentation of the oral or written certification of the person who mailed the notice of the meeting, which certification shall be deemed conclusive proof of service; (d) reading and approval or disapproval of the minutes of the most recent meeting of the Board; (e) presentation of reports of officers and committees; (f) notice of appointment of Directors; (g) review of unfinished matters; (h) presentation of new matters; and (i) adjournment.

3.8    Voting. Except as otherwise specifically provided to the contrary herein and subject to Section 2.3 hereinabove, all elections, resolutions and other matters requiring a vote of the Directors shall be had and all questions shall be decided by the affirmative vote of a majority of all votes entitled to be cast thereon at a duly constituted meeting of the Directors; and where these By-Laws require a two-thirds (2/3) vote, it shall mean the affirmative vote of at least two-thirds (2/3) of all votes entitled to be cast thereon at a duly constituted meeting of the Directors.

3.9    Informal Action by Directors. Any action required or permitted to be taken at a meeting of the Board, or of any committee thereof, may be taken without a meeting, if a unanimous written consent setting forth the action so taken is filed with the minutes of the Board or committee and is signed by each Director or committee member entitled to vote on the subject matter of the action so taken.

3.10    Telephonic Meetings. Any meeting of the Board, or of any committee thereof, may be conducted without the physical presence of a quorum of the Directors if a quorum of the Directors is present in person and/or by telephone, so long as all individuals who are present in person or by telephone may telephonically hear one another.

## SECTION 4    Officers

4.1    Election, Tenure and Compensation. The Directors shall have the power to adopt rules and ordinances for conducting their affairs as necessary and convenient to accomplish the purposes of the Corporation stated in Section 1.1 hereof. Pursuant to this power, the Directors may elect officers, subject to the control and direction of the Executive Committee, to run the day-to-day affairs of the Corporation. Each year, the Directors may elect a President, one or more Vice-Presidents, and such other officers as the Board may consider necessary for the proper conduct of the affairs of the Corporation. Notwithstanding the foregoing, the Directors shall

© 2006 Kallina & Associates, LLC                4

elect a Secretary and a chief financial officer ("Treasurer"). A person may hold more than one office of the Corporation, but may not serve concurrently as both President or Chairman of the Board and Secretary or as President or Chairman of the Board and Treasurer. An individual who holds more than one office may not act in more than one capacity to execute, acknowledge or verify any instrument required to be executed, acknowledged or verified by more than one officer.

The election of an individual as an officer and the terms and conditions of employment and continued employment of each officer shall be determined by the Board, based upon the recommendation of the Executive Committee. Assuming officers are elected, the officers shall be elected by the Board at their annual meeting or, whenever a vacancy requires, at a special meeting called for that purpose. In the event that any office shall not be filled by the Board or, once filled, subsequently becomes vacant, then such office and all references thereto in these By-Laws shall be deemed inoperative unless and until such office is filled in accordance with the provisions of these By-Laws. Any officer may be removed from his position with or without cause by a two-thirds (2/3) affirmative vote of the Board.

4.2    Powers and Duties of the President. The President (or if there is no President, the Chairman of the Board) shall have general charge and control of all the Corporation's affairs and properties. The President may sign and execute, in the name of the Corporation, all authorized deeds, mortgages, bonds, contracts or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, these By-Laws or the Board to some other officer or agent of the Corporation. The President shall preside at all meetings of the Board in the absence of the Chairman of the Board or in the event of a vacancy in such office, and shall be ex-officio a member of all standing committees of the Board. In general, the President shall have the powers and duties of supervision and management generally incident to the office of president and such other duties as may be assigned by the Executive Committee, and shall be subject to the control of the Executive Committee.

4.3    Powers and Duties of a Vice-President. The Board may elect and appoint a Vice-President or more than one Vice-President. Any Vice-President may sign and execute, in the name of the Corporation, all authorized deeds, mortgages, bonds, contracts or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, these By-Laws or the Board to some other officer or agent of the Corporation. In case of the absence or disability of the President, or at the President's request, the duties of the President may be performed by any Vice-President, and the taking of any action by any Vice-President in lieu of the President shall be conclusive evidence of the absence or disability of the President. Each Vice-President shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.4    Powers and Duties of a Secretary. The Secretary shall give, or cause to be given, notice of all meetings of the Board and all other notices required by law or these By-Laws; provided that if the Secretary fails to do so for any reason, such notice may be given by any

© 2006 Kallim & Associates, LLC                    5

person directed to do so by the President or by those Directors upon whose written request the meeting is called as provided in these By-Laws. The Secretary shall record all proceedings of the Board meetings, of any committees of the Board in the books provided for that purpose, and shall be custodian of the books, records, and seal of the Corporation. The Secretary shall witness all documents on behalf of the Corporation, the execution of which are duly authorized. In general, the Secretary shall have the powers and duties generally incident to the office of secretary and such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.5     Powers and Duties of a Treasurer. The Treasurer shall have custody and charge of, and be responsible for, all funds, securities, receipts, and disbursements of the Corporation and shall keep full and accurate records of receipts and disbursements in books belonging to the Corporation. The Treasurer shall deposit, or cause to be deposited, all monies and other valuables in the name and to the credit of the Corporation in such depositories as shall be designated by the Board or the President. The Treasurer shall disburse the funds of the Corporation as may be ordered by the President or the Board, taking proper vouchers for such disbursements. When requested, the Treasurer shall render to the President and the Board an account of all his transactions as Treasurer and of the financial condition of the Corporation. In general, the Treasurer shall have the powers and duties generally incident to the office of treasurer and such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.6     Assistant Secretary. The Board may elect and appoint an Assistant Secretary or more than one Assistant Secretary. In the case of the absence or disability of the Secretary, the duties of the office shall be performed by any Assistant Secretary, and the taking of any action by an Assistant Secretary in lieu of the Secretary shall be conclusive evidence of the absence or disability of the Secretary. Each Assistant Secretary shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.7     Assistant Treasurer. The Board may elect and appoint an Assistant Treasurer or more than one Assistant Treasurer. In case of the absence or disability of the Treasurer, the duties of the office shall be performed by any Assistant Treasurer, and the taking of any action by an Assistant Treasurer in lieu of the Treasurer shall be conclusive evidence of the absence or disability of the Treasurer. Each Assistant Treasurer shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

**SECTION 5   Liability And Indemnification Of Directors, Officers and Employees**

5.1     Liability. No Director shall be responsible for the acts of omission or commission of any other Director or of any predecessor Director. The Directors shall not at any time be held liable for mistake of law or of fact, or of both law and fact, or errors of judgment, or any loss coming to the Corporation's assets or the Corporation, or to any other person, except through

actual fraud or willful misconduct on the part of the Director to be charged.  If this provision shall be held invalid as to any class of persons or instances, such fact shall not impair its application to all other classes of persons and instances.

5.2    Indemnification.  The Corporation shall indemnify a Director or officer and may, but shall not be required to, indemnify an employee or agent of the Corporation in connection with a suit or proceeding as permitted in this SECTION 5.

5.2.1    To the extent that a Director or officer incurs or accrues expenses in the defense of any suit or proceeding, the Corporation shall pay reasonable expenses including, but not limited to, attorneys fees, court costs, deposition costs, other fees, judgments, fines and amounts paid in settlement, in advance of the final disposition of the suit or proceeding upon receipt by the Corporation of:

(i)  A written affirmation by the Director or officer of his or her good faith belief that he or she is not liable under Section 5.1 above; and

(ii)  A written undertaking by or on behalf of the Director or officer to repay the amount if it shall ultimately be determined that he or she is in fact liable under Section 5.1 above.

5.2.2    To the extent that an employee or agent of the Corporation successfully defended himself or herself on the merits or otherwise in any proceeding, including a proceeding brought by or on behalf of the Corporation, such indemnification against expenses actually and reasonably incurred in relation to the proceeding may include, fees, judgments, fines and amounts paid in settlement, and shall only be granted in each specific case upon a determination and authorization by the majority of a quorum of the Board.

5.2.3    Nothing contained in this SECTION 5 shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Director, officer, employee, and/or agent of the Corporation, or the ability of the Corporation to otherwise indemnify or advance expenses to any such individual.  It is the intent of this SECTION 5 to provide indemnification to Directors and officers to the fullest extent now or hereafter permitted by law.  Therefore, indemnification shall be provided in accordance with any theory upon which a claim is made, including but not limited to negligence, breach of duty, mismanagement, corporate waste, breach of contract, breach of warranty, strict liability, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal laws.

5.2.4    Notwithstanding any other provision of this SECTION 5, there shall be no indemnification with respect to matters as to which indemnification would result in inurement of net earnings of the Corporation to the benefit of any individual within the meaning Section 501(c)(3) of the Code.

© 2006 Kallina & Associates, LLC                7

5.3    Bonds. The Executive Committee may require any officer, agent or employee of the Corporation to give a bond to the Corporation, conditioned upon the faithful discharge of his or her duties, with one or more sureties and in such amount and with such companies as may be satisfactory to the Executive Committee. No bond or surety shall be required of a Director.

**SECTION 6  Bank Accounts And Loans**

6.1    Bank Accounts. The Board shall designate such Directors or officers of the Corporation who shall have the authority to deposit any funds of the Corporation in such bank(s) or savings institution(s) as shall be designated by the Board. The Board shall also designate such Directors or officers who may withdraw any or all of the funds of the Corporation in any bank or savings institution, upon checks, drafts or other instruments or orders for the payment of money which are drawn against the account or in the name or on behalf of the Corporation and made or signed by such Directors, officers or agents. Each bank or savings institution holding funds of the Corporation is authorized to accept, honor, cash and pay, without limit as to amount, all checks, drafts or other instruments or orders for the payment of money, when drawn, made or signed by Directors or officers so designated by the Board until written notice of the revocation by the Board of the authority of such Directors or officers has been received by such bank or savings institution. The secretary of the Board shall certify to the bank(s) or savings institution(s) holding funds of the Corporation the signature(s) of the Directors or officers of the Corporation so designated by the Board to draw against such funds. If the Board fails to designate the persons having authority to sign checks, drafts or other instruments or orders for the payment of money, as provided in this Section 6.1, all such checks, drafts and other instruments or orders for the payment of money shall be signed by the President and countersigned by the Secretary, Treasurer, an Assistant Secretary or an Assistant Treasurer of the Corporation.

6.2    Loans. The Board shall designate such Directors or officers who shall have authority to make loans and advances or to establish other forms of credit for the Corporation from such banks, trust companies, institutions, corporations, firms or persons designated by the Board; and as security for the repayment of such loans, advances or other forms of credit, to assign, transfer, endorse and deliver, either originally or in addition to or substitution for any or all stocks, bonds, rights and interests of any kind in or to stocks or bonds, certificates of such rights or interests, deposits, accounts, documents covering merchandise, bills and accounts receivable and other commercial paper and evidences of debt at any time held by the Corporation; and as evidence of such loans, advances or other forms of credit, to make, execute and deliver one or more notes, acceptances or written obligations of the Corporation on such terms and with such provisions as to the security, sale or disposition thereof as such Directors or officers shall deem proper; and also to sell to, or discount or rediscount with, such banks, trust companies, institutions, corporations, firms or persons any and all commercial paper, bills receivable, acceptances and other instruments and evidences of debt at any time held by the Corporation, and to that end to endorse, transfer and deliver the same. The secretary of the Board shall certify to each such bank, trust company, institution, corporation, firm or person the signatures of such designated Directors or officers; and each such bank, trust company, institution, corporation, firm or person is authorized to rely upon such certification until written

© 2006 Kallina & Associates, LLC    8

notice of the revocation by the Board of the authority of such Directors or officers has been received by such bank, trust company, institution, corporation, firm or person.

## SECTION 7  Miscellaneous Provisions

7.1    <u>Books and Records.</u> The Corporation shall keep accurate and complete books and records of its accounts and transactions and minutes of the proceedings of its Board and of its committees. The books and records of the Corporation may be in written form or in any other form which can be converted within a reasonable time into written form for visual inspection. Minutes shall be recorded in written form but may be maintained in the form of a reproduction.

7.2    <u>Fiscal Year.</u> The fiscal year of the Corporation shall end on the last day of December.

7.3    <u>Notices.</u> Whenever under the provisions of these By-Laws, notice is required to be given to any Director or officer, it shall be by a communication in writing, signed by the party sending such communication, delivered by certified mail, postpaid, return receipt requested, personally hand delivered, a dated receipt being obtained, or via facsimile transmission, written confirmation obtained. The effective date of such notice shall be deemed to be the third day following the date of mailing of such certified mail, the actual date of hand delivery or facsimile transmission or the date such facsimile is transmitted. Any Director or officer may waive any notice required to be given under these By-Laws.

7.4    <u>Amendment of By-Laws.</u> Anything in these By-Laws to the contrary notwithstanding, these By-Laws or any provision hereof may be altered, amended or supplemented only upon proper notice and upon a two-thirds (2/3) affirmative vote of the Directors. Notwithstanding the Directors' ability to amend these By-Laws, no amendment shall authorize the Directors or any officer to conduct the affairs of the Corporation in any manner or for any purpose contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code. Any amendment which purports to allow the Directors or officers to conduct the affairs of the Corporation in any manner or for any purposes contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code shall be invalid and void ab initio.

7.5    <u>Conflicts.</u> In the event that there should be a conflict between the Articles of Incorporation and these By-Laws, the Articles of Incorporation shall control.

7.6    <u>Governing Law.</u> These By-Laws shall be governed by the same law of the state or commonwealth as shall govern the Articles of Incorporation.

7.7    <u>Headings.</u> Section headings are for reading convenience only and should be disregarded in construing these By-Laws.

7.8    <u>Counterparts.</u> These By-Laws may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument.

© 2006 Kallina & Associates, LLC

The above By-Laws were adopted effective as of July 27, 2005.

_____
RICHARD E. POLM, Director

_____
THERESA E. POLM, Director

_____
LEW SCHRUMM, Director

_____
CARL FRANCIS WIESNER, JR., Director

_____
EMANUEL J. KALLINA, II, Director

© 2006 Kallina & Associates, LLC

# POLM FAMILY FOUNDATION, INC.

## BY-LAWS
## SCHEDULE A

Capital Bible Seminary, Lanham, MD

Equip Institute, Lanham, MD

Educational Media Foundation/K-LOVE Radio, Rocklin, CA

Habitat for Humanity International Inc., Americus, GA

Hospice of the Chesapeake, Annapolis, MD

Mid Atlantic Community Church, Crofton, MD

National Christian Foundation, Atlanta, GA

Providence Center, Annapolis, MD

Search Ministries Inc., Ellicott City, MD

Washington Bible College, Lanham, MD

World Vision Inc., Federal Way, WA

F:\Work\Polm, Rick\Documents\Polm Family Foundation\By-Laws-rev.doc



**Tab VII**

Attachment to Form 1023
Part IV – Narrative Description of Activities

Polm Family Foundation, Inc.
EIN: 20-5661841

     Polm Family Foundation, Inc. (the "Foundation") is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Foundation's Articles of Incorporation (which are attached hereto and incorporated by reference herein as Tab V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes religious, charitable, scientific, literary and/or educational causes, especially those religious organizations that promote Christian evangelism, edification and stewardship, including but not limited to those organizations specified on Schedule A of the Foundation's By-Laws (all of such organizations collectively being the "Supported Class"). For the purposes of this Form 1023 Application, a Supported Organization shall mean a Qualified Organization within the Foundation's Supported Class.

     See the By-Laws and the Cover Letter, attached hereto as Tab III, for a specific analysis of the Foundation's qualification under Section 509(a)(3).

F:\Work\Polm, Rick\Drafts\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part IV - Narrative.doc

Attachment to Form 1023
Part V, Lines 1 and 2

Polm Family Foundation, Inc.
EIN: 20-5661841

| Directors: | Annual Compensation | Hours Worked Monthly |
|---|---|---|
| Carl Francis Wiesner, Jr.<br>3921 Sunset Ridge Road, Suite 201<br>Raleigh, NC 27607 | None | n/a |
| Lew Schrumm<br>2134 Espey Court, Suite 15<br>Crofton, MD 21114 | None | n/a |
| Emanuel J. Kallina, II<br>1122 Kenilworth Drive, Suite 507<br>Towson, MD 21204 | None | n/a |
| Richard E. Polm<br>303 Najoles Road, Suite 101<br>Millersville, MD 21108 | None | n/a |
| Theresa E. Polm<br>303 Najoles Road, Suite 101<br>Millersville, MD 21108 | None | n/a |

**Officers:**

| | Annual Compensation | Hours Worked Monthly |
|---|---|---|
| President: Richard E. Polm | None | 5 |
| Vice President: Lew Schrumm | None | 5 |
| Secretary: Theresa E. Polm | None | 5 |
| Treasurer: Theresa E. Polm | None | 5 |

Pursuant to Section 2.9 of the Foundation's By-Laws, responsibility for the day-to-day affairs, decision making and management of the Foundation rests in the Executive Committee, which consists of Richard E. Polm, Lew Schrumm and Emanuel J. Kallina, II. As required by the law under Code Section 509(a)(3)(C) and the Regulations thereunder relating to Type 2 supporting organizations, a majority of the votes held by the Executive Committee members are held by individuals who are officers, directors and/or trustees of a Supported Organization.

| **Employees:** | **Annual Compensation** | **Hours Worked Weekly** |
|---|---|---|
| None | n/a | n/a |

Two of the Foundation's Directors, Richard and Theresa Polm, are married. One of the Foundation's Directors, Emanuel J. Kallina, II, is the managing member of Kallina & Associates, LLC, a Maryland law firm ("K&A"). The Foundation may choose to hire K&A as its legal counsel in the future. Mr. Kallina has fully disclosed the details surrounding his ownership of K&A to the Foundation's Directors, and will refrain from participating in any discussions or deliberations regarding the hiring of K&A.

See the attached biographies for the Foundation's Directors.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part V – Trustees List.doc

Carl F.(Frank) Wiesner

**Personal:**
Married to Laura Wiesner for 23 years, together they have 2 children, their son Carl is 18 years old and a freshman at NC State University, and their daughter Amanda is 15 years old and is a sophomore in high school. Frank and his family are members of Triangle Community Church in Apex, NC.

**Professional:**
Frank is vice president of Olde South Homes, Inc. a Raleigh, NC based homebuilder that began operations in 1998. Prior to that Frank worked for the Polm Companies based in Millersville, MD from 1985-1996. Frank has been active in Homebuilders Associations over the past 9 years and has served as President of the Durham & Orange Counties HBA in 2005. Currently he serves the North Carolina Homebuilders Assoc.(NCHBA) as its 1st Vice President and is slated to serve as the 2009 President of the NCHBA. Under Frank's leadership Olde South Homes, Inc has been recognized as Builder of the Year 5 times in the last 6 years by the Triangle Sales & Marketing Council. Additionally Frank has been named Builder of the Year by the HBA of Durham & Orange counties in 2004 & 2006.

**Charitable & Non Profit Organizations:**
1992-1996: Trustee and Deacon at Community Gospel Church in Pasadena, MD
1997-2004: Trustee and Elder at Garner Christian Fellowship in Garner, NC
2003-2006: Member Board of Directors of HBA of Durham & Orange Counties NC.
2003-present: Member Board of Directors of Triangle Community Coalition
2005: Trustee of HBA of Durham & Orange Counties Charitable Foundation, Inc.
2005-present: Member of Triangle Community Church, Apex, NC
2006-present: Member of Board of Directors, North Carolina Homebuilders Assn.
2006– present: Member of Board of Directors, Habitat for Humanity of Durham, NC
2007 – Trustee North Carolina Home Builders Educational & Charitable Foundation, Inc.

LEW SCHRUMM


Lew and his family have resided and served in the Anne Arundel community for over twenty years. Called by God into fulltime ministry several years ago, he is passionate about living a life of authentic Christianity. Lew served on the staff at a local church as the director of the small group ministry for five years. He developed and led a thriving program of over sixty life groups. During that time, he also championed the membership, maturity, and ministry teams. After "planting" the MACC two years ago, he was appointed to the lead pastor position. Currently he is studying at Trinity Bible College/Seminary. Having a heart for Jesus, his desire is to be used by God to help others discover the love of Christ. Lew and Nancy are the parents of four grown children and two grandchildren. They look forward to walking through life with you in the years to come.

EXHIBIT A - 3

# CURRICULUM VITAE

**NAME:**  Emanuel J. Kallina, II, J.D., LL.M.

**ADDRESS:**  1122 Kenilworth Drive, Suite 507
Towson, MD 21204

*ejk@kallinalaw.com* – E-mail
*www.kallinalaw.com* – Website

**PHONE NUMBER:**  (410) 377-2170 x. 223
(443) 727-1147 – facsimile

**SPOUSE:**  Anne M. Kallina

**CHILDREN:**  Deborah Anne
Kristine Lee
Abigail Marie

**PRESENT POSITION:**  Principal, Kallina & Associates, LLC

## EDUCATION:

| Institution | Degree | Year |
|---|---|---|
| New York University | Master of Laws in Taxation | 1974 |
| University of Maryland School of Law | J.D. | 1973 |
| Bowdoin College | B.A., English | 1970 |

## EXPERIENCE:

| Employer | Title | Years |
|---|---|---|
| Kallina & Associates, LLC Baltimore, Maryland | Principal | 1982 – Present |
| Niles, Barton & Wilmer Baltimore, Maryland | Partner | 1978-1982 |
| The American University Washington, D.C. | Adjunct Professor | 1978 |
| McKenney, Thomsen & Burke Baltimore, Maryland | Associate | 1975-1977 |

The Honorable R. Dorsey Watkins          Clerk                    1974-1975
United States District Judge
Baltimore, Maryland

## ADMITTED TO:

The Maryland Bar in 1974, the Washington, D.C. Bar in 1977, and practice before the U.S. Fourth Circuit
Court of Appeals, the U.S. District Courts of Maryland and DC, and the U.S. Tax Court.

## OTHER PROFESSIONAL AFFILIATIONS AND HONORS:

Chairman of the Board and President of The James Foundation
Co-founder of the Planned Giving Design Center
Co-founder, Officer and Member, Board of Directors of the Chesapeake Planned Giving Council
Member, Board of Directors (1993-1996) and Chairman, Government Relational Committee (1994-1998)
    of the National Committee on Planned Giving
Licensed real estate broker, insurance agent and former Series 22 Securities Broker
Member, Board of Directors, Educational Media Foundation (K-LOVE Radio)
Member of the Board of Directors of the National Federation of the Blind
Legal Counsel and Advisor to Cambridge School, Inc.
Member, Board of Directors, Advanced Biologics, LLC
Trustee, Board of Trustees, Kingdomworks SDG Foundation
Trustee, Board of Trustees, Living Stones Foundation Charitable Trust
Vice-President, Silicon Valley Christian Community Foundation
Member, Christian Business Men
Participant, Presidential Faith-Based Initiatives Program
Member, Board of Directors, Search Ministries, Inc.
Trustee, Board of Trustees, Smith Barney Charitable Trust
Co-Founder and Trustee, Board of Trustees, Youth Athletic Center, Inc.

## PUBLISHED ARTICLES

"The Real Estate Pooled Income Fund -- Part 1", Emanuel J. Kallina, II, *Tax Management Estates,
    Gifts and Trusts Journal*, Vol. 14, No. 4 , July/August, 1989.

"The Real Estate Pooled Income Fund -- Part 2", Emanuel J. Kallina, II, *Tax Management Estates,
    Gifts and Trusts Journal*, Vol. 14, No. 5, September/October, 1989.

"Charitable Gift Annuity Tuition Plan", Emanuel J. Kallina, II, *Charitable Gift Planning News*, Vol. 9,
    No. 7, July 1991.

"The IRS Likes Planned Giving (Or it Should!)", Emanuel J. Kallina, II, *Planned Giving*, Spring, 1993.

"Accelerated CRT Attacked", Jerry J. McCoy, Esquire and Emanuel J. Kallina, II, *National Committee
    on Planned Giving's Gift Planning Update*, Vol. 1, No. 2, October, 1994.

"Losing the Charitable Tax Deduction -- Part One", Emanuel J. Kallina, II and Kathy Hanson, Esquire,
    *National Committee on Planned Giving's Gift Planning Update*, Vol. 2, No. 5, October, 1995.

"Losing the Charitable Tax Deduction – Part Two", Emanuel J. Kallina, II and Kathy Hanson, Esquire, *National Committee on Planned Giving's Gift Planning Update*, Vol. 2, No. 6, December, 1995.

"Thoughts on the Texas Legislation", Emanuel J. Kallina, II, *Planned Giving Today*, Vol. VII, No. 4, April, 1996.

"Texas Justice", Emanuel J. Kallina, II, *Special Insert to the National Committee on Planned Giving's Gift Planning Update*, Vol. 3, No. 4, August, 1996.

"Losing the Charitable Tax Deduction – Part Three", Emanuel J. Kallina, II and Kathy Hanson, Esquire, *National Committee on Planned Giving's Gift Planning Update*, Vol. 3, No. 6, December, 1996.

"Legislative / Tax Update: The Taxpayer Relief Act of 1997", Emanuel J. Kallina, II and Jonathan D. Ackerman, Esquire, *The Journal of Gift Planning*, Vol. 1, No. 1, October, 1997.

"Point Counterpoint: Would the Elimination of the Estate Tax Adversely Affect Charitable Giving?", Emanuel J. Kallina, II and Douglas E. White, *National Committee on Planned Giving's Journal of Gift Planning*, Vol. 4, No. 4, 4th Quarter 2000.

"Charitable Bequests at the Dawn of the 21st Century", Steven R. Bone and Emanuel J. Kallina, II, *The Journal of Gift Planning*, Vol. 5, No. 4, 4th Quarter 2001.

"Trust Us", Emanuel J. Kallina, II, *Trusts & Estates*, Vol. 144, No. 5, May, 2005.

## QUOTED IN

The Santa Season, Tax-saving charitable gifts: how to do well by doing good, Jane Bryant Quinn, *Newsweek*, December 12, 1994.

The Money Manager: One Charitable Deduction That Could Land You in a Tax Trap, Carolyn T. Geer, *Fortune Magazine*, Vol. 139, No.3, February 15, 1999.

Steps Charities Can Take To Discourage Personal Gifts to Fund Raisers, Holly Hall, *The Chronicle of Philanthropy*, October 14, 2004.

When Gifts Get Personal, Holly Hall, *The Chronicle of Philanthropy*, October 14, 2004.

## PRESENTATIONS / SPEECHES

*Designs in Planned Giving*, Committee on Gift Annuities, Madison, Wisconsin, May 7, 1987.

*Tax and Estate Planning Ideas for Business Owners and Professionals*, Glen Rock Insurance/AETNA, Timonium, Maryland, June 7, 1990.

*Charitable Giving*, Great West Life Insurance Company, Columbia, Maryland, September 11, 1990.

*Probating Estates in Maryland*, John Hancock, Timonium, Maryland, April 16, 1991.

*Hold/Sell Property versus Gift to Pooled Income Fund*, Towson Study Group, Baltimore, Maryland, February 24, 1992.

*The Mathematics of Planned Giving*, Central Presbyterian Church, Baltimore, Maryland, March 19, 1992.

*College Annuities and Other Deferred Gift Annuity Opportunities*, Committee on Gift Annuities, Dallas, Texas, April 28, 1992.

*Elements of a Planned Giving Program*, Sisters of St. Francis of Philadelphia, Wilmington, Delaware, May 19, 1992.

*The Mathematics of Planned Giving*, 1st Nonprofit Organizations Institute, Goucher College, Towson, Maryland  May 28, 1992.

*The Mathematics of Planned Giving*, The Association for Health Care Philanthropy, Region II Conference, St. Michael's, Maryland, June 17, 1992.

*Preserving Family Wealth Through Philanthropy*, Chesapeake Planned Giving Council, Baltimore, Maryland, October 1, 1992.

*Planned Giving*, St. Joseph's Hospital, Towson, Maryland, December 16, 1992.

*Deferred Gift Annuity Tuition Plan*, Planned Giving Council, Miami, Florida, January 9, 1993.

*The Mathematics of Planned Giving*, Planned Giving Professionals of Greater Cincinnati, Cincinnati, Ohio, February 18, 1993.

*The Mathematics of Planned Giving*, Cincinnati Bar Association, Cincinnati, Ohio, February 18, 1993.

*The Mathematics of Planned Giving*, The Estate Planning Council of Central Pennsylvania, Harrisburg, Pennsylvania, May 13, 1993.

*Charitable Lead Trusts-What To Do When The Milk Has Spilled*, Frederick Memorial Hospital, Frederick, Maryland, May 20, 1993.

*Planned Giving Strategies for the Long Run*, National Committee on Planned Giving, Indianapolis, Indiana, October 12, 1993.

*Wealth Transfer Planning*, Charitable Consultants, Inc., California, October 28,   1993.

*Charitable Remainder Trusts ("CRTs") & Planned Giving*, Fleet Bank, Hartford, Connecticut, November 21, 1993.

*Good News Under the 1993 Tax Act*, The Children's Hospital, Baltimore, Maryland, November 23, 1993.

*Charitable Lead Trusts-What To Do When The Milk Has Spilled*, Frederick County Estate Planning Council, Frederick, Maryland, March 3, 1994.

*Planned Giving for the 90's*, Wesley Towers Social Center, Hutchinson, Kansas, March 8, 1994.

*Charitable Lead Trusts ("CLTs")*, Frederick County Estate Planning Council, Frederick, Maryland, March 16, 1994.

*Current Charitable Legislative Developments*, Alabama Planned Giving Council, Birmingham, Alabama, March 22, 1994.

*Charitable Remainder Trusts Today*, Chubb and Son, Baltimore, Maryland, March 24, 1994.

*The Latest Trends in Funding College Tuitions*, Arkansas Chapter of National Committee on Planned Giving, Little Rock, Arkansas, April 29, 1994.
*Red Hot Charitable Gift Planning Concepts*, Chesapeake Planned Giving Council, May 19, 1994.

*Family Limited Partnerships and Discount Valuations: The Basics*, Western Regional Planned Giving Conference, Costa Mesa, California, June 2, 1994.

*Advance Estate Planning*, B&B Associates, Los Altos, California, July 14, 1994.

*Current Legislative Developments in Washington*, Silicon Valley Capital Club, Campbell, California, September 14, 1994.

*Gift Planning Primer*, Maryland Association of CPAs, Martin's West, Baltimore, Maryland, September 22, 1994.

*Basic Retirement Planning Including Charitable Gifts*, New York University Medical Center, New York, October 19, 1994.

*Planned Gift Decisions: Potential Risks and Rewards*, Planned Giving Group of Greater New York, New York, October 21, 1994.

*Contemporary Issues in Running a Successfully Planned Giving Program*, National Committee on Planned Giving, Indianapolis, Indiana, October 27, 1994.

*Gift Planning Primer*, Maryland Association of CPAs, Timonium, Maryland, December 8, 1994.

*Special Designs Using Charitable Remainder Trusts*, Renaissance, Inc., Carmel, Indiana, January 15, 1995.

*Getting the Most Out of Being Closely Held - The Benefits of Charitable Lead Trusts and Supporting Organizations*, Charlotte Estate Planning Council, Charlotte, North Carolina, April 24, 1995.

*Getting the Most Out of Being Closely Held - The Benefits of Charitable Lead Trusts and Supporting Organizations*, The Baltimore Estate Planning Council, Baltimore, Maryland, April 25, 1995.

*Golden Opportunities*, American Counsel on Gift Annuities, San Francisco, California, May 3, 1995.

*Planned Giving Study*, Planned Giving Group of Greater Washington, D.C., Rosslyn, Virginia, May 9, 1995.

*How Far Can You Go?*, Planned Giving Study Group, Washington, D.C., May 9, 1995.

*Funding Public Real Estate Through Social Capital*, Baruche College, New York, May 11, 1995.

*Creative Uses of Charitable Lead Trusts*, Advanced Estate Planning Techniques Conference, May 12, 1995

*Creative Uses of Charitable Lead Trusts*, Interwest Financial Advisors, Tigard, Oregon, May 19, 1995.

*The Palmer/Blake Conundrum*, Hanover College, Indianapolis, Indiana, June 1, 1995.

*How Far Is Too Far? The Prearranged Sale and The Palmer/Blake Conundrum*, Eighth National Conference on Planned Giving, Anaheim, California, October 14, 1995.

*Planned Giving Techniques*, Boy Scouts of America, Kansas City, Missouri, November 17, 1995.

*Recent Legislative Developments in Washington, D.C.*, Mid America Planned Giving Council, Kansas City, Missouri, November 17, 1995.

*Charitable Lead Trusts ("CLTs")*, Renaissance, Inc., New Orleans, Louisiana, February 2, 1996.

*Planning for Tomorrow with Today's Legislation*, Council for Advancement and Support of Education, Washington, D.C., March 28, 1996.

*How Far Is Too Far?*, New England Association for Healthcare Philanthropy, Inc., Plymouth, Massachusetts, April 28, 1996.

*Planned Giving - Maximize Your Assets*, The George Washington University, Washington, D.C., May 11, 1996.

*Entrepreneurial Supporting Organizations*, Rhode Island Planned Giving Council, Providence, Rhode Island, May 14, 1996.

*Charitable Tax Planning and Planned Giving*, National Association of Renaissance Advisors, Denver, Colorado, August 3, 1996.

*The Future of the Income Tax Charitable Deduction*, Council on Foundations, Washington, D.C., September 10, 1996.

*Charitable Remainder Trust Pilot Study*, Northwestern Mutual Life Insurance, Milwaukee, Wisconsin, October 4, 1996.

*Entrepreneurial Supporting Organizations*, National Committee on Planned Giving, Chicago, Illinois, October 9, 1996.

*The Anatomy of a Planned Gift,* National Committee on Planned Giving, Pittsburgh, Pennsylvania, October 10, 1996.

*Creative Uses of Charitable Gift Trusts,* Georgetown University, Washington, D.C., October 23, 1996.

*Planned Giving,* Northern California Planned Giving Council, Larkspur, California, November 4, 1996.

*Entrepreneurial Supporting Organizations,* Philanthro Dynamics, Franklin, Indiana, January 16, 1997.

*Creative Uses of Charitable Remainder Trusts,* Estate Planning Counsel of Portland, Inc., Portland, Oregon, January 31, 1997.

*Real Estate Based Pooled Income Fund ("PIFs"),* San Diego State University, San Diego, California, February 3, 1997.

*Charitable Remainder Trusts ("CRTs"),* Professional Mentoring Program, Franklin, Indiana, February 19, 1997.

*Charitable Remainder Trust Study Group,* Northwestern Mutual Life Insurance, Chicago, Illinois, February 27, 1997.

*Professional Mentoring Study Group Breakout Session,* American Providers, Inc., Indianapolis, Indiana, May 8, 1997.

*Guidance Regarding Charitable Remainder Trusts,* Northwestern Mutual Life Insurance, Chicago, Illinois, June 12, 1997.

*The Hottest Topics in Planned Giving,* Sheppard Pratt Hospital, Baltimore, Maryland, June 18, 1997.

*Guidance Regarding Charitable Remainder Trusts,* The Associated Jewish Community Federation of Baltimore, Baltimore, Maryland, June 24, 1997.

*Major Stock and Stock Option Positions,* Smith/Barney, Chicago, Illinois, July 1, 1997.

*Legal Forum on Charitable Gifts,* National Association of Renaissance Advisors, Denver, Colorado, August 3, 1997.

*Philanthropy Update,* Northwestern Mutual Life Charitable Estate Planning Group, Chicago, Illinois, October 3, 1997.

*The Palmer/Blake Conundrum,* Planned Giving Group of New England, Boston, Massachusetts, October 8, 1997.

*The Importance of Charitable Tax Incentives,* The Dayton Foundation and the Planned Giving Council of Greater Dayton, Dayton, Ohio, October 9, 1997.

*The Palmer/Blake Conundrum* and *Entrepreneurial Supporting Organizations,* Mid-Iowa Planned Giving Council, Des Moines, Iowa , October 21, 1997.

*Creative Uses of Charitable Tools and Financial and Estate Planning*, Cabell Huntington Hospital Planned Giving Seminar, Huntington, West Virginia, November 13, 1997.

*Entrepreneurial Supporting Organizations* and *Charitable Lead Trusts*, The International Forum, Boca Raton, Florida, January 13, 1998.

*An Update on Federal Initiatives Related to Charitable Giving and Gift Planning*, Board of the National Society of Fund Raising Executives — Georgia Chapter and the Board of the Georgia Planned Giving Council, Atlanta, Georgia, February 9, 1998.

*Nimcruts, Charitable Life Insurance and Other Goodies in 1998*, Renaissance National Conference on Social Capital, Dallas, Texas, February 10, 1998.

*Charitable Planning Beyond the 1997 Act*, Association for Advanced Life Underwriting Teleconference, February 12, 1998.

*Insurance Uses in Charitable Planning*, International Association for Financial Planning Maryland Chapter, Baltimore, Maryland, March 12, 1998.

*Planning Strategies Under the 1997 Tax Act*, American Council on Gift Annuities 23rd Conference, Atlanta, Georgia, April 15, 1998.

*Current Developments in the Charitable World*, Advanced Estate Planning Institute, Baltimore, Maryland, April 23, 1998.

*Current Events in Charitable Planning*, Association for Advanced Life Underwriting Annual Meeting, Washington, D.C., May 5, 1998.

*Supporting Organizations and Donor Advised Funds- The Preferred Approach to the Family* Foundation, The 3rd Annual Oklahoma Planned Giving Conference, Tulsa, Oklahoma, May 13, 1998.

*Using Variable Annuities in Charitable Remainder Unitrusts*, National Network of Estate Planning Attorneys Masters Program, Tucson, Arizona, May 22, 1998.

*Entrepreneurial Supporting Organizations*, Million Dollar Roundtable 1998 Annual Meeting, Chicago, Illinois, July 1, 1998.

*Supporting Organizations, Charitable Life Insurance and Charitable Lead Trusts, and Current Legal and Tax Events*, Chicago, Illinois, August 1, 1998.

*The NIMCRUT as a Financial Planning Tool*, The Chesapeake Planned Giving Council Roundtable Seminar, September 16, 1998.

*Charitable Life Insurance, Entrepreneurial Supporting Organizations*, National Network Incorporated/ Renaissance, Inc. Planned Giving National Update, Chicago, Illinois, September 18, 1998.

*Charitable Remainder Trusts- The New TAM, Legislative Developments and Current Events,* San Antonio Estate Planning and Probate Law Association's Estate Planning Seminar, San Antonio, Texas, September 24, 1998.

*The Good, The Bad and The Ugly, Swimming with Dolphins, Sharks and Barracudas, Without Getting Bitten or Bumped,* 11th National Conference on Planned Giving, October 8, 1998.

*Charitable Life Insurance, Does It Work?, Entrepreneurial Supporting Organizations, The Financial Advisors Best Friend,* National Life REACH Seminar, New Orleans, Louisiana, October 13, 1998.

*Entrepreneurial Supporting Organizations,* Central New York Community Foundation Professional Advisors Seminar, Syracuse, New York, October 20, 1998.

*Entrepreneurial Supporting Organizations,* Rochester Area Community Foundation Client Seminar, Rochester, New York, October 20, 1998.

*Entrepreneurial Supporting Organizations,* Rochester Area Community Foundation Technical Seminar, Rochester, New York, October 21, 1998.

*Charitable Life Insurance, Entrepreneurial Supporting Organizations,* Peninsula Community Foundation, 3rd Annual Professional Advisors Conference, Palo Alto, California, February 25, 1999.

*Entrepreneurial Supporting Organizations, Charitable Life Insurance,* Toledo Area Planned Giving Council, University of Toledo- Driscoll Center, March 5, 1999.

*Charitable Life Insurance, Does It Work?* 1999 Renaissance National Conference on Social Capital, Indianapolis, Indiana, April 22, 1999

*Legal Update,* 1999 Renaissance National Conference on Social Capital, Indianapolis, Indiana, April 23, 1999

*Charitable Life Insurance,* Planned Giving Round Table of Southern California, Pasadena, California, May 13, 1999.

*Donor Advised Funds, Supporting Organizations, Private Foundations and Current Events,* Associated Jewish Charities, Baltimore, Maryland, June 21, 1999.

*Retirement Assets and Current Developments,* Billy Graham Evangelistic Association, Lancaster, Pennsylvania, September 13, 1999

*Current Developments and How They Effect the Future of Planned Giving,* Planned Giving Group of Greater New York, New York, New York, September 15, 1999

*Current Developments and Effects on Future of Charitable Giving,* Christian Attorney's Conference, Pepperdine University, Malibu, California, October 12, 1999

*Cutting Edge Charitable Planning With Emphasis on the Growing Trend Toward the Use of the Supporting Organization Over the Private Foundation,* Philadelphia Estate Planning Council, Philadelphia, Pennsylvania, October 19, 1999

*Current Events and Charitable Lead Trusts*, Omaha Community Foundation, 1999 Annual Financial Planners Seminar, Omaha, Nebraska, October 26, 1999

*Current Events and Developments*, Community Foundation of Silicon Valley, San Jose, California, February 2, 2000

*Current Developments and Effect on Future of Charitable Giving*, Trinity Guardian Foundation, Professional Advisor Seminar, Menlo Park, California, February 3, 2000

*Current Legal Developments*, Renaissance National Conference on Social Capital, Indianapolis, Indiana, April 27, 2000

*Current Legal Developments*, National Network of Estate Planning Attorneys Collegium, Reno, Nevada, May 10, 2000

*Creative Uses of CLTs and ESOs*, Advanced Charitable Estate Planning Strategies Seminar, Portland, Oregon, May 15, 2000

*Charitable Giving Rules and Techniques*, Estate & Wealth Strategies Institute, Michigan State University, East Lansing, Michigan, April 2, 2001.

*Taking the Plunge...Dive Back Into the Pooled Income Fund*, National Council on Planned Giving, Annual Conference, Indianapolis, Indiana, October 4, 2001.

*How then shall we lead?*, 2002 Annual Leadership and Management Conference, Christian Management Association, Anaheim, California, March 4, 2002.

*Creative Uses of Charitable Lead Trusts*, United Jewish Endowment Fund of The Jewish Federation of Greater Washington & Inova Health System Foundation, Washington, D.C., May 16, 2002.

*The CRT – Does This Old Dog Still Hunt?*, Salomon Smith Barney, New York, New York, June 4, 2002.

*The CRT – Does This Old Dog Still Hunt?*, Foothill & De Anza Community Colleges, Professional Advisors' Roundtable, Los Altos Hills, California, June 4, 2002.

Panel Discussion: *Creating a Legacy: The Need for Strategic Focus*, National Committee on Planned Giving, Annual Conference, Nashville, Tennessee, October 4, 2002.

*Charitable Giving Update*, Central Indiana Community Foundation, Charitable Gift Planning Conference "Law Day," Indianapolis, Indiana, October 24-25, 2002.

*Entrepreneurial Supporting Organizations*, San Francisco Symphony, San Francisco, California, November 7, 2002.

*Creative Uses of Charitable Lead Trusts*, National Capital Gift Planning Council, 2003 Planned Giving Days in Washington, Arlington, Virginia, May 9, 2003.

*The CRT – Does This Old Dog Still Hunt?*, Institute for Christian Gift Planning Counsel, Destin, Florida October 30, 2003.

*Current Developments in Charitable Giving and Planning*, Shenandoah University Planned Giving Advisory Council, Winchester, Virginia, December 3, 2003.

*Substantiating Charitable Gifts – "No, I Really Didn't Get Anything Back, I Promise!"*, American Council on Gift Annuities, 26th Conference on Gift Annuities, Orlando, Florida, May 7, 2004.

*Planned Giving: Policy Implications for Charitable Giving*, Ivy/MIT/Stanford Conference, Cambridge, Massachusetts, September 13, 2004.

*Charitable Lead Trusts*, Christian Legal Society and Advocates International, 2004 National Conference and Global Convocation, McLean, Virginia, October 28, 2004.

*Current Developments in Charitable Giving and Planning*, Christian Legal Society and Advocates International, 2004 National Conference and Global Convocation, McLean, Virginia, October 28, 2004.

*Creative Uses of Charitable Lead Trusts*, The United Jewish Endowment Fund of The Jewish Federation of Greater Washington and B'nai B'rith International, Washington, DC, November 2, 2004

*CRTs – Will This Old Dog Still Hunt?*, American Red Cross, Washington, DC, February 15, 2005.

*Cross-Border Grants by U.S. Private Foundations* – International Symposium on Cross-Border Charitable Giving, New York, NY, May 2, 2005

*Creative Uses of Charitable Lead Trusts*, American Red Cross, San Antonio, Texas, September 21, 2005.

*Ethical Issues in Gift Planning*, American Red Cross, San Antonio, Texas, September 21, 2005.

*Creative Uses of Charitable Lead Trusts*, 27th Conference on Gift Annuities, San Francisco, California, April 7, 2006.

Richard E. Polm

Richard E. Polm (Rick) is President of The Polm Companies, a local homebuilding company dedicated to providing affordable housing for Anne Arundel County residents.

A native of the area, Mr. Polm graduated from Severna Park High School and attended Anne Arundel Community College before getting into the residential and commercial construction business. In 1979, he opened a siding company, expanding into homebuilding and land development in the mid-80's.

Then in the late 80's, working with city, county and community leaders, he played an instrumental role in the project that started the revitalization of the Bywater Road/Forest Drive Corridor – Oxford Landing. It was during that time that he became involved in and committed to developing communities in the affordable housing range. He has since developed numerous similar communities including Cambridge Crossing in Pasadena, Jason's Landing in Severn, and Daniel's Purchase in Millersville. In 1994, he built the second phase of Oxford Landing.

Mr. Polm became involved in the Martin Luther King Jr. Awards Dinner through the friendship he developed with Carl Snowden while working on the Oxford Landing project. He has been supporting the dinner for the past five years.

Active in the community, Mr. Polm was an avid supporter and coach in the Severna Park Green Hornets soccer program for 15 years, donating the construction of two buildings to the organization. He also served on the board of the Bank of Annapolis from its founding until its merger with Sandy Spring Bank.

In addition, Mr. Polm and his wife, Theresa, currently support a number of non-profit organizations, among them the Providence Center, Hospice of the Chesapeake and Camp Blaze. They are also involved with the Capital Bible Seminars and Washington Bible College, and are members of the Mid-Atlantic Community Church.

Residents of Arnold, Mr. Polm and his wife have two sons, Jason and Daniel, and a daughter, Laura.

Attachment to Form 1023
Part V, Line 5

Polm Family Foundation, Inc.
EIN: 20-5661841

The Foundation has adopted a Conflicts of Interest Policy, a copy of which is attached.

The Board of Directors adopted this Policy by Resolution on February 12, 2007.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part V - conflicts.doc

# POLM FAMILY FOUNDATION, INC.
## Conflict of Interest Policy

### Article I
### Purpose

The purpose of the conflict of interest policy is to protect the interests of the Polm Family Foundation, Inc. ("Foundation") when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer, member of the Board of Directors ("Board"), or committee member of the Foundation, or might result in a possible "excess benefit transaction" as set forth in the Internal Revenue Code and the Regulations thereunder. This policy is intended to supplement but not replace any applicable state and federal laws governing conflict of interest applicable to nonprofit and charitable organizations.

### Article II
### Definitions

1. **Interested Person** – Any member of the Board, officer, or member of a committee who has a direct or indirect financial interest in a transaction or arrangement (described below) is an "Interested Person."

2. **Financial Interest** – A person has a financial interest if the person, directly or indirectly, through business, investment, or family, has:
   a. An ownership or investment interest in any entity with which the Foundation has a transaction or arrangement,
   b. A compensation arrangement with the Foundation or with any entity or individual with which the Foundation has a transaction or arrangement, or
   c. A potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Foundation is negotiating a transaction or arrangement.

A financial interest is a conflict of interest only if the Board decides that a conflict of interest exists.

3. **Compensation** – Compensation includes direct and indirect remuneration as well as gifts or favors that are substantial.

### Articles III
### Procedures

1. **Duty to Disclose**
In connection with any actual or possible conflict of interest, an Interested Person must disclose the existence of the financial interest and be given the opportunity to disclose all material facts to the Board.

**2. Determining Whether a Conflict of Interest Exists**

After disclosure of the financial interest and all material facts, and after any discussion with and presentation by the Interested Person, the Interested Person shall leave the Board meeting while the Board determines whether a conflict of interest exists and the Board votes upon the matter.

**3. Procedures for Addressing the Conflict of Interest**
   a. The Chairman of the Board shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.
   b. After exercising due diligence, the Board shall determine whether the Foundation can obtain with reasonable efforts a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.
   d. If such a more advantageous transaction or arrangement is not reasonably possible under the circumstances, the Board shall determine by a majority vote of the disinterested directors whether the transaction or arrangement is in the Foundation's best interest, for its own benefit, and whether it is fair and reasonable. In conformity with the above determination, the Board shall make its decision as to whether to enter into the transaction or arrangement.

**4. Violations of the Conflicts of Interest Policy**
   a. If the Board has reasonable cause to believe the Interested Person has failed to disclose actual or possible conflicts of interest, it shall inform the Interested Person of the basis for such belief and afford the Interested Person an opportunity to explain the alleged failure to disclose.
   b. If, after hearing the Interested Person's response and after making further investigation as warranted by the circumstances, the Board determines the Interested Person has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

<u>**Article IV**</u>
<u>**Records of Proceedings**</u>

The minutes of the Board shall contain:
   a. The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the Board's decision as to whether a conflict of interest in fact existed.
   b. The names of the persons who were present for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## Article V
## Compensation

a. A member of the Board or of any committee who receives direct or indirect compensation from the Foundation for services is precluded from voting on matters pertaining to that member's compensation.

b. All direct or indirect compensation or remuneration to an Interested Person for services rendered must be approved to the extent possible, IN ADVANCE, by the majority vote of members of the Board who are not related to the Interested Person by blood, by business dealings, or by interlocking board/business relationships (where the Interested Person votes on the compensation of another member of the Board). The purpose of this paragraph is to invoke a favorable presumption under Federal Tax Regulations that the compensation is reasonable. A voting member of any committee whose jurisdiction includes compensation matters and who receives direct or indirect compensation from the Foundation for services is precluded from voting on matters pertaining to that member's compensation.

c. No voting member of the Board or any committee whose jurisdiction includes compensation matters and who receives direct or indirect compensation from the Foundation, either individually or collectively, is prohibited from providing information to any committee regarding compensation.

## Article VI
## Statements of Acknowledgment

Each member of the Board and each member of every committee shall sign a statement which affirms such person:

a. Has received a copy of the Conflict of Interest Policy,
b. Has read and understands the Policy,
c. Has agreed to comply with the Policy, and
d. Understands the Foundation is charitable and in order to maintain its federal tax exemption it must engage primarily in activities which accomplish one or more of its tax-exempt purposes.

## Article VII
## Periodic Reviews

To ensure the Foundation operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-exempt status, periodic reviews shall be conducted and shall include at a minimum the following subjects:

a. Whether compensation arrangements and benefits are reasonable, based on competent survey information, and the result of arm's length bargaining.
b. Whether partnerships, joint ventures, and arrangements with management organizations conform to the Foundation's policies, are properly recorded, reflect reasonable investment

or payments for goods and services, further charitable purposes and do not result in inurement, impermissible private benefit, or in an excess benefit transaction.

Periodic reviews of compensation of the Foundation's President, CEO, CFO, and treasurer must occur at least annually, absent a fixed employment contract which spans a greater period of time. In addition, periodic reviews of such officers' compensation must occur upon the hiring of such officer, and/or the modification of such officer's compensation.

## Article VIII
## Use of Outside Experts

When conducting the periodic reviews as provided for in Article VII, the Foundation may, but need not, use outside advisors. If outside experts are used, their use shall not relieve the Board of its responsibility for ensuring periodic reviews are conducted.

## Article IX
## Audits

To the extent that the Foundation has gross revenue in excess of $2 Million during any calendar year, the Board shall make arrangements for an audited financial statement to be performed under the supervision of an "Audit Committee" of the Board. The Audit Committee: (i) shall be appointed by the Board, (ii) may not include anyone having a material financial interest in any entity doing business with the Foundation, and (iii) may not include any employee or the President, CEO, CFO, or treasurer of the Foundation (whether paid or unpaid). The Audit Committee may consist of as few as one member. No more than 49% of the members of the Audit Committee can also be members of the Finance Committee of the Board. The Audit Committee: (a) shall recommend to the Board the hiring or termination of the independent auditor; (b) shall review the financial affairs of the Foundation and determine whether to accept the audit; (c) shall assure that nonaudit services performed by the auditors conform to standards for independence; and (d) shall approve such nonaudit services.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Conflict of Interest Policy .doc

**Attachment to Form 1023**
<u>Part V, Line 7a</u>

**Polm Family Foundation, Inc.**
**EIN: 20-5661841**

The Foundation may use the legal services of K&A in the future. Since Emanuel J. Kallina, II is one of the Foundation's Directors and also the managing member of K&A, any discussions or deliberations regarding the hiring of K&A will be subject to the Foundation's Conflicts of Interest Policy and procedures, which is attached to this Form 1023. Furthermore, any legal services provided by K&A to the Foundation would be available to the general public under similar terms and conditions as those offered to the Foundation.

F:\Work\Polm, Rick\Drafts\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part V – Line 7a.doc

Attachment to Form 1023
Part VI , Line 1b

Polm Family Foundation, Inc.
EIN: 20-5661841


The Foundation is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Foundation's Articles of Incorporation (which are attached hereto and incorporated by reference herein as Tab V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes religious, charitable, scientific, literary and/or educational causes, especially those religious organizations that promote Christian evangelism, edification and stewardship, including but not limited to those organizations specified on Schedule A of the Foundation's By-Laws (all of such organizations collectively being the "Supported Class").

The Foundation will make grants of cash to various Qualified Organizations within the Supported Class, in furtherance of the long history of giving which Richard and Theresa Polm have exhibited.

**Attachment to Form 1023**
<u>Part IX , Lines 15 and 23</u>

**Polm Family Foundation, Inc.**
**EIN:  20-5661841**

The amounts listed on line 15 represent anticipated grants to supported organizations as follows:

|  | 2007 | 2008 | 2009 |
|---|---|---|---|
| Mid Atlantic Community Church | $ 165,000 | $ 165,000 | $ 165,000 |
| Habitat for Humanity International, Inc. | $ 15,000 | $ 14,000 | $ 14,000 |
| Washington Bible College | $ 165,000 | $ 165,000 | $ 165,000 |
| Search Ministries, Inc. | $ 15,000 | $ 14,000 | $ 14,000 |
| TOTALS | $ 360,000 | $ 358,000 | $ 358,000 |

<u>Line 23 – Operating Expenses</u>

| | |
|---|---|
| Travel, conferences and meetings | $  8,000 |
| Marketing | $ 10,000 |
| Project and other expenses | $  7,000 |
| Total projected expenses | $ 25,000 |

*Specific gifts, contributions, distributions and expenses have yet to be determined.  All numbers are estimates and projections only.*

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Part IX -financials.doc

Attachment to Form 1023
Schedule D, Section I, Line 1

Polm Family Foundation, Inc.
EIN: 20-5661841

<u>Identifying Information about the Supported Organizations</u>

The Foundation is organized and is to be operated exclusively for charitable, religious, and educational purposes and for the support or benefit of, to perform the functions of, or to carry out the purposes (collectively the "Qualified Purposes") of the class of organizations defined in the Foundation's Articles of Incorporation (which are attached hereto and incorporated by reference herein as Tab V) which qualifies as exempt organizations under Sections 501(c)(3), 509(a)(1) and 509(a)(2) of the Code (collectively the "Qualified Organizations") and which supports and promotes religious, charitable, scientific, literary and/or educational causes, especially those religious organizations that promote Christian evangelism, edification, and stewardship, including but not limited to the following list of organizations specified in the Foundation's By-Laws (all of such organizations collectively being the "Supported Class"):

**Capital Bible Seminary**, Lanham, MD

**Equip Institute**, Lanham, MD

**Educational Media Foundation/K-LOVE Radio**, Rocklin, CA

**Habitat for Humanity International Inc.**, Americus, GA

**Hospice of the Chesapeake**, Annapolis, MD

**Mid Atlantic Community Church**, Crofton, MD

**National Christian Foundation**, Atlanta, GA

**Providence Center**, Annapolis, MD

**Search Ministries Inc.**, Ellicott City, MD

**Washington Bible College**, Lanham, MD

**World Vision Inc.**, Federal Way, WA

Copies of the determination letter for each of these charities follow this page.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Sch D.doc

ENT BY: EMF ;                916 282 1551;        SEP-12-00  8:39AM;         PAGE 2/2

Internal Revenue Service
District Director

Department of the Treasury

RECEIVED MAY 2 0 1987

P O BOX 36001 STOP SF-4-4-46
SAN FRANCISCO, CA  94102

Employer Identification Number:
  94-2916342
Case Number:
  957051001
Contact Person:
  ACLAND FORTIER
Contact Telephone Number:
  (415) 556-0319

Date:  MAY  21, 1987

EDUCATIONAL MEDIA FOUNDATION
50 MARK WEST SPRING RD 3
SANTA ROSA, CA  95401

Our Letter Dated:
  Oct. 28, 1983
Caveat Applies:
  No

Dear Applicant:

   This modifies our letter of the above date in which we stated that you
would be treated as an organization which is not a private foundation until
the expiration of your advance ruling period.

   Based on the information you submitted, we have determined that you are
not a private foundation within the meaning of section 509(a) of the Internal
Revenue Code, because you are an organization of the type described in section
509(a)(1) and 170(b)(1)(A)(vi). Your exempt status under section 501(c)(3) of
the code is still in effect.

   Grantors and contributors may rely on this determination until the
Internal Revenue Service publishes a notice to the contrary. However, a
grantor or a contributor may not rely on this determination if he or she was
in part responsible for, or was aware of, the act or failure to act that
resulted in your loss of section 509(a)(1) status, or acquired knowledge
that the Internal Revenue Service had given notice that you would be removed
from classification as a section 509(a)(1) organization.

   Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

   If the heading of this letter indicates that a caveat applies, the caveat
below or on the enclosure is an integral part of this letter.

   If you have any questions, please contact the person whose name and
telephone number are shown above.

                          Sincerely yours,

                          Frederick C. Nielsen
                          District Director

FEB-14-2007(WED) 11:33                                                    P. 001/001

Internal Revenue Service
District Director                              Department of the Treasury

P. O. Box 941    Rm. 1112
ATLANTA, GA. 28301

Date:    JUL 1 8 1988

                                      Employer Identification Number:
                                      58-1674794
                                      Contact Person:
                                      ROBERTA VAN METER
DURHAM COUNTY HABITAT FOR HUMANITY    Contact Telephone Number:
3011 ACADEMY RD                       (404) 331-0103
DURHAM, NC  27707                     Our Letter Dated:
                                      8-20-86
                                      Caveat Applies:
                                      No

Dear Applicant

        This modifies our letter of the above date in which we stated that you
would be treated as an organization which is not a private foundation until
the expiration of your advance ruling period.

        Based on the information you submitted, we have determined that you are
not a private foundation within the meaning of section 509(a) of the Internal
Revenue Code because you are an organization of the type described in section
509(a)(1) and 170(b)(1)(A)(vi). Your exempt status under Code section 501(c)(3)
is still in effect.

        Grantors and contributors may rely on this determination until the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not
rely on this determination if he or she was in part responsible for, or was
aware of, the act or failure to act that resulted in your loss of such status,
or acquired knowledge that the Internal Revenue Service had given notice that
you would be removed from classification as a section 509(a)(1) organiza-
tion.

        If the heading of this letter indicates that a caveat applies, the caveat
below or on the enclosure is an integral part of this letter.

        Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

        If you have any questions, please contact the person whose name and
telephone number are shown above.

                                      Sincerely yours,

                                      Paul Williams
                                      District Director

Apr-04-01 12:42P                                                          P.02

Department of the Treasury
Internal Revenue Service
P.O. Box 9941
Ogden  UT  84409

In reply refer to: 2916820108
Aug. 18, 1998  LTR 1224C
91-1914868   000000 00 000
                      03462

HABITAT FOR HUMANITY INTERNATIONAL
  INC
121 HABITAT ST
AMERICUS  GA  31709

      Taxpayer Identification Number: 91-1914868

Dear Taxpayer:

Thank you for the inquiry dated Apr. 10, 1998.

Our records show your organization is exempt from income tax
under Section 501(c)(3) of the Internal Revenue Code.

According to our records, Employer Identification Number (EIN)
58-1285159 was originally used for the parent organization.  Because
of a computer problem, we are unable to use EIN 58-1285159.  Please
use EIN 91-1914868 for the parent organization and keep this number in
your permanent records.

If you have any questions about this letter, please write to us at
the address shown at the top of the first page of this letter.  If you
prefer, you may call the IRS telephone number listed in your local
directory.  An employee there may be able to help you, but the office
at the address shown on this letter is most familiar with your case.

Whenever you write, please include this letter and, in the spaces
below, give us your telephone number with the hours we can reach you.
Keep a copy of this letter for your records.

Telephone Number (    )_____  Hours_____



UTR, UTS, DOP

Apr-04-01 12:43P                                                          P.03

Department of the Treasury
Internal Revenue Service

                                                              2916820108
                              Aug. 18, 1998   LTR 1224C
                              91-1914868    000000 00 000
                                                                 03463

HABITAT FOR HUMANITY INTERNATIONAL
  INC
121 HABITAT ST
AMERICUS  GA  31709

We apologize for any inconvenience we may have caused you, and thank
you for your cooperation.

                              Sincerely yours,

                              Barbara J. McCormick

                              Barbara J. McCormick
                              Chief, Accounts Service Section

Enclosure(s):
Copy of this letter
Envelope
Publication 557

02/09/2007  12:50    4438371534                                                    PAGE  02

**Internal Revenue Service**

Date:  May 12, 2005

HOSPICE OF THE CHESAPEAKE
FOUNDATION INC
445 DEFENSE HWY
ANNAPOLIS          MD 21401-8955 456

Department of the Treasury
P. O. Box 2508
Cincinnati, OH  45201

Person to Contact:
  Ms Jackson  31-07417
  Customer Service Representative
Toll Free Telephone Number:
  8:30 a.m.  to 5:30 p.m. ET
  877-829-5500
Fax Number:
  513-263-3756
Federal Identification Number:
  52-1457419

Dear Sir or Madam:

This is in response to your request of April 12, 2005, regarding your organization's tax-exempt status.

In July 1986 we issued a determination letter that recognized your organization as exempt from federal income tax. Our records indicate that your organization is currently exempt under section 501(c)(3) of the Internal Revenue Code.

Our records indicate that your organization is also classified as a public charity under sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code.

Our records indicate that contributions to your organization are deductible under section 170 of the Code, and that you are qualified to receive tax deductible bequests, devises, transfers or gifts under section 2055, 2106 or 2522 of the Internal Revenue Code.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

Sincerely,

*Janna K. Skufca*

Janna K. Skufca, Director, TE/GE
Customer Account Services

02/20/2007 07:43 FAX 301 924 7403          DATA CONNECT ENTERPRISE                                    ☒002

# GAMMON & GRANGE, P.C.

ATTORNEYS AND COUNSELLORS AT LAW

ROBERT B. ADAMS†
STEPHEN M. CLARKE
A. WRAY FITCH III
JAMES A. GAMMON*†
GEORGE R. GRANGE II
STEPHEN S. KAO
STEPHEN H. KING
NANCY OLIVER LeSOURD
KENNETH E. LIU
ROBERT W. MALONE
TIMOTHY R. OBITTS
W. FRANKLIN PUGH, P.L.C.‡
DANIEL E. SMITH, P.C.‡
SCOTT J. WARD

*Not Admitted in Virginia
† Of Counsel — McLean
‡ Of Counsel — Leesburg

SEVENTH FLOOR
8280 GREENSBORO DRIVE
McLEAN, VA 22102-3807

TELEPHONE (703) 761-5000
FACSIMILE (703) 761-5023

WEB SITE
WWW.GG-LAW.COM
EMAIL
GG@GG-LAW.COM

LEESBURG OFFICE
SUITE 300
305 HARRISON STREET, SE
LEESBURG, VA 20175-3729

August 29, 2005

RE:    Tax Exempt Status of Mid Atlantic Community Church

Dear Sirs:

Gammon & Grange, P.C., was retained to assist Mid Atlantic Community Church in the process of its incorporation and organization as a church exempt from federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code ("IRC"). Toward that end, we prepared and filed Articles of Incorporation and Bylaws in conformity with the requirements of the Internal Revenue Service for tax exempt church organizations. Effective January 19, 2004, Mid Atlantic Community Church was established as a not-for-profit religious corporation organized under the laws of the State of Maryland.

As you are probably aware, churches are exempt from the IRS application (Form 1023) and recognition requirements that are applicable to most other IRC Section 501(c)(3) organizations in order to rely on exemption from federal income taxation.[1]  "Church" is not defined by the IRC. However, the IRS has recognized various characteristics of a church. For instance, IRS Publication 1828 notes:

---

[1] IRC Section 508 (a) provides:

Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)--
  (1) unless it has given notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or
  (2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

In enumerating the exceptions to the Section 508(a) notice requirement, IRC Section 508(c)(1) provides:
  (1) Mandatory exceptions
    Subsections (a) and (b) shall not apply to--
      (A) churches, their integrated auxiliaries, and conventions or associations of churches, or
      (B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

---

Certain characteristics are generally attributed to churches. These attributes of a church have been developed by the IRS and by court decisions. They include: distinct legal existence; recognized creed and form of worship; definite and distinct ecclesiastical government; formal code of doctrine and discipline; distinct religious history; membership not associated with any other church or denomination; organization of ordained ministers; ordained ministers selected after completing prescribed courses of study; literature of its own; established places of worship; regular congregations; regular religious services; Sunday schools for the religious instruction of the young; schools for the preparation of its ministers.

It is our opinion that Mid Atlantic Community Church is a *bona fide* church. The Church has a regular congregation that meets every Sunday morning at 10:00 AM in Crofton, Maryland for public worship services and Sunday school for children. The Church has a recognized form of Christian worship, and is led by an ordained minister. The Church has a recognized form of ecclesiastical government led by the pastor and a council of leaders who meet the Scriptural guidelines for elders according to I and II Timothy and Titus. Additionally, the Church has a distinct legal existence as a Maryland religious corporation. Thus, pursuant to IRC Section 508 Mid Atlantic Community Church is not required to obtain IRS recognition of its exemption from federal income tax under IRC Section 501(c)(3), but qualifies as a tax exempt organization described in IRC Section 501(c)(3), and as a public charity described in IRC Sections 509(a)(1) and 170(b)(1)(A)(i).

If you have any questions about the tax exempt status of Mid Atlantic Community Church, please do not hesitate to contact us at 703-761-5000.

Sincerely,

*Stephen H. K*

Stephen H. King
George R. Grange II

EXHIBIT A - 4

02/20/2007 07:44 FAX 301 924 7403    DATA CONNECT ENTERPRISE    ⌐005

# GAMMON & GRANGE, P.C.
### ATTORNEYS AND COUNSELLORS AT LAW

ROBERT B. ADAMS†
STEPHEN M. CLARKE
A. WRAY FITCH III
JAMES A. GAMMON*†
GEORGE R. GRANGE II
LISA D. HERBST
STEPHEN S. KAO
STEPHEN H. KING
NANCY OLIVER LeSOURD
KENNETH E. LIU
ROBERT W. MALONE
TIMOTHY R. OBITTS
W. FRANKLIN PUGH, P.L.C.‡
DANIEL D. SMITH, P.C.‡
SCOTT J. WARD
MICHAEL J. WOODRUFF, P.C.†

*NOT ADMITTED IN VIRGINIA
† OF COUNSEL – McLEAN
‡ OF COUNSEL – LEESBURG

SEVENTH FLOOR
8280 GREENSBORO DRIVE
McLEAN, VA 22102-3807

TELEPHONE (703) 761-5000
FACSIMILE (703) 761-5023

WEB SITE
WWW.GG-LAW.COM
EMAIL
GG@GG-LAW.COM

LEESBURG OFFICE
SUITE 300
305 HARRISON STREET, SE
LEESBURG, VA 20175-3729



June 1, 2004

M.L. Webb
Mid-Atlantic Community Church            **VIA FIRST CLASS MAIL**
2906 Applegreen Lane
Bowie, MD 20716

Re:    (1632-1) Mid-Atlantic Community Church: Articles of Incorporation

Dear Mr. Webb:

Please find enclosed the Filed Articles of Incorporation of Mid-Atlantic Community Church. The effective date of the filing is January 19, 2004

This original stamped Articles of Incorporation should be kept with the Church's other permanent corporate documents. We have retained a copy for our files as well.

Please call if you have any questions.

Sincerely,

Stephen H. K

Stephen H. King
George R. Grange II

Enclosure:    as stated above

[K:\1632\WebbCERTAMEND.wpd]

02/20/2007 07:44 FAX 301 924 7403          DATA CONNECT ENTERPRISE                    ☒006
Sent By: GAMMON & GRANGE P.C.;          7037615023;          Jan-19-04  2:39PM;          Page 3/4



# ARTICLES OF INCORPORATION
## OF
## MID ATLANTIC COMMUNITY CHURCH

The undersigned, Lewis Schramm at 2533 Cheval Drive, Davidsonville, MD 21035, Nancy Schramm at 2533 Cheval Drive, Davidsonville, MD 21035, ML Webb at 2906 Applegreen Lane, Bowie, MD 20716, and George Anderson at 2912 Applegreen Lane, Bowie MD 20716, being at least 18 years of age and having been elected by the members of the congregation to act as trustees, in the name and on behalf of the congregation, do hereby associate ourselves as incorporators with the intention of forming a religious corporation under the general laws of Maryland.

**ARTICLE 1:** Name. The name of the corporation and church is Mid Atlantic Community Church, hereinafter referred to as "the Corporation" or "the Church."

**ARTICLE 2:** Duration. The period of the Corporation's duration is perpetual.

**ARTICLE 3:** Purposes. The Corporation is organized and shall be operated as a church exclusively for religious, charitable, and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986 or a related section of a successor statute (hereinafter "Code"), including but not limited to providing opportunities for individuals to become fully devoted followers of Jesus Christ through such activities as regular worship services, small ministry groups, religious education classes, and other religious outreach activities. To carry out the stated purposes, the Corporation may do any and all lawful acts which may be necessary or useful for the furtherance of its purposes.

**ARTICLE 4:** Tax Exempt Provisions. The property of this Corporation is irrevocably dedicated to religious, charitable, and educational purposes, and no part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its members, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered to or for the Corporation and to make payments and distributions in furtherance of the purposes set forth in these Articles. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation. The Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office.

Notwithstanding any other provision of these articles, the Corporation shall not carry on any activities not permitted to be carried on by a corporation exempt from Federal income tax under section 501(c)(3) of the Code or by a corporation contributions to which are deductible under section 170 of the Code.

In the event the Corporation is found to be in any one year a "private foundation" as defined by Section 509 (a) of the Code, it shall be required to distribute its income for such taxable year at such time and in such manner as not to subject the Corporation to taxation under Section 4942 of the Code; and further shall be prohibited from any act of "self-dealing" as defined in Section 4941(d) of the Code, from retaining any "excess business holdings" as defined by Section 4943(c) of the Code, and from making any investments in such manner as to subject the Corporation to

taxation under Section 4944 of the Code.   The Corporation shall not make any taxable expenditure as defined in Section 4945(d) of the Code.

Upon dissolution of the Corporation, the Trustees shall, after paying or making provision for payment of all the liabilities of the Corporation, dispose of all of the assets of the Corporation exclusively for the purposes of the Corporation in such manner, or to such organization or organizations organized and operated exclusively for religious, charitable or educational purposes, as shall at the time qualify as an exempt organization or organizations under Section 501(c)(3) of the Code, as the Trustees shall determine. Any such assets not so disposed of shall be disposed of by a Court of competent jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

**ARTICLE 5:** Principal Place of Worship. The street address of the principal place of worship is 2533 Cheval Drive, Davidsonville, MD 21035, or such other place as the Leadership Council shall from time to time determine.

**ARTICLE 6:** Resident Agent. The name of the resident agent of the Corporation in Maryland is Lewis Schrumm, whose address is 2533 Cheval Drive, Davidsonville, MD 21035.

**ARTICLE 7:** Appointment of Trustees.
7.1. Time and manner for the appointment of Trustees. Each Trustee shall serve in such position for a term of one year (unless he is removed, resigns, or otherwise is unable to perform his duties as a Trustee), and there shall be no limitation as to the number of consecutive terms that may be served. Trustees may be appointed from time to time by manner of nomination by the Pastor and approval by a majority of the members of the Corporation.
7.2. Qualifications of Trustees. Trustees must be members of the Church.
7.3. Qualifications of those able to vote for Trustees. Members of the Corporation, who shall be the Leadership Council of the Church, may vote to appoint a nominated Trustee.

IN WITNESS WHEREOF, we the incorporators have signed these Articles of Incorporation this *12th* day of January 2004 and severally acknowledge the same to be our act.

Lewis Schrumm            *Lewis Schrumm*

Nancy Schrumm            *Nancy Schrumm*

ML Webb                  *ML Webb*

George Anderson          *George Anderson*

CUST ID:0001293884
WORK ORDER:0000040066
DATE:01-23-2004 12:47 PM
AMT. PAID:$170.00

I hereby consent to my designation in these Articles as resident agent for this Corporation.

*Lewis Schrumm*
Lewis Schrumm, Resident Agent

# GAMMON & GRANGE, P.C.
ATTORNEYS AND COUNSELORS AT LAW

ROBERT B. ADAMS†
J. BRIAN BECKHAM
A. WRAY FITCH III
JAMES A. GAMMON*†
GEORGE R. GRANGE II
STEPHEN S. KAO
HOLLY D. KURDLER*
STEPHEN H. KING
NANCY OLIVER LESOURD
DAVID J. LONG*
KENNETH E. LIU
ROBERT W. MALONE
TIMOTHY R. OBITTS
W. FRANKLIN PUGH, P.L.C.‡
DANIEL D. SMITH, P.C.‡
SCOTT J. WARD

* NOT ADMITTED IN VIRGINIA
† OF COUNSEL — McLEAN
‡ OF COUNSEL — LEESBURG

SEVENTH FLOOR
8280 GREENSBORO DRIVE
McLEAN, VA 22102-3807

TELEPHONE (703) 761-5000
FACSIMILE (703) 761-5023

WEBSITE
www.GG-LAW.com

EMAIL
GG@GG-LAW.COM

LEESBURG OFFICE
SUITE 300
305 HARRISON STREET, SE
LEESBURG, VA 20175-3729

## COVER SHEET FACSIMILE MESSAGE

**\*\* WARNING \*\* WARNING \*\* WARNING \*\* WARNING \*\* WARNING \*\***
© Copyright 2006 Gammon & Grange, P.C.  This facsimile contains information that is privileged, confidential and copyrighted, which is intended only for the addressed individual or entity.  Any unintended recipient of this transmission is hereby notified that any review, disclosure, reproduction or dissemination of this information is strictly prohibited.  If you have received this transmission in error, please notify us immediately by telephone, and return the original document(s) to us by mail.

| Date:   February 22, 2007 | Client No. 1832-1 |
|---|---|
| To: Alysia Lumley | Fax No. 410-987-2992 |
| | |
| | |
| From: Stephen H. King | Fax No.: (703) 761-5023 |

COMMENTS:
Ms. Lumley:

As requested, attached is a copy of the Maryland sales tax exemption application of Mid Atlantic Community Church.  The cover letter to the application explains that churches are automatically IRC Section 501(c)(3) tax exempt organizations, and are not required to apply for such status with the IRS.  Note that we do not have a copy of the confirmation of the Maryland sales tax exemption as that was sent directly to the church.

Kindest regards,
Steve King

No. of Pages:   22    (Including this cover sheet)

STEPHEN M. CLARKE
A. WRAY FITCH III
JAMES A. GAMMON*†
GEORGE R. GRANGE II
STEPHEN S. KAO
STEPHEN H. KING
NANCY OLIVER LeSOURD
KENNETH E. LIU
ROBERT W. MALONE
TIMOTHY R. OBITTS
SCOTT J. WARD
MICHAEL J. WOODRUFF, P.C.†

*Not Admitted in Virginia
† Of Counsel

SEVENTH FLOOR
8280 GREENSBORO DRIVE
McLEAN, VA 22102-3807

TELEPHONE
(703) 761-5000
FACSIMILE
(703) 761-5023

WEB SITE
WWW.GG-LAW.COM
EMAIL
GG@GG-LAW.COM

March 10, 2004

Comptroller of Maryland
Central Registration
Revenue Administration Center
Annapolis, MD 21411-0001

**VIA FIRST CLASS MAIL**

RE:    (1832-1) Maryland Combined Registration Application

Dear Sirs:

Please find enclosed the Maryland Combined Registration Application of our client, Mid Atlantic Community Church, which is being submitted as application for a sales and use tax exemption as a non-profit organization.

Enclosed with the application are the Articles of Incorporation, Bylaws, and Schedule A of IRS Form 1023.

As you are probably aware, churches are exempt from the IRS application (Form 1023) and recognition requirements that are applicable to most other IRC Section 501(c)(3) organizations in order to rely on exemption from federal income taxation.[1]

---

[1] IRC Section 508 (a) provides:

Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)--
    (1) unless it has given notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or
    (2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

In enumerating the exceptions to the Section 508(a) notice requirement, IRC Section 508(c)(1) provides:
    (1) Mandatory exceptions
        Subsections (a) and (b) shall not apply to--
            (A) churches, their integrated auxiliaries, and conventions or associations of churches, or
            (B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

"Church" is not defined by the IRC. However, the IRS has recognized various characteristics of a church. For instance, IRS Publication 1828 notes:

> Certain characteristics are generally attributed to churches. These attributes of a church have been developed by the IRS and by court decisions. They include: distinct legal existence; recognized creed and form of worship; definite and distinct ecclesiastical government; formal code of doctrine and discipline; distinct religious history; membership not associated with any other church or denomination; organization of ordained ministers; ordained ministers selected after completing prescribed courses of study; literature of its own; established places of worship; regular congregations; regular religious services; *Sunday schools* for the religious instruction of the young; schools for the preparation of its ministers.

We have attached Schedule A of the IRS Form 1023 application, which demonstrates that Mid Atlantic Community Church is a *bona fide* church. Although publicly advertised worship services will not begin until April 11, the church has developed commitments for a regular congregation, and has in place plans for its regular worship services, Sunday schools and Bible classes, a recognized form of worship, and an established place for worship. As indicated by its Bylaws, the Church has a recognized form of church government, and a distinct legal existence. Thus, pursuant to IRC Section 508, Mid Atlantic Community Church is not required to obtain IRS recognition of its exemption from federal income tax under IRC Section 501(c)(3).

Please forward confirmation of receipt and approval to the undersigned at the letterhead address above. If additional information is necessary or there are any questions, please call the undersigned at 703-761-5000.

Sincerely,

*Stephen H-J*

Stephen H. King
George R. Grange II

Enclosures:   as stated above

cc:        ML Webb

---

Page 1

Comptroller of Maryland

# Combined Registration Application

See Instructions on page IV

| Office Use only |
| --- |

**SECTION A: All applicants must complete this section.**

**1a)** Federal Employer Identification Number (See Instructions)

`5 1 - 0 3 3 5 1 7 7` AND

**b)** Social security number of owner, officer or agent responsible for taxes (must be supplied)

`2 2 2 - 3 0 - 5 8 7 2`

**2.** Legal name of dealer, employer, corporation or owner

Mid Atlantic Community Church

**3.** Trade name (if different from above)

**4.** Street address of business location (Post office box not acceptable)

4931 Telsa Dr. Suite A

City, County, and State        ZIP code (nine digits if known)

Bowie, Prince Georges, MD 20715

Telephone number    ( 301 ) 858 - 0418

Fax number    (        )        -

E-mail address

**5.** Mailing address (post office box acceptable)

Same

City, State        ZIP code (nine digits if known)

**6.** Reason for applying:
- ☒ New business
- ☐ Merger
- ☐ Change of entity
- ☐ Reorganization
- ☐ Reopen/reactivate
- ☐ Additional location(s)
- ☐ Purchased going business
- ☐ Remit use tax on purchases
- ☐ Other (describe)

**7.** List previous owner's name, address and telephone number:

N/A

**8.** Indicate registration sought:

| | | Number if registered: |
| --- | --- | --- |
| a. ☐ Sales and use tax | | |
| b. ☒ Sales and use tax exemption for non-profit organizations | | |
| c. ☐ Tire recycling fee | | |
| d. ☐ Admissions & amusement tax | | |
| e. ☒ Employer withholding tax | | |
| f. ☐ Unemployment insurance | | |
| g. ☐ Alcohol tax | | |
| h. ☐ Tobacco tax | | |
| i. ☐ Motor fuel tax | | |
| j. ☐ Transient vendor license | | |

**9.** Type of ownership: (Check appropriate box)
- a. ☐ Sole proprietorship
- b. ☐ Partnership
- c. ☒ Non-profit corporation
- d. ☐ Maryland corporation
- e. ☐ Limited liability company
- f. ☐ Non-Maryland corporation
- j. ☐ Governmental
- k. ☐ Fiduciary
- l. ☐ Business trust

**10.** Date first sales made in Maryland:

N/A

**11.** Date first wages paid in Maryland subject to withholding:

N/A

**12.** If you currently file a consolidated sales and use tax return, enter the number of your account:

N/A

**13.** If you have employees enter the number of your workers' compensation insurance policy or binder:

N/A

**14. (a)** Have you paid or do you anticipate paying wages to individuals, including corporate officers, for services performed in Maryland?

☐ Yes    ☒ No    (b) If yes, enter date wages first paid

**15.** Number of employees:

0

**16.** Estimated gross wages paid in first quarter of operations:

N/A

**17.** Do you need a sales and use tax account only to remit taxes on untaxed purchases?

☐ Yes    ☒ No

**18.** Describe business activity that generates revenue. Specify the product manufactured and/or sold, or the type of service performed.

None.

**19.** Are you a non-profit organization applying for an exemption certificate? ☒ Yes    ☐ No    Attached.

If yes, enclose a non-returnable copy of IRS determination letter, articles of incorporation, bylaws, and other organization documents.

**20.** If the location described above is primarily engaged in providing support services to other units of the company, please indicate the nature of these activities. ☐ Administrative    ☐ R&D    ☐ Storage    ☐ Other (specify)    N/A

**21.** Identify owners, partners, corporate officers, trustees, or members: (Please list person whose social security number is listed in Section A.1b first.)

| Name and social security number | Title | Home address, city, state, ZIP code | Telephone number |
| --- | --- | --- | --- |
| Lewis Schrumm 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 | President | 2533 Cheval Drive Davidsonville, MD 21035 | 301-858-0418 |
| ML Webb 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 | Treasurer | 2906 Applegreen Lane Bowie, MD 20716 | 301-924-7400 |

Rev. 8/03

MAR-2-L    5:27PM    Page 8/8

Page II • See instructions on page III

FEIN or SSN ☐☐☐☐☐☐☐☐☐

## SECTION B: Complete this section to register for an unemployment insurance account.

**PART 1.**

1. Will corporate officers receive compensation, salary or distribution of profits? ☐ Yes ☐ No
   If yes, enter date _____

2. Department Of Assessments & Taxation Entity Identification Number _____

3. Did you acquire by sale or otherwise, all or part of the assets, business, organization, or trade of another employer? ☐ Yes ☐ No    N/A

4. If your answer to question 3 is "No," proceed to item 5 of this section. If your answer to question 3 is "Yes," provide the information below.

   a. Percentage of common ownership between current business and former business: _____

   b. Percentage of assets acquired from former business: _____

   c. Date former business was acquired by current business: _____

   d. Unemployment insurance number of former business, if known: _____

   e. Did the previous owner operate more than one location in Maryland? _____

5. For employers of domestic help only:
   a) Have you or will you have as an individual or local college club, college fraternity or sorority a total payroll of $1,000 or more in the state of Maryland during any calendar quarter?
   ☐ Yes    ☐ No

   b) If yes, indicate the earliest quarter and calendar year.

6. For agricultural operations only:
   a) Have you had or will you have 10 or more workers for 20 weeks or more in any calendar year or have you paid or will you pay $20,000 or more in wages during any calendar quarter?
   ☐ Yes    ☐ No

   b) If yes, indicate the earliest quarter and calendar year.

**PART 2. COMPLETE THIS PART IF YOU ARE A NON-PROFIT ORGANIZATION.**

1. Are you subject to tax under the Federal Unemployment Tax Act?
   ☐ Yes    ☐ No

2. If not, are you exempt under Section 3306(c)(8) of the Federal Unemployment Tax Act?
   ☐ Yes    ☐ No

3. Are you a non-profit organization as described in Section 501(c)(3) of the United States Internal Revenue Code which is exempt from income tax under Section 501(a) of such code? If YES, attach a copy of your exemption from Internal Revenue Service.    ☐ Yes    ☐ No

4. Elect option to finance unemployment insurance coverage. See instructions.
   a. ☐ Contributions    b. ☐ Reimbursement of trust fund.
   If b. is checked, indicate the total taxable pay roll ($9,500 maximum per individual per calendar year) $ _____
   Type of collateral (check one)    ☐ Letter of credit    ☐ Surety bond    ☐ Security deposit    ☐ Cash in escrow    for calendar year 20___

## SECTION C: Complete this section if you are applying for an alcohol or tobacco tax license.

1. Will you engage in any business activity pertaining to the manufacture, sale, distribution, or storage of alcoholic beverages?
   ☐ Yes    ☐ No

2. Will you engage in any wholesale activity regarding the sale and/or distribution of cigarettes in Maryland?    ☐ Yes    ☐ No    N/A

## SECTION D: Complete this section if you plan to sell, use or transport any fuels in Maryland

1. Do you plan to import, or purchase in Maryland, any of the following fuels for resale, distribution, or for your own use?
   ☐ Yes    ☐ No
   If yes, check type below:
   ☐ Gasoline (including avigas)
   ☐ Turbine/jet fuel
   ☐ Special fuel (any fuel other than gasoline)

2. Do you transport petroleum in any device having a carrying capacity exceeding 1,749 gallons?
   ☐ Yes    ☐ No

3. Do you store any motor fuel in Maryland?    ☐ Yes    ☐ No    N/A

4. Do you have a commercial vehicle that will travel interstate?
   ☐ Yes    ☐ No

If you have answered yes to any question in Section D, call the Motor Fuel Tax Division at 410-260-7215 for the license application.

## SECTION E: All applicants must complete this section.

**I DECLARE UNDER THE PENALTY OF PERJURY THAT THIS APPLICATION HAS BEEN EXAMINED BY ME AND TO THE BEST OF MY KNOWLEDGE AND BELIEF IS TRUE, CORRECT, AND COMPLETE.**

SIGN HERE ▶ _~~signature~~_    Title _~~Managing Director~~_    Date 3/1/04

Name of Preparer other than applicant _____    Phone number _____    E-mail address _____

If the business is a corporation, an officer of the corporation authorized to sign on behalf of the corporation must sign; if a partnership, one partner must sign; if an unincorporated association, one member must sign; if a sole proprietorship, the proprietor must sign. (The signature of any other person will not be accepted.)

Sent By: Gammon and Grange;                 17037615028;          Feb-22-07  5:17PM;          Page 8

State of Maryland
**Department of
Assessments and Taxation**

Charter Division



Robert L. Ehrlich, Jr.
*Governor*

C. John Sullivan
*Director*

Paul B. Anderson
*Administrator*

GAMMON & GRANGE                                          Date: 01-23-2004
7TH FLR
8280 GREENSBORO DR
MC LEAN                      VA  22102

This letter is to confirm acceptance of the following filing:

```
ENTITY NAME        : MID ATLANTIC COMMUNITY CHURCH
DEPARTMENT ID      : D07764210
TYPE OF REQUEST    : ARTICLES OF INCORPORATION
DATE FILED         : 01-19-2004
TIME FILED         : 02:39-PM
RECORDING FEE      : $100.00
ORG. & CAP FEE     : $20.00
EXPEDITED FEE      : $50.00
FILING NUMBER      : 1000361989328491
CUSTOMER ID        : 0001293894
WORK ORDER NUMBER  : 0000840066
```

PLEASE VERIFY THE INFORMATION CONTAINED IN THIS LETTER. NOTIFY THIS DEPARTMENT
IN WRITING IF ANY INFORMATION IS INCORRECT. INCLUDE THE CUSTOMER ID AND THE WORK
ORDER NUMBER ON ANY INQUIRIES. EVERY YEAR THIS ENTITY MUST FILE A PERSONAL
PROPERTY RETURN IN ORDER TO MAINTAIN ITS EXISTENCE EVEN IF IT DOES NOT OWN
PERSONAL PROPERTY. A BLANK RETURN WILL BE MAILED BY FEBRUARY OF THE YEAR FOR
WHICH THE RETURN IS DUE.

```
ENTITY TYPE:         CHURCH
STOCK:               N
CLOSE:               N
EFFECTIVE DATE:      01-19-2004
PRINCIPAL OFFICE:    2533 CHEVAL DR
                     DAVISONVILLE
RESIDENT AGENT:      LEWIS SCHRUMM        MD 21035
                     2533 CHEVAL DR
                     DAVISONVILLE         MD 21035
```

**NOTICE: Effective January 1, 2004**

As a result of a change in State law, the annual report fee for most legal entities (including LLCs and LLPs) will increase to $300. This fee is for the privilege of maintaining a legal entity's existence in Maryland, and is due and payable with the filing of the personal property return. The increase is effective for any return, regardless of year, filed after 12/31/2003.

There continues to be no annual report fee for non-stock corporations, business trusts, churches, foreign interstate companies, foreign insurance companies, sole proprietorships, and general partnerships, but these entities must still file a personal property return annually.

DOCID

# MID ATLANTIC COMMUNITY CHURCH
## BYLAWS

### Adopted February 15, 2004

### Article 1
### GENERAL

**Section 1.1  Name.** The name of the Corporation and the Church is Mid Atlantic Community Church, hereinafter referred to as "the Church."

**Section 1.2  Nonprofit Purposes.** The Church is organized and shall be operated exclusively as a nonprofit church, for the religious, charitable and educational purposes stated in the Articles of Incorporation.

### Article 2
### OFFICES

**Section 2.1  Resident Agent.** The Church shall continuously maintain a resident agent with the State of Maryland.

**Section 2.2  Principal Office and Place of Worship.** The principal office of the Church and principal place of worship of the Church shall be located at such place as shall be determined by the Pastor.

**Section 2.3  Additional Offices.** The Church may also have offices at such other places as the Pastor may from time to time determine and the ministry of the Church may require.

### Article 3
### STATEMENT OF FAITH

### See Attached

## Article 4
## LEADERSHIP COUNCIL

Section 4.1 Number and Term. The number of Leadership Council (the "Council") Members shall be determined by the Pastor. The Pastor shall be a member of the Council. Each Council Member shall serve in this position for one year renewable terms at the discretion of the Pastor.

Section 4.2 Qualification and Appointment. Each Council Member must be a member of the Church, subscribe to the Church's Statement of Faith, and shall meet the Scriptural guidelines for elders according to I and II Timothy and Titus, as determined by the Pastor. The Council shall be appointed by the Pastor.

Section 4.3 Responsibilities. Under the leadership and authority of the Pastor, the Council shall guide and manage the spiritual affairs of the Church. The Council Members shall assist the Pastor in spiritual oversight and shall support the Pastor in the operation of the Church.

Section 4.4 Resignation. Any member of the Council may resign by submitting his resignation in writing to the Pastor, which resignation shall be effective upon formal acceptance by the Pastor.

Section 4.5 Council Members as Corporate Members. For the purposes of any law or rule relating to members of a religious or nonstock corporation, the Council shall also constitute the members of the Corporation, and when meeting as the Council Members, may exercise the rights and powers of corporate members.

Section 4.6 No Compensation of Council Members. Council Members shall not receive compensation for their services as Council Members, but may receive reimbursement for any reasonable expenses incurred carrying out their duties as Council Members, as approved by the Council. Council Members shall not be barred from serving the Church in any other capacity and receiving reasonable compensation for such other services.

## Article 5
## MEETINGS OF THE LEADERSHIP COUNCIL

A majority of the Council Members shall be necessary and sufficient to constitute a quorum for the transaction of business. The Council Members shall seek to act by consensus on all actions taken by the Council. However, if consensus cannot be reached, the act of the Pastor shall be the act of the Council, except as may be otherwise specifically provided by statute or by the Articles of Incorporation or by these Bylaws.

## Article 6
## TRUSTEES

The Trustees shall, under authority of the Pastor and Council, have the power accorded to trustees under Maryland law applicable to religious corporations, shall assist the Pastor by attending to the temporal and practical affairs of the Church, and shall have such other responsibilities as determined

by the Pastor and Council from time to time. The Trustees shall not take any action regarding the assets of the Corporation that is not in accordance with the Church-approved budget or other action of the Council.

Trustees shall be appointed as provided in the Articles of Incorporation, and may be removed by recommendation of the Pastor and approval by the Council. Nothing in these Bylaws or in the Articles of Incorporation shall be construed as in any way granting the Trustees authority over ecclesiastical or spiritual issues or matters of church discipline, which is the responsibility of the Pastor with the Council.

## Article 7
## CHURCH MEMBERS

Section 7.1  Qualifications for Membership. Membership in the Church shall be open to all who confess Jesus Christ as Lord and Savior, have been baptized in the name of the Father, Son, and Holy Spirit, affirm the Statement of Faith of the Church, and complete the Church's membership training class. The Pastor shall determine whether any applicant for Church membership meets the foregoing qualifications and, if so, the applicant shall be admitted to Church membership. The Pastor may delegate to one of the church's other pastors or Council Members the responsibility to make this determination. Church membership does not confer any state corporate voting or governance authority, but rather confers important theological and relational benefits and significance.

Section 7.2  Authority of Voting Membership. Members who are eighteen years of age or over shall have authority to vote on approval of the annual budget of the Church, the purchase of real property by the Church, the removal of the Pastor (pursuant to Section 8.2) and, when there is a vacancy in the position of Pastor, the calling of a new Pastor (pursuant to Section 8.2). Approval shall be by the majority of members present at a meeting of the members. The members shall have no governance authority or other voting rights, except that the Pastor may determine that a specific action or actions be approved by the membership.

Section 7.3  Responsibilities of Church Members. Church members must support and practice principles of Christian living as taught by the Church, must regularly attend the weekly Church gatherings for corporate worship, must participate in groups the Church establishes for the purpose of fellowship, and must serve in some aspect of the Church's ministry as they are reasonably able.

Section 7.4  Resignation of Church Membership. A Church member may resign from his Church membership by submitting a written communication to the Pastor at any time, which shall be effective upon formal acceptance by the Pastor or his delegated pastor or Council Member.

Section 7.5  Confidentiality. Though every reasonable effort shall be made to protect confidential communications, especially those received in a pastoral counseling context, there will be times when to properly fulfill their spiritual and leadership responsibilities, the Pastors and Council Members may as they deem necessary or appropriate share confidential information with

maintaining and updating the roster of current members.

Section 7.6 Annual and Special Meetings of the Membership. An annual meeting of the members may be held, as needed, at a place and on a date determined by the Pastor, to transact business as may properly come before the members. The Pastor or a majority of the Council may also call special meetings of the membership at a time and place determined by the Pastor or Council.

Section 7.7 Notice of Meetings of the Membership. Notice of annual and special meetings of the membership shall be announced on the two Sundays immediately prior to the date of the meeting.

## Article 8
## OFFICERS

Section 8.1 Number and Positions. The officers of the Church shall be the Pastor (who shall serve as the Corporate President), Vice President, Secretary, and Treasurer. Two or more offices may be held by the same person except that the offices of the Pastor and Secretary may not be held by the same person. Except as otherwise provided, the officers may, but need not be, Members of the Leadership Council. The Pastor may appoint one or more assistant pastors, assistant secretaries, and assistant treasurers such other officers and agents as it shall deem necessary, who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Pastor.

Section 8.2 Duties, Appointment, and Removal of Pastor. The Pastor shall be a Council Member of the Church. He shall serve until he resigns or otherwise is unable to perform the duties of the office. He shall preside at meetings of the Council and meetings of the membership. He shall be the spiritual overseer of the Church and shall direct all of its activities. He shall be an ex-officio member of all committees of the Church. The Pastor shall have the general powers and duties of management usually vested in the office of the chief executive and president of a corporation, and shall have such other rights, duties, and powers as are authorized by the Council. When there is a vacancy in the office of Pastor, the Council shall, by consensus, make a recommendation to the Church membership regarding the calling of a new Pastor, and the new Pastor shall be called upon approval of a majority of Church members present at a meeting of the Church members. The Pastor may be removed upon consensus recommendation of the Council (excluding the Pastor and any related member of the Council) and approval of a majority of Church members present at a meeting of the Church members.

Section 8.3 Appointment and Term of Vice President, Secretary, and Treasurer. The Pastor shall appoint the Vice President, Secretary, and Treasurer, and such other officers as he shall deem necessary. Each appointee shall serve at the pleasure of the Pastor.

**Section 8.4  The Vice President.**   The Vice President shall, in the absence of the Pastor, perform the duties and exercise the powers of the Pastor as may be so delegated by the Pastor, and shall have such other rights, duties, and powers as are authorized by the Pastor from time to time.

**Section 8.5  The Secretary.**  The Secretary or an assistant secretary shall attend all meetings of the Council and membership and record all votes and the minutes of all proceedings in a book to be kept for that purpose, and shall perform like duties for committees when required. The Secretary shall give, or cause to be given, such notice as is required of all meetings of the of the Council or membership, shall keep a record of the membership of the Church, and shall have such other rights, duties, and powers as are authorized by the Council from time to time.  The Secretary shall keep in safe custody the corporate documents of the Church, and the seal of the Church and, when authorized by the Council, affix the seal to any instrument requiring it, and when so affixed it shall be attested by the signature of the Secretary, or by the signature of the Treasurer or an assistant secretary.

**Section 8.6  Assistant Secretaries.**  The assistant secretaries in the order of their seniority shall, in the absence or disability of the secretary, perform the duties and exercise the powers of the secretary, and shall have such other rights, duties, and powers as are authorized by the Council from time to time.

**Section 8.7  The Treasurer.**  The treasurer shall deliver all funds and securities of the Corporation which may come into his hands to such bank or trust company as the directors shall designate as a depository, and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation. The treasurer shall disburse the funds of the Corporation as may be ordered by the Council, taking proper vouchers for such disbursements, and shall render to the Pastor and the Council, at the regular meetings of the Council or whenever they may require it, an account of all his transactions as treasurer and of the financial condition of the Corporation. If required by the Council, the treasurer shall give the Corporation a bond in such sum and with such surety or sureties as shall be satisfactory to the Council for the faithful performance of the duties of his office, and for the restoration to the Corporation, in case of death, resignation, retirement or removal from office, of all books, papers, vouchers, money, and other property of whatever kind in possession or under the control of the treasurer, belonging to the Corporation. The treasurer shall also have such other rights, duties, and powers as are authorized by the Council from time to time.

**Section 8.8  Assistant Treasurers.**  The assistant treasurers in the order of their seniority shall, in the absence or disability of the treasurer, perform the duties and exercise the powers of the treasurer, and shall have such other rights, duties, and powers as are authorized by the Council from time to time.

# Article 9
## ADVISORY GROUPS

The Pastor may create one or more advisory groups, for such terms as deemed fit by him.  Such advisory Councils shall have no vote or governance role, but shall serve the Pastor in the specified advisory capacity. The members of such advisory groups shall be active Church members.

# Article 10

## FISCAL MATTERS

**Section 10.1 Deposits.** The Council shall select banks, trust companies, or other depositories in which all funds of the Church not otherwise employed shall, from time to time, be deposited to the credit of the Church.

**Section 10.2 Checks.** All checks or demands for money and notes of the Church shall be signed by such officer or officers or such other persons as the Council may from time to time designate.

**Section 10.3 Fiscal Years.** Unless otherwise fixed by the Council, the fiscal year shall commence on January 1 and shall terminate on the following December 31.

**Section 10.4 Contracts.** The Council may authorize any officer or officers, agent or agents of the Church, in addition to the officers so authorized by these Bylaws, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Church. Such authority may be general or confined to specific instances.

**Section 10.5 Designated Contributions.** The Church may accept any designated contribution, grant, bequest or devise consistent with its general tax-exempt purposes, as set forth in the Articles of Incorporation. As so limited, donor-designated contributions will be accepted for special funds, purposes or uses, and such designations generally will be honored. However, the Church shall reserve all right, title and interest in and to and control of such contributions, as well as full discretion as to the ultimate expenditure or distribution thereof in connection with any special fund, purpose or use. Further, the Church shall retain sufficient control over all donated funds (including designated contributions) to assure that such funds will be used to carry out the Church's tax-exempt purposes.

**Section 10.6 Benevolence Fund.** Consistent with Biblical teaching to share with those in need, the Church may establish a benevolence fund to meet material and financial needs. This fund shall be administered under a policy which sets forth the funds' purpose, procedures for administration, and objective criteria for selection of recipients for financial assistance.

**Section 10.7 Transactions with Interested Parties.** A contract or other transaction between the Church and one or more of its Council Members, trustees, officers, or family members thereof (hereinafter "Interested Party"), or between the Church and any other entity, of which entity one or more directors, officers, or trustees are also Interested Parties, or in which entity an Interested Party has a financial interest -- shall be voidable at the sole election of the Church unless one of the following provisions are satisfied:

10.7.1 The interest is disclosed or known to the approving body, and the approving body authorizes, approves, or ratifies the contract or transaction by the affirmative vote of a majority of its disinterested members, even if the disinterested directors constitute less than a quorum; or

10.7.2 The contract or transaction is fair and reasonable to the Corporation.

Interested Parties may be counted in determining the presence of a quorum at a meeting of the body which authorizes, approves, or ratifies such contract or transaction.

Section 10.8 Conflicts of Interest Policy.  The Council shall adopt a Conflicts of Interest Policy that will provide for full disclosure of material conflicting interests by Council Members, trustees, officers, or family members thereof, and permit the Council to determine whether the contemplated transaction may be authorized as just, fair, and reasonable to the Church.

Section 10.9 Seal.  The Church may have a seal consisting of two concentric circles, between which shall be inscribed the name of the Church, and in the center of which shall be inscribed the year of its organization, and the words, "Corporate Seal, State of Maryland."  Said seal may be used by causing it or a facsimile thereof to be impressed or affixed or otherwise reproduced, or by writing the word "SEAL" beside the signature of an authorized officer of the Church.

## Article 11
## COMMITMENT TO CONCILIATION

The Church shall seek to produce reconciled relationships through its ministry and among its staff. Recognizing that litigation and an adversarial legal system tend to produce adversaries instead of reconciled relationships, it shall be the policy and practice of the Church to favor and promote a Biblical approach to dispute resolution in all relationships between Council members, staff, members, volunteers, contracting parties, and trade creditors, following the informal process described in Matthew 18.

## Article 12
## INDEMNIFICATION

Any person made or threatened to be made a party to any action or proceeding, whether civil or criminal, by reason of the fact that he, his testator or intestate, is or was a Council Member, Trustee, officer, committee member, employee, or agent of the Church, may be indemnified by the Church, and the Church may advance his related expenses, to the full extent permitted by law.

The Church may purchase and maintain insurance to indemnify: (a) itself for any obligation which it incurs as a result of the indemnification specified above; and (b) its Council Members, trustees, officers, committee members, employees, and agents.

## Article 13
## AMENDMENTS

Except as otherwise provided herein, these Bylaws may be amended, altered, or repealed by approval of the Pastor and majority vote of the Council in attendance at any regular or special meeting of the Council.

[RMB2Bylawsadopted.wpd]

Sent By: Gammon and Grange;                    17037615023;              Feb-22-07  5:20PM;              Page 17/22

03/01/2004 .09:18 FAX 301 924 74:.          DATA CONNECT ENTERPRISE                                      ⓘ003

# MID ATLANTIC COMMUNITY CHURCH

## STATEMENT OF FAITH

### GOD

**We believe in one true God,** infinitely perfect and eternally existing in three persons: The Father, The Son, and The Holy Spirit. God is the creator and ruler of the universe. His glory is revealed in His absolute power, wisdom, love, and goodness. Through history He is fulfilling His redemptive plan.

### JESUS CHRIST

**We believe that Jesus Christ is the eternal Son of God.** He is truly God and truly man, having been conceived of the Holy Spirit and born of the Virgin Mary. Jesus lived a life of perfect obedience to the Father and voluntarily made atonement for the sins of all by dying on the cross as their substitute, and in this way, satisfying divine justice and accomplishing salvation for all who trust in Him alone. He arose bodily from the dead, demonstrating His power over sin and death. He ascended into heaven where He sits at the right hand of the Father, continually making intercession on behalf of all who have received Him as their Savior and Lord. And Jesus will come again to earth, personally and visibly, to consummate history and God's eternal plan.

### HOLY SPIRIT

**We believe that the ministry of the Holy Spirit is to glorify Jesus Christ,** to reveal who He is, to convict people of sin and to indwell, guide, instruct and empower the followers of Jesus for lives of service and holy living. At the moment when we are saved, the Holy Spirit indwells every believer to become our source of assurance, strength and wisdom, and to uniquely endow each believer with gifts for the up-building of the church, the body of Christ.

### SCRIPTURE

**We believe that the Bible, composed of the books of the Old and New testament, is the inspired word of God.** We believe that these scriptures are infallible and without error in their original manuscripts. They are our unique, full and final authority on all matters of faith and life, and there are no other writings similarly inspired by God.

## MANKIND

**We believe that God created man in His own image, as a spirit being,** conscious of his own and God's existence. Man is the pinnacle of God's creation. Although man has tremendous potential for good, he is marred by an attitude of disobedience toward God called sin. This basic attitude has separated man from God since the first man and woman disobeyed God in the Garden of Eden. Therefore, all people suffer the consequences of this sin nature and are in need of reconciliation with God which only God can supply through Jesus Christ. We believe in the sanctity of life from conception to natural death.

## SALVATION

**We believe that the shedding of Christ's blood on the cross and His resurrection from the dead provide the only ground for salvation** for all who receive Him as their Savior and the Lord of their lives. The salvation of mankind is wholly the work of God's grace and not the result of human effort, and it must be appropriated by repentance of sin and faith in Jesus. When God begins a saving work in the heart of any person, He will continue performing it until the day of its completion when we live with Him in heaven forever. The glorious accomplishment of a genuine saving relationship with Jesus Christ is a life of holiness and obedience. This is what God created us for in the beginning. When people receive Jesus and are indwelled by the Spirit, they step into the eternal and abundant life Jesus promises for all believers.

## DISCIPLESHIP

**We believe God has set us apart for the purpose of** growing us to become more like His Son. God changes our heart in order to change our character and actions. When we reach heaven, God will complete the process of making every believer to be like Jesus.

## SIN

**We believe that evil is present in the world because of mankind's choice in the Garden of Eden. Evil is the consequence therefore, of mankind's sin nature.** However, because of what Jesus has accomplished on our behalf, we have the opportunity to choose the goodness of God's grace over evil. The source of evil is satan. And God will one day confine the enemy and his demons to hell for eternity. While God could eliminate evil immediately, He endures the grief of waiting to do so in order to give more people the opportunity to come to faith in Him. God is able to cause all things, even the evil in this world, to work together for the good of those who love Him.

## ETERNAL LIFE

**We believe that death seals the eternal destiny of each person.** For all mankind, there will be a resurrection into the unseen world of the Spirit and a judgment that will determine the eternity of every individual. Unbelievers will be eternally separated from God.  Believers will be received into eternal communion with God. .—

## THE CHURCH

**We believe that the church includes all people who through faith in Jesus Christ have been regenerated by the Holy Spirit,** and are therefore united together in the Body of Christ of which He is the head.  The purposes of the church are: worship, evangelism, fellowship, discipleship and ministry to others in the local fellowship and around the world.

The purpose of Mid Atlantic Community Church is to bring people to Jesus, to invite them to join His family, to help them grow up in Christ, to equip and commission them to do ministry and to send them out to share the good news of Jesus with the whole world.

Form 1023 (Rev. 9-98)                                                                                    Page **11**

## Schedule A. Churches

1. Provide a brief history of the development of the organization, including the reasons for its formation.

Mid Atlantic Community Church (church) is a brand new, non-denominational Protestant church. A fellow Christian had a call to be a pastor and decided to work with others to start this church in the Crofton, MD area. The first public worship service is scheduled for Easter Sunday, April 11, 2004. Reason for formation: Call of God. Request of other Christians.

2. Does the organization have a written creed or statement of faith? . . . . ☑ Yes  ☐ No
   If "Yes," attach a copy.

3. Does the organization require prospective members to renounce other religious beliefs or their membership in other churches or religious orders to become members? . . . . . . . . . . . . . . . . . ☐ Yes  ☑ No

4. Does the organization have a formal code of doctrine and discipline for its members? . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☑ No
   If "Yes," describe.

5. Describe the form of worship and attach a schedule of worship services.
   Praise songs and hymns, Prayer, Sermon, Typical worship service for independent Protestant churches. Since the first service is scheduled for April 11, 2004 no schedule has been printed yet.

6. Are the services open to the public? . . . . . . . . . . . . . . ☑ Yes  ☐ No
   If "Yes," describe how the organization publicizes its services and explain the criteria for admittance.
   All are welcome. Word of mouth is the primary form of publicity.

7. Explain how the organization attracts new members.
   We plan on advertising in the future. Word of mouth is now the primary way to attract members.

8. (a) How many active members are currently enrolled in the church?
   The church is just starting, but 125 have signed up to attend.
   (b) What is the average attendance at the worship services?
   The first service is scheduled for April 11, 2004

9. In addition to worship services, what other religious services (such as baptisms, weddings, funerals, etc.) does the organization conduct?
   None at this time but will be conducted as the church grows.

Form 1023 (Rev. 9-98)

**Schedule A. Churches** *(Continued)*

Page **12**

---

**10** Does the organization have a school for the religious instruction of the young? . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☑ No

---

**11** Were the current deacons, minister, and/or pastor formally ordained after a prescribed course of study? . . . . . . . . . . . . . . . ☐ Yes ☑ No

---

**12** Describe the organization's religious hierarchy or ecclesiastical government.

Pastor – President overseen and supported by a Leadership Council (Elders) Currently with 10 members.

---

**13** Does the organization have an established place of worship? . . . . . . ☑ Yes ☐ No

If "Yes," provide the name and address of the owner or lessor of the property and the address and a description of the facility.

Crofton Elementary School
Crofton, MD

If the organization has no regular place of worship, state where the services are held and how the site is selected.

---

**14** Does (or will) the organization license or otherwise ordain ministers (or their equivalent) or issue church charters? . . . . . . . . . . . . . ☐ Yes ☑ No

If "Yes," describe in detail the requirements and qualifications needed to be so licensed, ordained, or chartered.

---

**15** Did the organization pay a fee for a church charter? . . . . . . . . . ☐ Yes ☑ No

If "Yes," state the name and address of the organization to which the fee was paid, attach a copy of the charter, and describe the circumstances surrounding the chartering.

---

**16** Show how many hours a week the minister/pastor and officers each devote to church work and the amount of compensation paid to each of them. If the minister or pastor is otherwise employed, indicate by whom employed, the nature of the employment, and the hours devoted to that employment.

The Pastor is expected to devote approximately 10-30 hours per week to Church work, although initially this will be voluntary. As the church grows, the Pastor will be employed and compensated. The Pastor currently works full time for Sears.
Leadership Council members are expected to devote approximately 3-10 hours per week as voluntary service.

Form 1023 (Rev. 9-98)

## Schedule A. Churches *(Continued)*

Page 13

17 Will any funds or property of the organization be used by any officer, director, employee, minister, or pastor for his or her personal needs or convenience?   ☐ Yes   ☑ No

If "Yes," describe the nature and circumstances of such use.

18 List any officers, directors, or trustees related by blood or marriage.

Leadership Council: Lou & Nancy Schram
ML & Darlene Webb
George & Carol Anderson
Wayne & Pat Freedman
Murray & Penny Kenyon

19 Give the name of anyone who has assigned income to the organization or made substantial contributions of money or other property. Specify the amounts involved.

None

## Instructions

Although a church, its integrated auxiliaries, or a convention or association of churches is not required to file Form 1023 to be exempt from Federal income tax or to receive tax-deductible contributions, such an organization may find it advantageous to obtain recognition of exemption. In this event, you should submit information showing that your organization is a church, synagogue, association or convention of churches, religious order or religious organization that is an integral part of a church, and that it is carrying out the functions of a church.

In determining whether an admittedly religious organization is also a church, the IRS does not accept any and every assertion that such an organization is a church. Because beliefs and practices vary so widely, there is no single definition of the word "church" for tax purposes. The IRS considers the facts and circumstances of each organization applying for church status.

The IRS maintains two basic guidelines in determining that an organization meets the religious purposes test:

1. That the particular religious beliefs of the organization are truly and sincerely held, and

2. That the practices and rituals associated with the organization's religious beliefs or creed are not illegal or contrary to clearly defined public policy.

In order for the IRS to properly evaluate your organization's activities and religious purposes, it is important that all questions in Schedule A be answered.

The information submitted with Schedule A will be a determining factor in granting the "church" status requested by your organization. In completing the schedule, consider the following points:

1. The organization's activities in furtherance of its beliefs must be exclusively religious, and

2. An organization will not qualify for exemption if it has a substantial nonexempt purpose of serving the private interests of its founder or the founder's family.

2-21-2001 10:19AM    FROM                                                    P.5

Internal Revenue Service
District Director
P.O. BOX 1112
ATLANTA, GA  30301                              Department of the Treasury

Date: DEC 1988

                                    Employer Identification Number:
                                      58-1493947
                                    Contact Person:
NATIONAL CHRISTIAN CHARITABLE          BETTY MILLER
FOUNDATION INC                      Contact Telephone Number:
1275 PEACHTREE ST NE SUITE 700         (404) 331-6040
ATLANTA, GA  30309

                                    Our Letter Dated:
                                      05-25-83
                                    Addendum Applies:
                                      No

Dear Applicant:

    This modifies our letter of the above date in which we stated that you
would be treated as an organization which is not a private foundation until
the expiration of your advance ruling period.

    Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect. Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

    Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary. However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

    If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

    Because this letter could help resolve any questions about your private
foundation status, please keep it in your permanent records.

    If you have any questions, please contact the person whose name and
telephone number are shown above.

                            Sincerely yours,

                            Paul Williams
                            District Director

2-21-2001 10:17AM    FROM

P.2

**Internal Revenue Service**
District Director

Department of the Treasury

Date: MAY 25 1983

Employer Identification Number:
58-1493949
Accounting Period Ending:
November 30
Foundation Status Classification:
509(a)(1) & 170(b)(1)(A)(vi)
Advance Ruling Period Ends:
November 30, 1987
Person to Contact:
Ann Price/jm
Contact Telephone Number:
(404) 221-4516
File Folder Number:
580020898

National Christian Charitable Foundation, Inc.
c/o 127 Peachtree St., NE Suite 200
Atlanta, GA  30303

Dear Applicant:

Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization described in section 509(a)(1) & 170(b)(1)(A)(vi).

Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period. This advance ruling period begins on the date of your inception and ends on the date shown above.

Within 90 days after the end of your advance ruling period, you must submit to us information needed to determine whether you have met the requirements of the applicable support test during the advance ruling period. If you establish that you have been a publicly supported organization, you will be classified as a section 509(a)(1) or 509(a)(2) organization as long as you continue to meet the requirements of the applicable support test. If you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. Also, if you are classified as a private foundation, you will be treated as a private foundation from the date of your inception for purposes of sections 507(d) and 4940.

Grantors and donors may rely on the determination that you are not a private foundation until 90 days after the end of your advance ruling period. If you submit the required information within the 90 days, grantors and donors may continue to rely on the advance determination until the Service makes a final determination of your foundation status. However, if notice that you will no longer be treated as a section      *       organization is published in the Internal Revenue Bulletin, grantors and donors may not rely on this determination after the date of such publication. Also, a grantor or donor may not rely on this determination if he or she was in part responsible for, or was aware of, the act or failure to act that resulted in your loss of section      *       status, or acquired knowledge that the Internal Revenue Service had given notice that you would be removed from classification as a section      *       organization.

275 Peachtree Street, N.E., Atlanta, GA  30043          (over)          Letter 1045(DO) (5-77)

2-21-2001 10:18AM    FROM    P. 3

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status and foundation status. Also, you should inform us of all changes in your name or address.

Generally, you are not liable for social security (FICA) taxes unless you file a waiver of exemption certificate as provided in the Federal Insurance Contributions Act. If you have paid FICA taxes without filing the waiver, you should call us. You are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Organizations that are not private foundations are not subject to the excise taxes under Chapter 42 of the Code. However, you are not automatically exempt from other Federal excise taxes. If you have any questions about excise, employment, or other Federal taxes, please let us know.

Donors may deduct contributions to you as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

You are required to file Form 990, Return of Organization Exempt from Income Tax, only if your gross receipts each year are normally more than $10,000. If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. The law imposes a penalty of $10 a day, up to a maximum of $5,000, when a return is filed late, unless there is reasonable cause for the delay.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T. In this letter, we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees. If an employer identification number was not entered on your application, a number will be assigned to you and you will be advised of it. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

Because this letter could help resolve any questions about your exempt status and foundation status, you should keep it in your permanent records.

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

District Director

Enclosures: Form 990 and Instructions, Form 872-C

See Attachment
cc: Wendell R. Bird

Letter 1045(DO) (6-77)

For tax years ending on and after December 31, 1982, organizations whose gross receipts are not normally more than $25,000 are excused from filing Form 990.  For guidance in determining if your gross receipts are "normally" not more than the $25,000 limit, see the instructions for the Form 990.

The determination that you will be treated as an organization which is not a private foundation for your first two tax years is extended to your first five tax years in accordance with your request and executed Form 872-C, Consent Fixing Period of Limitation Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code.

Jun 13 2000 10:27AM  HP LASERJET FAX                                    P.2

Internal Revenue Service                    Department of the Treasury

                                            P. O. Box 2508
                                            Cincinnati, OH  45201

Date:  March 28, 2003                       Person to Contact:
                                              Ms. Edwards 31-07427
                                              Customer Service Representative
                                            Toll Free Telephone Number:
Washington Bible College                      877-829-5500
6511 Princess Garden Pky                        8:00 a.m. to 6:30 p.m. EST
Lanham, MD. 20706                           Fax Number:
                                              513-263-3756
                                            Federal Identification Number:
                                              53-0174589

Dear Sir or Madam:

   This is in response to your request of March 28, 2003, regarding your organization's tax exempt
status.

   In March 1955, we issued a letter that recognized your organization as exempt from federal
income tax under section 501(c)(3) of the Internal Revenue Code. That letter is still in effect.

   Based on information submitted with the application, we classified your organization as one that
is not a private foundation within the meaning of section 509(a) of the Code because it is an
organization described in sections 509(a)(1) and 170(b)(1)(A)(ii). That classification was based
on the assumption that your organization's operations would continue as stated in the
application. If your organization's purposes, character, method of operations, or sources of
support have changed, please let us know so we can consider the effect of the change on the
organization's exempt status and foundation status.

   Revenue Procedure 75-50, published in Cumulative Bulletin 1975-2 on page 587, sets forth
guidelines and record keeping requirements for determining whether private schools have
racially nondiscriminatory policies as to students. Your organization must comply with this
revenue procedure to maintain its tax-exempt status.

   Your organization is required to file Form 990, Return of Organization Exempt from Income
Tax, only if its gross receipts each year are normally more than $25,000. If a return is required,
it must be filed by the 15th day of the fifth month after the end of the organization's annual
accounting period. The law imposes a penalty of $20 a day, up to a maximum of $10,000,
when a return is filed late, unless there is reasonable cause for the delay.

   All exempt organizations (unless specifically excluded) are liable for taxes under the Federal
Insurance Contributions Act (social security taxes) on remuneration of $100 or more paid each
employee during a calendar year. Your organization is not liable for the tax imposed under the
Federal Unemployment Tax Act (FUTA).

   Organizations that are not private foundations are not subject to the excise taxes under Chapter
42 of the Code. However, they are not automatically exempt from other federal excise taxes.

Jun 13 2000 10:27AM    HP LASERJET FAX                                    P.9

-2-

Washington Bible College
53-0174589

Donors may deduct contributions to your organization as provided in section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to your organization or for its use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

Your organization is not required to file federal income tax returns unless it is subject to the tax on unrelated business income under section 511 of the Code. If your organization is subject to this tax, it must file an income tax return on the Form 990-T, Exempt Organization Business Income Tax Return. In this letter, we are not determining whether any of your organization's present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

The law requires you to make your organization's annual return available for public inspection without charge for three years after the due date of the return. If your organization had a copy of its application for recognition of exemption on July 15, 1987, it is also required to make available for public inspection a copy of the exemption application, any supporting documents and the exemption letter to any individual who requests such documents in person or in writing. You can charge only a reasonable fee for reproduction and actual postage costs for the copied materials. The law does not require you to provide copies of public inspection documents that are widely available, such as by posting them on the Internet (World Wide Web). You may be liable for a penalty of $20 a day for each day you do not make these documents available for public inspection (up to a maximum of $10,000 in the case of an annual return).

Because this letter could help resolve any questions about your organization's exempt status and foundation status, you should keep it with the organization's permanent records.

If you have any questions, please call us at the telephone number shown in the heading of this letter.

This letter affirms your organization's exempt status.

Sincerely,

*John E. Ricketts*

John E. Ricketts, Director, TE/GE
Customer Account Services

Jun 15 2000 10:27PM  HP LASERJET FAX                                    p.4

**Internal Revenue Service**                    Department of the Treasury

District              Baltimore District       31 Hopkins Plaza, Baltimore, Md. 21201
Director

September 8, 1995                               P.O. Box 13163, Room 817
                                                Baltimore, MD  21203

WASHINGTON BIBLE COLLEGE                        Employer Identification Number:
6511 PRINCESS GARDEN PARKWAY                    53-0174589
LANHAM, MD  20706
                                                Person to Contact:
                                                EP/EO Tax Examiner

                                                Telephone Number:
                                                (410) 962-6058


Dear Sir/Madam:

This is in response to your inquiry dated August 24, 1995, requesting a copy of
the letter which granted tax exempt status to the above named organization.

Our records show that the organization was granted exemption from Federal Income
Tax under section 501(c)(3) of the Internal Revenue Code effective
March, 1955. We have also determined that the organization is not a private
foundation because it is described in section(s) 509(a)(1) and
170(b)(1)(A)(ii).

Donors may deduct contributions to you under section 170 of the Code.

As of January 1, 1984, you are liable for taxes under the Federal Insurance
Contributions Act (social security taxes) on remuneration of $100 or more you
pay to each of your employees during the calendar year. You are not liable for
the tax imposed under the Federal Unemployment Tax Act (FUTA).

You are required to file Form 990, Return of Organization Exempt from Income
Tax, only if your gross receipts each year are normally more than $25,000.
However, if you receive a Form 990 package in the mail, please file the return
even if you do not exceed the gross receipts test. If you are not required to
file, simply attach the label provided, check the box in the heading to indicate
that your annual gross receipts are normally $25,000 or less, and sign the
return.

A copy of our letter certifying the status of the organization is not available,
however, this letter may be used to verify your tax-exempt status.

Because this letter could help resolve any questions about your exempt status,
it should be kept in your permanent records.

                                           Sincerely yours,

                                           Paul M. Harrington

11/27/2000 18:47 FAX 253 815 3240      WVUS DNRSRVC CCS                      003

Internal Revenue Service                        Department of the Treasury
District Director

                                                P. O. Box 2508
                                                Cincinnati, OH 45201

Date: NOV 13                                    Person to Contact:
                                                  Stephanie Broach
                                                Telephone Number:
World Vision, Inc.                                877-829-5500
P.O. Box 9716                                   Fax Number:
Federal Way, WA 98063                             513-684-5936
                                                Federal Identification Number:
                                                  95-1922279
                                                Group Exemption Number:
                                                  8170

Dear Sir or Madam:

This is in response to your request for affirmation of your organization's
exempt status.

Our records indicate that your organization is included in a group ruling
issued to World Vision International, which is located in Monrovia
California.

World Vision International is exempt from federal income tax under section
501(c)(3) of the Internal Revenue Code and is classified as a public
charity, and not a private foundation, because it is described in section
509(a)(1) and 170(b)(1)(A)(i) of the Code as a church.

As your organization is included in a group ruling, it does not have an
individual exemption letter. The group exemption letter applies to all of
the subordinate organizations on whose behalf World Vision International
has applied for recognition of exemption. This means your organization is
also exempt under section 501(c)(3) of the Code.

Donors may deduct contributions to your organization as provided in section
170 of the Code. Bequests, legacies, devises, transfers, or gifts to your
organization or for its use are deductible for federal estate and gift tax
purposes if they meet the applicable provisions of sections 2055, 2106, and
2522 of the Code.

If we can be of further assistance in this matter, please write or
telephone us.

RECEIVED                          Sincerely,

FINANCE DEPT.                     C. Ashley Bullard
                                  District Director

11/27/2000 18:48 FAX 253 815 3510    WVUS DNRSRVC CCS    004

Internal Revenue Service
District Director

Date:  MAY 0 5 1998

World Vision International
800 W. Chestnut Avenue
Monrovia, CA  91016-3106

Department of the Treasury

P.O. Box 2508
Cincinnati, OH  45201

Person to Contact:
  Dottie Downing
Telephone Number:
  513-241-5199
Fax Number:
  513-684-5936
Federal Identification Number:
  95-3202116
Group Exemption Number:
  8170

Dear Sir or Madam:

This is in response to your request for assignment of a Group Exemption Number.

On October 9, 1997, we issued a determination letter that recognized your organization as exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. That letter is still in effect.

Based on the information submitted, we recognized the subordinates named on the list your organization supplied as exempt from federal income tax under section 501(c)(3) of the Code. Also, we classified those subordinates as organizations that are not private foundations because they are organizations of the type described in sections 509(a)(1) and 170(b)(1)(A)(i) of the Code.

Donors may deduct contributions to your organization's subordinates as provided in section 170 of the Code. Bequests, legacies, devises, transfers or gifts to the subordinates or for their use are deductible for federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

Your organization and its subordinates are not required to file federal income tax returns unless subject to the tax on unrelated business income under section 511 of the Code. If subject to this tax, the organization must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return. In this letter, we are not determining whether any of your organization or its subordinates' present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

Unless specifically excepted, your organization and its subordinates are liable for taxes under the Federal Insurance Contributions Act (social security taxes) on remuneration of $100 or more paid each employee during a calendar year. This does not apply, however, if your organization makes or has made a timely election under section 3121(w) of the Code to be exempt from such tax. Your organization and its subordinates are not liable for the tax imposed under the Federal Unemployment Tax Act (FUTA).

Each year, at least 90 days before the end of your organization's annual accounting period, please compile and forward the following information:

  1.    A statement describing any changes during the year in the purposes, character, or method of operation of your organization's subordinates;

  2.    A list showing the names, mailing addresses (including Postal ZIP Codes), actual addresses if different, and employer identification numbers of subordinates that:

    a.    Changed names or addresses;

    b.    Were deleted from the roster; or

    c.    Were added to the roster.

—2—

World Vision International
95-3202116

3.    For those subordinates added, attach:

a.  A statement that the information on which your organization's present group exemption letter is based applies to the new subordinates;

b.  A statement that each has given your organization written authorization to add its name to the roster;

c.  A list of those to which the Service previously issued exemption rulings or determination letters;

d.  A statement that none of the subordinates is a private foundation as defined in section 509(a) of the Code if the group exemption letter covers organizations described in section 501(c)(3);

e.  The street address of subordinates where the mailing address is a P.O. Box.

4.    If applicable, a statement that your organization's group exemption roster did not change since the previous report.

The above information should be sent to the following address:

Internal Revenue Service Center
Attn:  Entity Control Unit
Ogden, UT  84409

Your organization's Group Exemption Number is 8170.

Sincerely,

C. Ashley Bullard
District Director

# World Vision

P.O. Box 1716
Federal Way, WA
98063-9716

tel. 253.815.1000

www.worldvision.org

# A F F I D A V I T

I hereby certify that the attached letter dated November 18, 1998, from the Office of the Commissioner of Internal Revenue of the United States Treasury Department, exempting WORLD VISION, INC. under Sections 501 (c) (3) (or Section 101 (6) prior to 1954), 170 (b) (1) (A) (i) and 509 (a) (1) of the Internal Revenue Code, is a true and accurate copy and remains in effect.

I further certify that WORLD VISION, INC. continues to function as a nonprofit, religious organization and meets the criteria established in its exemption application to the Internal Revenue Service.

Date:  April 1, 2000

Mark Howard
Corporate Counsel
For World Vision, Inc.

Notary Public
State of Washington
CAROLYN L. TIDWELL
My Appointment Expires Nov 10, 2003

Subscribed and sworn to before me this 1st day of April 2000.

Carolyn L. Tidwell, Notary Public

Commission Expires: November 10, 2003

Attachment to Form 1023
<u>Schedule D, Section II, Line 2</u>

**Polm Family Foundation, Inc.**
**EIN: 20-5661841**

A majority of the Foundation's governing board consists of individuals who also serve on the governing board of the Supported Organizations. The Foundation's governing board is appointed by Richard E. Polm. See page 1, Section 2.3 and page 2, Section 2.4 of the Foundation's By-Laws, which are attached to this Application and incorporated herein as Tab VI.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Sch D-II.doc

Attachment to Form 1023
Schedule D, Section IV

Polm Family Foundation, Inc.
EIN: 20-5661841

A majority of the Foundation's governing board consists of individuals who also serve as officers, directors, and/or trustees of the Supported Organizations. See Section 2.4 of the Foundation's By-Laws, which provides that, in accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Foundation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class. The Foundation's Directors are appointed by the following individuals, in the following sequence: Richard E. Polm, then Theresa E. Polm, then the living adult children of Richard E. Polm and Theresa E. Polm, then the existing Directors of the Foundation, and finally the majority vote of those Qualified Organizations within the Supported Class who have received grants from the Foundation within the preceding twenty-four (24) months.

See also Section 2.3 of the Foundation's By-Laws, which provides that a Managing Director shall be a person who is an officer, director and/or trustee of a Qualified Organization within the Foundation's Supported Class and who is not a "disqualified person" as defined in Code Section 4946(a). Managing Directors shall always control the Foundation because as a class, they will always have more votes than the Other Directors.

F:\Work\Polm, Rick\Documents\Polm Family Foundation\ATTACHMENT TO FORM 1023-Sch D-IV.doc

FedEx | Ship Manager | Label 7912 7339 2092                    https://www.fedex.com/cgi-bin/ship_it/unity/7DcWv3EgRv2JhTx5I..

From:  Origin ID: LTWA  (410)377-2170
Emanuel Kallina
Kallina & Associates, LLC
1122 Kenilworth Drive
Suite 507
Towson, MD 21204



Ship Date: 10APR07
AdWgt: 1 LB
System#: 5361370/INET2600
Account#: S *********

SHIP TO:  (877)829-5500          BILL SENDER
**Internal Revenue Service**
**Internal Revenue Service**
**201 West Rivercenter Blvd.**
**Attn: Extracting Stop 312**
**Covington, KY 41011**

Delivery Address Bar Code



Ref #   Palm Foundation
Invoice #
PO #
Dept #



**STANDARD OVERNIGHT**          **WED**

Deliver By:
TRK#  **7912 7339 2092**   FORM   11APR07
                          0201
                                   **CVG**    A1

**41011**   -KY-US

## NZ FFTA



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT B

**Internal Revenue Service**
Director, EO Rulings & Agreements
P.O. Box 2508
Cincinnati, OH 45201

**Department of the Treasury**

Date: April 12, 2007

POLM FAMILY FOUNDATION INC
PO BOX 1071
SEVERNA PARK, MD   21146

Employer Identification Number:
  20-5661841
Document Locator Number:
  17053-102-01401-7
Toll Free Number:  877-829-5500
Application Form:  1023
User Fee Paid:   $750.00

*Acknowledgement of your application*

We received your application for exemption from federal income tax.  When communicating with us, please refer to the employer identification number and document locator number shown above.

*When can you expect to hear from us about your application?*

Your application was entered into our computer system and has been sent for initial review. Applications are initially separated into three groups: (1) those that can be processed immediately based on information submitted, (2) those that need minor additional information to be resolved, and (3) those that require additional development.

If your application falls in the first or second group, you will receive your exemption letter or a request for additional information, via phone, fax, or letter, within approximately 60 days of the date the application was submitted.

If your application falls within the third group, you will be contacted when your application has been assigned to an Exempt Organizations specialist. We assign applications in the order we receive them. If, after additional development, we conclude that you qualify for exemption, we will send you a letter stating that you are exempt from federal income tax. If we conclude that you do not qualify for exemption, we will send you a letter explaining why we believe you do not qualify and will include a complete explanation of your appeal rights.

The IRS does not issue "tax exempt numbers" or "tax exempt certificates" for state or local sales or income taxes. If you need exemption from these taxes, contact your state or local tax offices.

*Where can you learn more about the status of your application?*

Unfortunately, we are experiencing delays in working applications that require further development. Please click on the **Where Is My Exemption Application?** link found at www.irs.gov/eo for the dates of cases currently being assigned.

**RECEIVED** APR 1 8 2007

Notice 3367 (cg) - (Rev. 11/2006)

EXHIBIT C

Internal Revenue Service
Director, Exempt Organizations

Date: September 27, 2007

Polm Family Foundation, Inc.
c/o Emanuel J. Kallina, II
1122 Kenilworth Drive Suite 507
Towson, MD 21204

Department of the Treasury
P.O. Box 2508
Cincinnati, Ohio 45201

Employer Identification Number:
    20-5661841
Person to Contact - ID#:
    Mrs. A. Morris-52-06394
Contact Telephone Numbers:
    410-962-9449   Phone
    410-962-8193   FAX
Response Due Date:
    October 18, 2007

Dear Sir or Madam:

Before we can determine whether your organization is exempt from Federal
income tax, we must have enough information to show that you have met all
legal requirements.   You did not include the information needed to make
that determination on your Form 1023, Application for Recognition of
Exemption Under Section 501(c)(3) of the Internal Revenue Code.

To help us determine whether your organization is exempt from Federal
income tax, please send us the requested information by the above date.   We
can then complete our review of your application.

If we do not hear from you within that time, we will assume you do not want
us to consider the matter further and will close your case.   In that event,
as required by Code section 6104(c), we will notify the appropriate state
officials that, based on the information we have, we cannot recognize you
as an organization of the kind described in Code section 501(c)(3).   As a
result, the Internal Revenue Service will treat your organization as a
taxable entity.   If we receive the information after the response due date,
we may ask you to send us a new Form 1023.

In addition, if you do not provide the requested information in a timely
manner, we will consider that you have not taken all reasonable steps to
secure the determination you requested.   Under Code section 7428(b)(2),
your not taking all reasonable steps in a timely manner to secure the
determination may be considered as failure to exhaust administrative
remedies available to you within the Service.   Therefore, you may lose your
rights to a declaratory judgment under Code section 7428.

If you have any questions, please contact the person whose name and
telephone number are shown in the heading of this letter.

Sincerely yours,

Mrs. A. Morris
Exempt Organizations Specialist

Enclosure

Letter 1312 (DO)

Page 2

Polm Family Foundation, Inc.
20-5661841

Note:  Your response to this letter must be submitted over the
signature of an authorized person or of an officer whose name is listed on
the application.  Also, the information you submit should be accompanied
by the following declaration:

> "Under penalties of perjury, I declare that I have examined this
> information, including accompanying documents, and, to the best of my
> knowledge and belief, the information contains all the relevant facts
> relating to the request for the information, and such facts are true,
> correct, and complete".

Additional Information Requested:

1. You state that the Foundation may be the recipient of non-cash gifts
such as S-stock, LLC interest, and partnership interests, but has not yet
accepted any contributions of the type described In Part VIII, Line 11.
Please explain when such gifts will be given.

2. Will the organization receive, or purchase, certain kinds of non-liquid
assets by a donor (family member or related Section 4946 disqualified
person) that constitutes a significant portion of the total assets of the
organization?

3. In relation to the preceding question, specifically identify interest
in limited partnerships, (or general partnerships) limited liability
companies or stock in a closely held corporation received by the
supporting organization in which the disqualified person donor as
described in Section 4946 continues to hold a controlling interest by
virtue of his position by being a general partner, managing partner,
and/or voting stock.  Answer the following questions concerning
acceptance of such gifts:

4. Please explain the guidelines for acceptance of Real Property, Life
Insurance Policies, Closely Held Stock and Partnership interests.
The guidelines should include the Responsibilities of the Donor, what the
foundation will not do, and evaluations of potential gifts.

5. Do you or will you accept assets from donors that are not readily
marketable?  If so, may the applicant retain such assets for a period of
time it so chooses?  If so, please explain.

6. State whether or not contributions from donors can be returned to the
donor in the form of grants or loans.  If so, describe the circumstances
under which this would happen.

7. Please submit a copy of your Gift Acceptance Policies and Procedures
for each type of donation that your organization plans to accept.  This
information should include the following information:

Page 3

Polm Family Foundation, Inc.
20-5661841

- Procedure on accepting property that is subject to liens, unpaid mortgages, deeds of trust, unpaid taxes, etc.

- Procedures for determining the fair market value of the asset.

- Will your organization enter in agreements with potential donors? If so, please submit a copy.

- State whether donors will be allowed to place restrictions on their gifts.

- Will you advise the donor that if the property listed in IRS 8283 is sold, liquidated or otherwise disposed of within three years of receipt, it is required to file a separate report within 123 days with the IRS on Form 8282 (Donee Information Report) disclosing facts about the disposition.

8. **Stock**

Since stock will be donated, please provide answers to the following questions:

- Who donated the stock? Do they still have additional shares of this stock? If so, how many shares and what type of stock?
- Please provide the name, address and tax identification number of the business entity associated with the donated stock.
- If the donated stock is from an individual(s) that is a disqualified person as described in section 4946? Do other related parties still own stock of the same type? If so, please explain in detail.
- State whether the donated stock is voting or nonvoting and/or has warrants that are exercisable. Explain in detail.
- Please disclose any other economic benefits associated with the stock that would remain with the owners.
- Please submit a copy of the appraisal of the stock.

**Partnerships**

9. Since the Foundation plans to have an interest in a limited partnership (or general partnership), provide copies of all information filed by the limited partnership. Please describe:

- how the limited partnership was formed including who formed it and their relationship to disqualified persons;
- what assets were contributed, by whom, in return for what;

Page 4

Polm Family Foundation, Inc.
20-5661841

- who contributed the limited partnership interest to the supporting organization;
- support for any loans made by the limited partnership such as promissory notes, payment on such notes, what was considered by the limited partnership in making the loan;
- who or what is the general partner and any relationship the general partner has with disqualified persons;
- any management or investment fees are paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, how are the fees determined.
- Please submit a copy the partnership agreement.
- Please submit a copy of the appraisal of the partnership.

Describe any relationships not already covered between the limited partnership, any partner in the limited partnership and any disqualified person as described in section 4946.

LLC's

11. Since the Foundation plans to have an interest in a limited liability company (LLC), please provide a copy of the state statute governing the assigning of assets of the LLC to other individuals or organizations. Please provide copies of the articles of organization and operating agreement.  Please describe:

- how the LLC was formed including who formed it and their relationship to disqualified persons;
- what assets were contributed, and by whom.
- What election did the LLC make for a business entity (corporation, or partnership)
- who contributed the interest to the supporting organization;
- support for any loans made, such as promissory notes, payment on such notes, what was the collateral considered by the LLC in making the loan;
- who is the managing member and describe any relationship with the disqualified person donor.
- describe any management, compensation or investment fees paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, and how are the fees/compensation determined.
- Please submit a copy of the appraisal of the donated interest.

12. Describe any relationships not already covered between the LLC, any member and any disqualified person as described in section 4946.

13. You state that a majority of the Foundation's governing board consists of individuals who also serve on the governing board of the Supported

Page 5

Polm Family Foundation, Inc.
20-5661841

Organizations.  The Foundation's governing board is appointed by Richard E.
Polm.  IRC 509(a)(3)(C) states that an organization cannot be controlled
directly or indirectly by disqualified persons.  Since Mr. Polm and his
relatives appoint the governing board, it is controlled directly by
disqualified persons.  In addition, a majority of the members of the
Executive Committee control the organization.  (Mr. Polm and Mr. Kallina,
an independent contractor of Mr. Polm).  Please refer to Rev. Rul. 80-207.
The organization does not qualify under 509(a)(3) since it is directly
controlled by disqualified persons.

14. You indicate that the Corporation shall be supervised or controlled in
connection with one or more of the "Qualified Organizations" which are
defined in the Supported Class.  Describe how the control or management of
the supporting organization is placed with the same persons that control or
manage the supported organization.  Identify who these individuals are for
the supporting organization and supported organizations.

15. Indicate who elects or appoints the Managing Directors.  Identify the
current managing directors.

16. You have indicated that disqualified persons appointed the initial
trustees, please answer the following:

a) Describe the process by which disqualified persons appoint any of your
foundation managers.
b) Provide the names of these disqualified persons and the foundation
managers they appoint, and
c) Explain how control is vested over your operations (including assets and
activities) by persons other than disqualified persons.

17. Do any persons who are disqualified persons, (except individuals who
are disqualified persons only because they are foundation managers), have
any influence regarding your operations, including your assets or
activities?  If so, please provide the following:

a) Provide the names of these disqualified persons.
b) Explain how influences are exerted over your operations (including
assets and activities) by individuals other than disqualified persons, and
c) Explain how control is vested over your operations (including assets and
activities) by individuals other than disqualified persons.

18. Please explain how much you have contributed to each charity thus far
and on what date each contribution was made as well as the amount of each
contribution.  If you have not contributed to any of the supported
organizations, when does the organization plan on contributing to the
supported organizations?  Be specific.

19. You state that you have a business relationship with your officers,
directors, or trustees other than through their position as an officer,

Page 6

Polm Family Foundation, Inc.
20-5661841

director, or trustee?  If so, please identify the individuals and
describe the business relationship with each of your officers, directors,
or trustees.

20. You indicate you will purchase or sell goods, services, or assets from
your officers, directors, trustees or independent contractors?  Please
explain fully and submit copies of contracts you have or will
enter into.

21. You indicate that you will support several "qualified organizations";
however, you list grants on line 15 of the 1023 application to Mid
Atlantic Community Church, Habitat for Humanity International, Inc,
Washington Bible College, and Search Ministries, Inc.  Are any of the
officers of these supported organizations also officers of the Polm Family
Foundation?  Explain fully.

22. Who controls and manages the organization's assets?  Be specific.


PLEASE   DIRECT ALL CORRESPONDENCE REGARDING YOUR CASE TO:

    US Mail:                              Street Address:

    Internal Revenue Service             Internal Revenue Service
    Exempt Organizations                 Exempt Organizations
    P. O. Box 13163                      31 Hopkins Plaza
    Baltimore, MD  21203                 Baltimore, MD  21201
    ATT: Mrs. A. Morris                  ATT: Mrs. A. Morris
         Room 1400                            Room 1400

# EXHIBIT D

EMANUEL J. KALLINA, II *
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ •

* Also licensed to practice in D.C.
- Only licensed to practice in Louisiana
• Also Certified Public Accountant

# KALLINA & ASSOCIATES, LLC
### LAW OFFICE
THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Blaise L. Geier
Cheryl A. Jones
Antoinette C. Law
Erin T. Mayer
Lorraine M. Smick

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

October 31, 2007

**VIA FEDERAL EXPRESS**
Internal Revenue Service
Exempt Organizations
P.O. Box 13163
Baltimore, Maryland 21203

ATTN:   Mrs. A. Morris
          Room 1400

Re:   **Polm Family Foundation, Inc.  ("Foundation")**
        **EIN:  20-5661841**

Dear Mrs. Morris:

This letter is in response to your letter dated September 27, 2007, a copy of which is enclosed. In your letter you requested additional information before making a determination regarding the above-referenced applicant. This information is provided in addition to the descriptions contained in the Form 1023 and our cover letter attached thereto.

**Additional Information Requested:**

1. **You state that the Foundation may be the recipient of non-cash gifts such as S-stock, LLC interests, and partnership interest, but has not yet accepted any contributions of the type described in Part VIII, Line 11. Please explain when such gifts will be given.**

There is no projected timeframe for when such gifts might be received by the Foundation, nor are there any such gifts currently contemplated by Mr. and Mrs. Polm (the "Donors.") However, it is possible that at some undetermined point in the future, the Foundation could receive such gifts.

2. **Will the organization receive, or purchase, certain kinds of non-liquid assets by a donor (family member or related Section 4946 disqualified person) that constitutes a significant portion of the total assets of the organization?**

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 2 of 12

All gifts received to date by the Foundation have been cash gifts. The Foundation does not currently contemplate receiving any kinds of non-liquid assets from a donor, family member or related Section 4946 disqualified person.

**3.     In relation to the preceding question, specifically identify interest in limited partnerships, (or general partnerships) limited liability companies or stock in a closely held corporation received by the supporting organization in which the disqualified person donor as described in Section 4946 continues to hold a controlling interest by virtue of his position by being a general partner, managing partner, and/or voting stock. Answer the following questions concerning acceptance or such gifts:**

No gifts of limited partnerships, general partnerships, limited liability companies, or stock in a closely held corporation have been received by the Foundation to date, nor are any such gifts currently contemplated.

**4.     Please explain the guidelines for acceptance of Real Property, Life Insurance Policies, Closely Held Stock and Partnership interest. The guidelines should include the Responsibilities of the donor, what the foundation will not do, and evaluations of potential gifts.**

Since we have not contemplated receiving non-cash gifts, we do not have a policy for receiving non-cash gifts. There is no requirement that a charity have such a policy in order to receive a favorable determination letter from the IRS. If this is a new policy established by the IRS recently, please provide us with a citation for authority.

**5.     Do you or will you accept assets from donors that are not readily marketable? If so, may the applicant retain such assets for a period of time it so chooses? If so, please explain.**

While no such gifts are currently contemplated, it is possible that the Foundation may one day accept assets from the Donors that are not readily marketable. Any gifts received (whether readily marketable or not) will be retained, sold, or otherwise disposed of or utilized by the Foundation in its sole and absolute discretion, based upon the law in effect at the time and prudence required under the circumstances. The Foundation desires that any non-cash gifts, which it might accept in the future, be converted as soon as possible into cash in an effort to make grants and further its charitable purposes, but no such gifts are contemplated at this time.

**6.     State whether or not contributions from donors can be returned to the donor in the form of grants or loans. If so, describe the circumstances under which this would happen.**

The Foundation will never return contributions to donors as grants or loans.

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 3 of 12

7.    Please submit a copy of your Gift Acceptance Policies and Procedures for each type of donation that your organization plans to accept. This information should include the following information.

- Procedure on accepting property that is subject to liens, unpaid mortgages, deeds of trust, unpaid taxes, etc.
- Procedures for determining the fair market value of the asset.
- Will your organization enter in agreements with potential donors? If so, please submit a copy.
- State whether donors will be allowed to place restrictions on their gifts.
- Will you advise the donor that if the property listed in IRS 8283 is sold, liquidated or otherwise disposed of within three years of receipt, it is required to file a separate report within 123 days with the IRS on Form 8282 (Donee Information Report) disclosing facts about the disposition.

We do not plan on receiving non-cash gifts. Gifts of marketable securities will be liquidated, and the cash will be used for grants or reinvested in a diversified and prudent fashion.

<u>Stock</u>
8.    Since stock will be donated, please provide answers to the following questions:

- Who donated the stock? Do they still have additional shares of this stock? If so, how many shares and what type of stock?
- Please provide the name, address and tax identification number of the business entity associated with the donated stock.
- If the donated stock is from an individual (s) that is a disqualified person as described in section 4946? Do other related parties still own stock of the same type? If so, please explain in detail.
- State whether the donated stock is voting or nonvoting and/or has warrants that are exercisable. Explain in detail.
- Please disclose any other economic benefits associated with the stock that would remain with the owners.
- Please submit a copy of the appraisal of the stock.

As mentioned above, no stock has been contributed to the Foundation to date, nor is any gift of stock contemplated, other than marketable securities.

<u>Partnerships</u>
9.    Since the Foundation plans to have an interest in a limited partnership (or general

This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

Internal Revenue Service
October 31, 2007
Page 4 of 12

partnership), provide copies of all information filed by the limited partnership. Please describe:

- How the limited partnership was formed including who formed it and their relationship to disqualified persons;
- What assets were contributed, by whom, in return for what;
- Who contributed the limited partnership interest to the supporting organization;
- Support for any loans made by the limited partnership such as promissory notes, payment on such notes, what was considered by the limited partnership in making loan;
- Who or what is the general partner and any relationship the general partner has with disqualified persons;
- Any management or investment fees are paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, how are the fees determined.
- Please submit a copy the partnership agreement.
- Please submit a copy of the appraisal of the partnership.

Describe any relationships not already covered between the limited partnership, any partner in the limited partnership and any disqualified person as described in section 4946.

As mentioned above, no partnership interest has been contributed to the Foundation to date, nor is any gift of a partnership interest contemplated.

<u>LLC's</u>
10.    Since the Foundation plans to have an interest in a limited liability company (LLC), please provide a copy of the state statute governing the assigning of assets of the LLC to other individuals or organizations. Please provide copies of the articles of organization and operating agreement. Please describe:

- How the LLC was formed including who formed it and their relationship to disqualified persons'
- What assets were contributed, and by whom.
- What election did the LLC make for a business entity (corporation, or partnership)
- Who contributed the interest to the supporting organization;
- Support for any loans made, such as promissory notes, payment on such notes, what was the collateral considered by the LLC in making the loan;
- Who is the managing member and describe any relationship with the disqualified person donor.

This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

Internal Revenue Service
October 31, 2007
Page 5 of 12

- **Describe any management, compensation or investment fees paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, and how are the fees/compensation determined.**
- **Please submit a copy of the appraisal of the donated interest.**

As mentioned above, no LLC interests have been contributed to the Foundation to date, nor is any gift of LLC interest contemplated.

**11.    Describe any relationships not already covered between the LLC, any member and any disqualified person as described in section 4946.**

No such relationships exist.

**12.    You state that a majority of the Foundation's governing board consists of individuals who also serve on the governing board of the Supported Organizations. The Foundation's governing board is appointed by Richard E. Polm. IRC 509(a)(3)(C) states that an organization cannot be controlled directly or indirectly by disqualified persons. Since Mr. Polm and his relatives appoint the governing board, it is controlled directly by disqualified persons. In addition, a majority of the members of the Executive Committee control the organization. (Mr. Polm and Mr. Kallina, an independent contractor of Mr. Polm). Please refer to Rev. Rul. 80-207. The organization does not qualify under 509(a)(3) since it is directly controlled by disqualified persons.**

The ability of Mr. Polm to appoint the Managing Directors does not constitute direct or indirect control according to the IRS's own Regulations under Sec. 1.509(a)-4(j), the Supreme Court, other courts, and the IRS' own Revenue Ruling. Simply stated, Mr. Polm does not directly or indirectly control the Foundation because *the right to appoint directors does not constitute direct or indirect control of the directors or the Foundation.*

The ability to appoint the Managing Directors does not provide a disqualified person, i.e., Mr. Polm, with direct or indirect control. The voting structure of the Foundation's Board of Directors is consistent with Treasury Regulation Section 1.509(a)-4(j), which provides that the voting power of disqualified persons must be greater than 50% of the total voting power of the board for the disqualified persons to control the foundation: "Thus, if the governing body of a foundation is composed of five trustees, none of whom has veto power over the actions of the foundation, and no more than two trustees are at any time disqualified persons, such foundation will not be considered to be controlled directly or indirectly by one or more disqualified persons by reason of this fact alone." The requirements laid out by these Regulations are first, that none of the trustees has veto power over the actions of the foundation and second, that a majority of the votes are held by individuals who are not disqualified persons. In the case of our Foundation, none of the

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 6 of 12

trustees has veto power over the actions of the Foundation, and a majority of the votes are held
by individuals who are not disqualified persons. The Foundation's By-Laws specifically provide
that all elections, resolutions and other matters requiring a vote of the Directors shall be made,
and all questions shall be decided, by majority vote, and that the Managing Directors (who may
not be disqualified persons) hold a majority of the votes.

Even though Mr. Polm currently has the power to appoint Managing Directors, he cannot control
the Foundation's Board of Directors because the Foundation's By-Laws specifically provide that
all elections, resolutions and other matters requiring a vote of the Directors shall be made, and all
questions shall be decided, by the affirmative vote of a majority of all votes entitled to be cast
thereon at a duly constituted meeting of the Directors. The By-Laws further require that the
number of votes held by the Managing Directors shall always be greater than the number of votes
held by the Non-Managing Directors. Thus, the Managing Directors will always hold a majority
of the votes in order to pass any board action and this voting structure is consistent with the
Treasury Regulations. Very importantly, the law imposes a fiduciary duty on the Directors to act
in accordance with the Foundation's charitable mission, the Code, and the Regulations. It cannot
be assumed arbitrarily that the Directors will act within the control of the person who appoints
them.

Some strong analogies to "control" under the Section 509 Regulations and "control" under
Sections 2036 and 2038 can prove to be helpful in drawing legal conclusions. Code Section
2036(a)(2) causes the inclusion in the decedent's gross estate of the value of any transferred
property as to which the decedent has retained the sole or jointly held power to designate the
person or persons who are to have possession or enjoyment of the property or income from the
property. Code Section 2038(a)(1) causes the inclusion in the decedent's gross estate of the value
of any interest in any transferred property where the "enjoyment" thereof was subject at death to
any change through the exercise of a solely or jointly held power to alter, amend, revoke, or
terminate.

In short, Code Sections 2036 and 2038 require that assets transferred by a grantor to a trust
whereby the grantor has control of the beneficial enjoyment of the income or principal of the
trust will cause the fair market value of the transferred assets to be included in the estate of the
grantor. Even the smallest amount of control individually or jointly with others causes the assets
to be included in the grantor's estate. Applying that principle in the context of our situation, if
the power to appoint directors resulted in even a scintilla of control, it would automatically
trigger inclusion in a decedent's gross estate under Code Sections 2036 and 2038. Such is not the
case, however.

In United States v. Byrum, 408 U.S. 125 (1972), the Supreme Court determined that a director's
fiduciary duty to serve the interests of the stockholders constitutes sufficient restrictions to avoid

**This advice (including any attachments) is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal
Revenue Code or (ii) promoting, marketing, or recommending to another party any
transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 7 of 12

application of Code Section 2036.

In Estate of Helen S. Wall v. Commissioner, 101 TC 300 (1993) the decedent (the grantor) retained the right in the trust agreement to remove the corporate and sole trustee and replace it with another corporate trustee which had to be "independent" from the grantor. The trustee was given the authority to distribute principal and income to a beneficiary essentially unrestrained by an ascertainable standard. Relying in part on Byrum, the Tax Court held that the right to replace the corporate trustee does not encompass the right to exercise the powers of the trustee. Therefore, the property held in trust created by the decedent was not includable in her gross estate under Code Section 2036(a)(2) or Section 2038(a)(1).

In addition, the IRS, in Revenue Ruling 95-58, I.R.B. 1995-36, states:

> "if a decedent transferred property in trust while retaining, as trustee, the discretionary power to distribute the principal and income, the trust property will be includible in the decedent's gross estate under §§2036 and 2038. The regulations under §§2036 and 2038 explain that a decedent is regarded as having possessed the powers of a trustee if the decedent possessed an unrestricted power to remove the trustee and appoint anyone (including the decedent) as trustee. Sections 20.2036-1(b)(3) and 20.2038-1(a) of the Estate Tax Regulations."

The IRS concludes:

> "that even if a decedent had possessed the power to remove the trustee and appoint an individual or corporate successor trustee that was not related or subordinate to the decedent (within the meaning of IRC 672(c)), the decedent would not have retained a trustee's discretionary control over trust income."

The IRS has recently reiterated this position in IRS Letter Ruling 200229013 (April 9, 2002).

Since the courts and IRS have specifically stated that the power to remove/appoint an independent trustee is not equivalent to having discretionary control over trust income, and therefore principal is not includable in a decedent's estate under Code Sections 2036 or 2038, by analogy Mr. Polm does not control the Foundation by virtue of his power to appoint Directors. Please note that Mr. Polm does not even have the power to remove Directors, as that requires not just a majority vote but the affirmative vote of at least two-thirds of the Directors.

Further, even if the Foundation's Managing Directors were to delegate control to Mr. Polm, it

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 8 of 12

would not discharge them from the legal responsibility they have as directors. As a matter of law, the directors would remain liable and answerable for Mr. Polm's acts on their behalf. See Estate of Hilton W. Goodwyn, Deceased v. Commissioner, 35 TCM 1026, TC Memo. 1976-238, Filed July 29, 1976, citing 2 Scott, Trusts 1388, 1391 (3rd ed., 1967); 3 Scott, Trusts 1794 (3rd ed., 1967).

As to your citation of Revenue Ruling 80-207, the facts of that ruling are totally different than those posed by this Foundation. This Ruling states that "...employees of a disqualified person will be considered in determining whether one or more disqualified persons controls 50 percent or more of the voting power of an organization's governing body." The Service then determined that the organization was "indirectly controlled by disqualified persons... *because a majority of its board of directors consists of a disqualified person and employees of a disqualified person* [emphasis added]. Our Foundation has no such taint to its Board. Its organizing documents require that an Executive Committee, which shall always be controlled by Managing Directors, will manage the day-to-day affairs of the Foundation. Furthermore, Managing Directors may not be "disqualified persons" as defined in Code Section 4946(a), and must be individuals who are officers, directors, and/or trustees of a Supported Organization.

The Service appears to be arguing that I am a disqualified person because I am an independent contractor of the Foundation and/or Mr. Polm. Independent contractors are not included in the definition of "disqualified persons" under Section 4946. Further, there can be no assumption that I will simply abuse my fiduciary duty.

This question as to whether or not the Donors somehow indirectly "control" those independent Managing Directors goes to the heart of whether or not a person who is independent (*i.e.*, not a disqualified person and a manager of one of the Foundation's Supported Organizations) is presumed to be a "sinner" with respect to the organization and the actions of the Donors. Our position is that the IRS cannot take a set of facts, especially those which clearly fulfill the relationship requirements laid out in its own Regulations, and assume that not only will the Donors abuse the Foundation's charitable purposes, but the Managing Directors will ignore their fiduciary duty to both the Foundation and the Supported Organizations they also manage. The IRS's position is based upon what appears to be a common assumption that the Donors will abuse their authority and somehow manipulate the Foundation and its assets for their own personal benefit and gain. This is an assumption the Service legally cannot make.

In short, the Service needs to obey its own regulations and Revenue Rulings, and the Supreme Court in *Byrum*.

13.    You indicate that the Corporation shall be supervised or controlled in connection with one or more of the "Qualified Organizations" which are defined in the Supported Class. Describe how the control or management of the supporting organization is placed

---

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 9 of 12

**with the same persons that control or manage the supported organization. Identify who these individuals are for the supporting organization and supported organizations.**

Pursuant to Section 2.9 of the Foundation's By-Laws, responsibility for the day-to-day affairs, decision making and management of the Foundation rests in the Executive committee, which consists of Richard E. Polm, Lew Schrumm and Emanuel J. Kallina, II. As required by the law under Code Section 509(a)(3)(C) and the Regulations thereunder relating to Type 2 supporting organizations, a majority of the votes held by the Executive Committee members are held by individuals who are officers, directors and/or trustees of a Supported Organization. Mr. Kallina is a member of the Board of Directors of Search Ministries, Inc. as well as Chairman and member of the Board of Directors of Educational Media Foundation (K-LOVE Radio). Mr. Schrumm is pastor and trustee of Mid Atlantic Community Church.

**14.    Indicate who elects or appoints the Managing Directors. Identify the current managing directors.**

Pursuant to section 2.4 of the Foundation's By-Laws, all Directors (including Managing Directors) are appointed by the following individuals, in the following sequence: Richard E. Polm, then Theresa E. Polm, then the living adult children of Richard E. Polm and Theresa E. Polm, then the existing Directors of the Foundation, and finally the majority vote of those Qualified Organizations within the supported Class listed on Schedule A of the Foundation's By-Laws. The current Managing Directors are Lew Schrumm and Emanuel J. Kallina, II. Carl Francis Wiesner, Jr. has resigned as a Trustee.

**15.    You have indicated that disqualified persons appointed the initial trustees, please answer the following:**

   **a) Describe the process by which disqualified persons appoint any of your foundation managers.**

Pursuant to section 2.4 of the Foundation's By-Laws, all Directors (including Managing Directors) are appointed by the following individuals, in the following sequence: Richard E. Polm, then Theresa E. Polm, then the living adult children of Richard E. Polm and Theresa E. Polm, then the existing Directors of the Foundation, and finally the majority vote of those Qualified Organizations within the supported Class listed on Schedule A of the Foundation's By-Laws.

   **b) Provide the names of these disqualified persons and the foundation managers they appoint, and**

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 10 of 12

Pursuant to section 2.4 of the Foundation's By-Laws, all Directors (including Managing Directors) are appointed by the following individuals, in the following sequence:  Richard E. Polm, then Theresa E. Polm, then the living adult children of Richard E. Polm and Theresa E. Polm, then the existing Directors of the Foundation, and finally the majority vote of those Qualified Organizations within the supported Class listed on Schedule A of the Foundation's By-Laws.

   c) **Explain how control is vested over your operations (including assets and activities) by persons other than disqualified persons.**

See section 2.4 of the Foundation's By-Laws, which provides that, in accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Foundation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class.  See also Section 2.3 of the Foundation's By-Laws, which provides that a Managing Director shall be a person who is an officer, director and/or trustee of a Qualified Organization within the Foundation's Supported Class and who is not a "disqualified person" as defined in Code Section 4946(a).  Managing Directors shall always control the Foundation because as a class, they will always have more votes than the Other Directors.

**16.    Do any persons who are disqualified person, (except individuals who are disqualified persons only because they are foundation managers), have any influence regarding your operations, including your assets or activities? If so, please provide the following:**

   a) **Provide the names of these disqualified persons.**

Richard E. Polm and Theresa E. Polm are disqualified persons with respect to the Foundation, and also members of the Foundation's Board of Directors.

   b) **Explain how influences are exerted over your operations (including assets and activities) by individuals other than disqualified persons, and**

The Managing Directors of the Foundation are individuals other than disqualified persons and they have majority vote on any action taken by the Foundation or any committee thereof.  The Managing Directors also hold a majority of the votes on the Executive Committee.

   c) **Explain how control is vested over your operations (including assets and activities) by individuals other than disqualified persons.**

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 11 of 12

As outlined above, control of the Foundation rests in the Managing Directors, who collectively have majority vote.  Pursuant to the Foundation's organizing documents, Managing Directors are those persons who are officers, directors and/or trustees of a Qualified Organization within the Foundation's Supported Class and who are not "disqualified persons" as defined in Code Section 4946(a).

**17.    Please explain how much you have contributed to each charity thus far and on what date each contribution was made as well as the amount of each contribution. If you have not contributed to any of the supported organizations, when does the organization plan on contributing to the supported organizations? Be specific.**

See the attached list.

**18.    You state that you have a business relationship with your officers, directors, or trustees other than through their position as an officer, director, or trustee? If so, please identify the individuals and describe the business relationship with each of your officers, directors, or trustees.**

One of the Foundation's Directors, Emanuel J. Kallina, II, is the managing member of Kallina & Associates, LLC, a Maryland law firm ("K&A"). The Foundation may choose to hire K&A as its legal counsel in the future. Mr. Kallina has fully disclosed the details surrounding his ownership of K&A to the Foundation's Directors, and will refrain from participating in any discussions or deliberations regarding the hiring of K&A.

**19.    You indicate you will purchase or sell goods, services, or assets from your officers, directors, trustees or independent contractors? Please explain fully and submit copies of contracts you have or will enter into.**

One of the Foundation's Directors, Emanuel J. Kallina, II, is the managing member of K&A. The Foundation may choose to hire K&A as its legal counsel in the future. Mr. Kallina has fully disclosed the details surrounding his ownership of K&A to the Foundation's Directors, and will refrain from participating in any discussions or deliberations regarding the hiring of K&A.

**20.    You indicate that you will support several "qualified organizations": however, you list grants on line 15 of the 1023 application to Mid Atlantic Community Church, Habitat for Humanity International, Inc, Washington Bible College, and Search Ministries, Inc. Are any of the officers of these supported organizations also officers of the Polm Family Foundation? Explain fully.**

Emanuel J. Kallina, II is a member of the Board of Directors of Search Ministries, Inc., and a

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
October 31, 2007
Page 12 of 12

member and Chairman of the Board of Directors of Educational Media Foundation (K-LOVE Radio). He is also a member and Chairman of the Foundation's Board of Directors, as well as a member of the Foundation's Executive Committee.

Lew Schrumm is the pastor and a trustee of Mid-Atlantic Community Church. He is also a member of the Foundation's Board of Directors, Vice-President of the Foundation, and a member of the Foundation's Executive Committee.

Richard E. Polm is a trustee and officer (Secretary) of Mid-Atlantic Community Church.

**21.    Who controls and manages the organization's assets? Be specific.**

The Foundation's assets currently consist of cash gifts that have been contributed by the Donors. Those assets are held in a bank account in the Foundation's name. Decisions regarding the management of those assets are under the control and direction of the Foundation's Board of Directors.

As stated in our initial filing, we are requesting a conference in the event the IRS is considering any adverse ruling with respect to this determination letter.

Please do not hesitate to contact me should you have any other questions or require additional information concerning this matter.

Sincerely,

*Emanuel J. Kallina, II/caj*

Emanuel J. Kallina, II

EJK/caj
Enclosures
cc:    Mr. Richard E. Polm
F:\Work\Polm, Rick\Documents\Polm Family Foundation\Response to IRS - final.doc

---

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

### Polm Family Foundation, Inc.
### Grants through 10/31/07

The Foundation has made the following contributions to supported organizations to date:

| Date of Gift | Recipient Supported Organization | Contribution Amount |
|---|---|---|
| 2-16-07 | Hospice of the Chesapeake | $9,800.00 |
| 2-22-07 | Camp Blaze, Inc. | $630.00 |
| 3-23-07 | Providence Center, Inc. | $2,400.00 |
| 5-04-07 | Camp Blaze, Inc. | $280.00 |
| 5-04-07 | Mid Atlantic Community Church | $1,000.00 |
| 9-14-07 | Providence Center, Inc. | $10,000.00 |
| | Total | $24,110.00 |

Polm Family Foundation, Inc.
EIN: 20-5661841
Response to IRS Request for Additional Information

## Declaration

Under penalties of perjury, I declare that I have examined this information, including
accompanying documents, and, to the best of my knowledge and belief, the information contains
all the relevant facts relating to the request for the information, and such facts are true, correct,
and complete.

Richard E. Polm, President
Polm Family Foundation, Inc.

Date: 10/31/07

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Declaration for IRS Response #1.doc

Internal Revenue Service
Director, Exempt Organizations

Date: September 27, 2007

Polm Family Foundation, Inc.
c/o Emanuel J. Kallina, II
1122 Kenilworth Drive Suite 507
Towson, MD 21204

Department of the Treasury
P.O. Box 2508
Cincinnati, Ohio 45201

Employer Identification Number:
  20-5661841
Person to Contact - ID#:
  Mrs. A. Morris-52-06394
Contact Telephone Numbers:
  410-962-9449    Phone
  410-962-8193    FAX
Response Due Date:
  October 18, 2007

Dear Sir or Madam:

Before we can determine whether your organization is exempt from Federal
income tax, we must have enough information to show that you have met all
legal requirements.  You did not include the information needed to make
that determination on your Form 1023, Application for Recognition of
Exemption Under Section 501(c)(3) of the Internal Revenue Code.

To help us determine whether your organization is exempt from Federal
income tax, please send us the requested information by the above date.  We
can then complete our review of your application.

If we do not hear from you within that time, we will assume you do not want
us to consider the matter further and will close your case.  In that event,
as required by Code section 6104(c), we will notify the appropriate state
officials that, based on the information we have, we cannot recognize you
as an organization of the kind described in Code section 501(c)(3).  As a
result, the Internal Revenue Service will treat your organization as a
taxable entity.  If we receive the information after the response due date,
we may ask you to send us a new Form 1023.

In addition, if you do not provide the requested information in a timely
manner, we will consider that you have not taken all reasonable steps to
secure the determination you requested.  Under Code section 7428(b)(2),
your not taking all reasonable steps in a timely manner to secure the
determination may be considered as failure to exhaust administrative
remedies available to you within the Service.  Therefore, you may lose your
rights to a declaratory judgment under Code section 7428.

If you have any questions, please contact the person whose name and
telephone number are shown in the heading of this letter.

Sincerely yours,

Mrs. A. Morris

Mrs. A. Morris
Exempt Organizations Specialist

Enclosure

Letter 1312 (DO)

Page 2

Polm Family Foundation, Inc.
20-5661841

Note: Your response to this letter must be submitted over the signature of an authorized person or of an officer whose name is listed on the application. Also, the information you submit should be accompanied by the following declaration:

"Under penalties of perjury, I declare that I have examined this information, including accompanying documents, and, to the best of my knowledge and belief, the information contains all the relevant facts relating to the request for the information, and such facts are true, correct, and complete".

Additional Information Requested:

1. You state that the Foundation may be the recipient of non-cash gifts such as S-stock, LLC interest, and partnership interests, but has not yet accepted any contributions of the type described In Part VIII, Line 11. Please explain when such gifts will be given.

2. Will the organization receive, or purchase, certain kinds of non-liquid assets by a donor (family member or related Section 4946 disqualified person) that constitutes a significant portion of the total assets of the organization?

3. In relation to the preceding question, specifically identify interest in limited partnerships, (or general partnerships) limited liability companies or stock in a closely held corporation received by the supporting organization in which the disqualified person donor as described in Section 4946 continues to hold a controlling interest by virtue of his position by being a general partner, managing partner, and/or voting stock. Answer the following questions concerning acceptance of such gifts:

4. Please explain the guidelines for acceptance of Real Property, Life Insurance Policies, Closely Held Stock and Partnership interests. The guidelines should include the Responsibilities of the Donor, what the foundation will not do, and evaluations of potential gifts.

5. Do you or will you accept assets from donors that are not readily marketable? If so, may the applicant retain such assets for a period of time it so chooses? If so, please explain.

6. State whether or not contributions from donors can be returned to the donor in the form of grants or loans. If so, describe the circumstances under which this would happen.

7. Please submit a copy of your Gift Acceptance Policies and Procedures for each type of donation that your organization plans to accept. This information should include the following information:

Page 3

Polm Family Foundation, Inc.
20-5661841

- Procedure on accepting property that is subject to liens, unpaid mortgages, deeds of trust, unpaid taxes, etc.

- Procedures for determining the fair market value of the asset.

- Will your organization enter in agreements with potential donors?  If so, please submit a copy.

- State whether donors will be allowed to place restrictions on their gifts.

- Will you advise the donor that if the property listed in IRS 8283 is sold, liquidated or otherwise disposed of within three years of receipt, it is required to file a separate report within 123 days with the IRS on Form 8282 (Donee Information Report) disclosing facts about the disposition.

8. **Stock**

Since stock will be donated, please provide answers to the following questions:

- Who donated the stock?  Do they still have additional shares of this stock?  If so, how many shares and what type of stock?
- Please provide the name, address and tax identification number of the business entity associated with the donated stock.
- If the donated stock is from an individual(s) that is a disqualified person as described in section 4946?  Do other related parties still own stock of the same type?  If so, please explain in detail.
- State whether the donated stock is voting or nonvoting and/or has warrants that are exercisable.  Explain in detail.
- Please disclose any other economic benefits associated with the stock that would remain with the owners.
- Please submit a copy of the appraisal of the stock.

**Partnerships**

9. Since the Foundation plans to have an interest in a limited partnership (or general partnership), provide copies of all information filed by the limited partnership.  Please describe:

- how the limited partnership was formed including who formed it and their relationship to disqualified persons;
- what assets were contributed, by whom, in return for what;

Page 4

Polm Family Foundation, Inc.
20-5661841

- who contributed the limited partnership interest to the supporting organization;
- support for any loans made by the limited partnership such as promissory notes, payment on such notes, what was considered by the limited partnership in making the loan;
- who or what is the general partner and any relationship the general partner has with disqualified persons;
- any management or investment fees are paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, how are the fees determined.
- Please submit a copy the partnership agreement.
- Please submit a copy of the appraisal of the partnership.

Describe any relationships not already covered between the limited partnership, any partner in the limited partnership and any disqualified person as described in section 4946.

## LLC's

11. Since the Foundation plans to have an interest in a limited liability company (LLC), please provide a copy of the state statute governing the assigning of assets of the LLC to other individuals or organizations. Please provide copies of the articles of organization and operating agreement.  Please describe:

- how the LLC was formed including who formed it and their relationship to disqualified persons;
- what assets were contributed, and by whom.
- What election did the LLC make for a business entity (corporation, or partnership)
- who contributed the interest to the supporting organization;
- support for any loans made, such as promissory notes, payment on such notes, what was the collateral considered by the LLC in making the loan;
- who is the managing member and describe any relationship with the disqualified person donor.
- describe any management, compensation or investment fees paid, if applicable, and to whom they are paid, relationship of persons to whom they are paid with any disqualified person, and how are the fees/compensation determined.
- Please submit a copy of the appraisal of the donated interest.

12. Describe any relationships not already covered between the LLC, any member and any disqualified person as described in section 4946.

13. You state that a majority of the Foundation's governing board consists of individuals who also serve on the governing board of the Supported

Page 5

Polm Family Foundation, Inc.
20-5661841

Organizations. The Foundation's governing board is appointed by Richard E. Polm. IRC 509(a)(3)(C) states that an organization cannot be controlled directly or indirectly by disqualified persons. Since Mr. Polm and his relatives appoint the governing board, it is controlled directly by disqualified persons. In addition, a majority of the members of the Executive Committee control the organization. (Mr. Polm and Mr. Kallina, an independent contractor of Mr. Polm). Please refer to Rev. Rul. 80-207. The organization does not qualify under 509(a)(3) since it is directly controlled by disqualified persons.

14. You indicate that the Corporation shall be supervised or controlled in connection with one or more of the "Qualified Organizations" which are defined in the Supported Class. Describe how the control or management of the supporting organization is placed with the same persons that control or manage the supported organization. Identify who these individuals are for the supporting organization and supported organizations.

15. Indicate who elects or appoints the Managing Directors. Identify the current managing directors.

16. You have indicated that disqualified persons appointed the initial trustees, please answer the following:

a) Describe the process by which disqualified persons appoint any of your foundation managers.
b) Provide the names of these disqualified persons and the foundation managers they appoint, and
c) Explain how control is vested over your operations (including assets and activities) by persons other than disqualified persons.

17. Do any persons who are disqualified persons, (except individuals who are disqualified persons only because they are foundation managers), have any influence regarding your operations, including your assets or activities? If so, please provide the following:

a) Provide the names of these disqualified persons.
b) Explain how influences are exerted over your operations (including assets and activities) by individuals other than disqualified persons, and
c) Explain how control is vested over your operations (including assets and activities) by individuals other than disqualified persons.

18. Please explain how much you have contributed to each charity thus far and on what date each contribution was made as well as the amount of each contribution. If you have not contributed to any of the supported organizations, when does the organization plan on contributing to the supported organizations? Be specific.

19. You state that you have a business relationship with your officers, directors, or trustees other than through their position as an officer,

Page 6

Polm Family Foundation, Inc.
20-5661841

director, or trustee?  If so, please identify the individuals and
describe the business relationship with each of your officers, directors,
or trustees.

20. You indicate you will purchase or sell goods, services, or assets from
your officers, directors, trustees or independent contractors?  Please
explain fully and submit copies of contracts you have or will
enter into.

21. You indicate that you will support several "qualified organizations";
however, you list grants on line 15 of the 1023 application to Mid
Atlantic Community Church, Habitat for Humanity International, Inc,
Washington Bible College, and Search Ministries, Inc.  Are any of the
officers of these supported organizations also officers of the Polm Family
Foundation?  Explain fully.

22. Who controls and manages the organization's assets?  Be specific.


PLEASE  DIRECT ALL CORRESPONDENCE REGARDING YOUR CASE TO:

    US Mail:                          Street Address:

    Internal Revenue Service          Internal Revenue Service
    Exempt Organizations              Exempt Organizations
    P. O. Box 3163                    31 Hopkins Plaza
    Baltimore, MD 21203               Baltimore, MD 21201
    ATT: Mrs. A. Morris               ATT: Mrs. A. Morris
        Room 1400                         Room 1400

EXHIBIT E

EMANUEL J. KALLINA, II *
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ •

* Also licensed to practice in D.C.
• Only licensed to practice in Louisiana

# KALLINA & ASSOCIATES, LLC
## LAW OFFICE
### THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Antoinette C. Law
Erin T. Mayer
Molly K. McCarter
Lorraine M. Smith

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

March 06, 2008

**VIA FACSIMILE**
Internal Revenue Service
Exempt Organizations
P.O. Box 13163
Baltimore, MD 21203

Attn:   Mrs. A. Morris
        Room 1400

    Re:     **Polm Family Foundation, Inc. ("Foundation")**
            **EIN:  20-5661841**

Dear Mrs. Morris:

        I wanted to follow up with you regarding our telephone conversation of Wednesday, March 05, 2008. During that call you raised several issues with regard to the Foundation's application for exemption, most of which have been resolved.

        The first issue concerned noncash contributions to the Foundation. You indicated that any determination letter issued to the Foundation at this time would not include a determination of the effect of noncash contributions on the exempt status of the Foundation. You stated, however, that any determination letter issued would not contain a caveat to that effect. You requested that the Foundation notify the IRS in the future if it accepts contributions of noncash assets such as partnership or limited liability interests. We agreed that the Foundation would do so. Unless we hear from you otherwise, the Foundation will send this notification at the same time the Form 990 is filed.

        A second issue you raised dealt with the separation of the officers. You indicated that you would like the offices of President and Treasurer to be held by individuals who are not related to each other and are not both disqualified persons. We agreed and so during the next Board Meeting, scheduled for this April, the new Treasurer will be elected in compliance with that request.

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Internal Revenue Service
March 06, 2008
Page 2 of 2

You questioned Mr. Kallina's position as a Managing Director on the Board considering his role as an independent contractor. Though we disagree with the allegation that Mr. Kallina's role as a Managing Director would be inappropriately influenced by his role as the Foundation's attorney, in the interest of expediency Mr. Kallina has resigned, along with another member of the Board who no longer qualifies as a Managing Director. Two new Managing Directors have been appointed in their place. You requested that we forward to you a copy of the Articles of Amendment and Restatement filed with and accepted by the Maryland State Department of Assessment and Taxation. Those filings are in the process of being made and we will fax you the accepted Articles when received.

Finally, the last issue we discussed dealt with the ability of Mr. Polm, as an Other Trustee, to appoint the Managing Directors. As we discussed, we do not believe that there is a legal basis for the assumption that this appointment power constitutes indirect control as you are alleging. To the contrary, we believe that this appointment power ensures that the goals of the Foundation are met through a careful selection of the controlling members of the Board. This remains our single outstanding issue. As discussed, we will speak with our client regarding this issue and respond to you with his decision to either concede the point or seek other remedies.

Thank you very much for your consideration of the Foundation's application for exemption. Please do not hesitate to contact me should you have any other questions or require additional information concerning this matter.

Sincerely,

K. Brigid Peterson

K. Brigid Peterson

cc:  Mr. Richard E. Polm
F:\Work\Polm, Rick\correspondence\fax-080306-morris re outstanding issues.doc

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

```
                    ********************
                    ***   TX REPORT   ***
                    ********************


        TRANSMISSION OK

        TX/RX NO              0740
        DESTINATION TEL #
        DESTINATION ID
        ST. TIME             03/06 17:36
        TIME USE             00'53
        PAGES SENT             2
        RESULT               OK
```

# EXHIBIT F

EMANUEL J. KALLINA, II *
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ •

\* Also licensed to practice in D.C.
• Only licensed to practice in Louisiana
\* Also Certified Public Accountant

# KALLINA & ASSOCIATES, LLC
### LAW OFFICE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Antoinette C. Lew
Erin T. Mayer
Molly K. McCarter
Lorraine M. Smith

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

March 19, 2008

## FACSIMILE TRANSMISSION

**TO:**        Ms. Morris - IRS   — 410-962-8193

**FROM:**    Cheryl Jones

**SUBJECT:**  Polm Family Foundation
EIN No. 20-5661841

**PAGES:**    This cover sheet *plus* 1

---

Please see the attached.

Thank you.

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. We will reimburse you for the postage. Thank you.

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

EMANUEL J. KALLINA, II *
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ *

* Also licensed to practice in D.C.
• Only licensed to practice in Louisiana

# KALLINA & ASSOCIATES, LLC
LAW OFFICE
THE EXCHANGE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Antoinette C. Lew
Erin T. Mayer
Molly K. McCarter
Lorraine M. Smick

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

March 19, 2008

**VIA FACSIMILE**
Internal Revenue Service
Exempt Organizations
P.O. Box 13163
Baltimore, MD 21203
Attn:  Mrs. A. Morris, Room 1400

>       Re:     **Polm Family Foundation, Inc. ("Foundation")**
>               **EIN:  20-5661841**

Dear Mrs. Morris:

Pursuant to our call this morning, I wanted to follow up our letter of March 6, 2008, wherein we indicated that we would consult with our client and get back to you.  Considering more than 320 days have now passed since the Foundation filed its Form 1023, we are frustrated that the IRS has not yet issued a favorable determination to the Foundation, especially after the Foundation has made numerous changes to its documents and management structure to comply with your requests to date.

The Foundation has decided that it is not willing to concede the issue of appointment of Directors.   We believe the IRS's attempt to force this issue is abusive and manipulates charities into a position that is neither required nor supported by the Internal Revenue Code or Regulations. The IRS has been taking this position informally throughout numerous cases in an effort to administratively rewrite the Code without Congressional input and is causing numerous charities to suffer because of its arbitrary and capricious position.

Please be advised that, barring some further communication or discussion with your office, the Foundation intends to file a Motion for a Declaratory Judgment next week.

Sincerely,

Emanuel J. Kallina, II

EJK/caj
cc:  Mr. Richard E. Polm
F:\Work\Polm, Rick\correspondence\fax-080319-morris.doc

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

```
                        *********************
                        ***   TX REPORT   ***
                        *********************


        TRANSMISSION OK

        TX/RX NO              0750
        DESTINATION TEL #
        DESTINATION ID
        ST. TIME             03/19 21:45
        TIME USE             00'55
        PAGES SENT              2
        RESULT               OK
```

EXHIBIT G

LAW OFFICES

# POPE & HUGHES

A PROFESSIONAL ASSOCIATION
THE SUSQUEHANNA BUILDING
SUITE 110
29 W. SUSQUEHANNA AVENUE
TOWSON, MARYLAND 21204

(410) 494-7777
Facsimile (410) 494-1658

DATE:   May 19, 2003

*FACSIMILE MESSAGE*

PLEASE DELIVER THE FOLLOWING   _3_   PAGES

TO:       Emil Kallina, Esq.                          410-377-2179

FROM:    Russell J. Pope, Esq.

MESSAGE:

If you do not receive any of the following pages, please call our firm at (410) 494-7777
(during business hours).  Our FAX Number:  (410) 494-1658

Telecommunications Operator

ylh

FILE: Kinkade Foundation

**CONFIDENTIALITY NOTICE:** The documents(s) accompanying this fax contain confidential information which is legally privileged.  The information is intended only for the use of the intended recipient named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of the telecopied information except its direct delivery to the intended recipient named above is strictly prohibited.  If you have received this fax in error, please notify us immediately by telephone to arrange for return of the original documents to us at no cost to you. Unauthorized interception of this telephonic communication could be a violation of Federal and Maryland law.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE THOMAS KINKADE FOUNDATION CHARITABLE TRUST, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 02-1973 (RMC) |
| UNITED STATES OF AMERICA and THE INTERNAL REVENUE SERVICE, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

The Thomas Kinkade Foundation Charitable Trust ("Foundation") has been trying, since October 4, 2000, to obtain a favorable ruling from the Internal Revenue Service ("IRS") on its application for tax-exempt status under § 509(a)(3) of the Internal Revenue Code of 1986 ("Code"). After dealing with four different IRS agents over a period of years, submitting volumes of material in response to inquiries from the IRS, and receiving an adverse determination based on issues that allegedly were never part of the previous communications, the Foundation sought a declaratory judgment under 26 U.S.C. § 7428. The IRS has moved for dismissal based upon its assertion that the Foundation has failed to exhaust its administrative remedies. The Foundation opposes the motion to dismiss.

The Court finds that § 7428(b)(2) applies here,[1] that the Foundation has taken timely and reasonable steps to secure a determination on its status, and that the Secretary has failed to make a determination within 270 days. Therefore, the motion to dismiss will be denied.

---

[1] "An organization requesting the determination of [tax-exempt status] shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination." 26 U.S.C. § 7428(b)(2).

### Analysis

The question is straightforward: has the Foundation met the requirements of § 7428(b)(2) so that the Court has jurisdiction over its declaratory judgment action? The facts are not in dispute and come from the complaint and the government's memorandum in support of its motion to dismiss. The Foundation filed its petition on October 4, 2000. The IRS requested additional information on November 9, 2000. The case was transferred to the IRS National Office in December 2000. The Foundation supplied the requested information in early 2001. On August 22, 2001, the IRS requested more information. The Foundation submitted it on October 19, 2001. The IRS requested yet more information on May 6, 2002. The Foundation provided the information on June 17, 2002. The IRS issued the proposed adverse determination letter on August 22, 2002. The Foundation filed a protest on October 2, 2002. It filed this action on October 7, 2002.

Along the way, the petition for tax exempt status was reviewed by at least four different IRS agents, each of whom appears to have started anew. The Foundation responded on a timely basis to each agent's request for information, yet more than 730 days passed between the time the Foundation submitted its Form 1023 to begin the process with the IRS and the time it gave up and filed this declaratory judgment action.

The IRS argues that this Court lacks jurisdiction because the Foundation's protest of the preliminary denial letter is still pending and, therefore, it has not exhausted its administrative remedies. The IRS also argues that it must have "a reasonable time to act upon the appeal or request for reconsideration," which it says it lacks because the Foundation filed this suit only five days after filing its protest. Memorandum in Support of Defendant's Motion to Dismiss at 5. It cites its own

regulation at 26 C.F.R. § 601.201(n)(7)(vi) for this proposition.[2] The IRS ignores the unfortunate impact its glacial pace has had on the Foundation's development.

The regulation cannot trump the statute. It is clear that a petitioner who has timely provided all information requested and has assiduously assisted the IRS in determining its status has the right, after 270 days without resolution, to seek a court judgment on the question. Since the Foundation has done just that, the Court has jurisdiction to hear and decide this case.

The motion to dismiss is **DENIED**. The motion for a hearing is also **DENIED**. A scheduling conference will be arranged.

**SO ORDERED.**

DATED: May 19, 2003

         /s/
         ROSEMARY M. COLLYER
         United States District Judge

---

[2] The Court notes that the protest has not been decided by the IRS despite the passage of more than seven months since it was filed in October, 2002. The government has no prediction as to when it might act.

-3-

# EXHIBIT H

LAW OFFICES

# POPE & HUGHES

A PROFESSIONAL ASSOCIATION
THE SUSQUEHANNA BUILDING
SUITE 110
29 W. SUSQUEHANNA AVENUE
TOWSON, MARYLAND 21204

(410) 494-7777
Facsimile (410) 494-1658

DATE:   November 20, 2003

*FACSIMILE MESSAGE*

PLEASE DELIVER THE FOLLOWING    3   PAGE(S)

TO:        Emanuel J. Kallina, II, Esquire _____        (410) 377-2179

FROM:    Russell J. Pope, Esquire _____

MESSAGE:

If you do not receive any of the following pages, please call our firm at (410) 494-7777
(during business hours).  Our FAX Number:  (410) 494-1658

                                 Telecommunications Operator

                                 mat _____

                                 FILE: Kinkade Foundation

CONFIDENTIALITY NOTICE: The document(s) accompanying this fax contain confidential information
which is legally privileged. The information is intended only for the use of the intended recipient named
above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution
or the taking of any action in reliance on the contents of this telecopied information except its direct delivery to
the intended recipient named above is strictly prohibited. If you have received this fax in error, please notify
us immediately by telephone to arrange for return of the original documents to us at no cost to you.
Unauthorized interception of this telephone communication could be a violation of Federal and Maryland
law.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                          )
THE THOMAS KINKADE                        )
FOUNDATION CHARITABLE TRUST, )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )      Civil Action No. 02 cv 1973 (RMC)
                                          )
UNITED STATES OF AMERICA and  )
THE INTERNAL REVENUE SERVICE, )
                                          )
        Defendants.                       )
                                          )
```

## ORDER OF JUDGMENT

Pending before the Court are Cross-Motions for an entry of declaratory judgment filed by the Plaintiff, The Thomas Kinkade Foundation Charitable Trust ("Foundation"), and the Defendants, the United States of America and the Internal Revenue Service ("IRS"). The motions filed by the parties are substantially similar, except that the Foundation asks that certain findings of fact be included in the declaratory judgment. The Foundation asserts that such findings are necessary to overcome damage to the Foundation's reputation from media exposure. In addition, the Foundation has expressed concern that the IRS might revoke its tax exempt status, which the IRS now concedes, at some time in the future, resurrecting some of the allegations set forth in the adverse determination letter that prompted this suit.

Upon consideration of these motions, the Court finds that the proposed order submitted by the United States fully meets the relief requested in the Complaint. In addition, absent a change in facts, the IRS is bound to the determinations in this order concerning the Foundation's tax status.

Therefore, it is this 20th day of November, 2003, hereby

**ORDERED** that judgment be and the same is entered in favor of the Plaintiff, The Thomas Kinkade Foundation Charitable Trust, and against the Defendant, the United States of America, under 26 U.S.C. § 7428; and it is

**FURTHER ORDERED** that the Plaintiff is entitled to a favorable determination letter from the Internal Revenue Service recognizing that the Foundation is an organization described in § 501(c)(3) of the Internal Revenue Code, and is exempt from taxation under § 501(a) of the Internal Revenue Code, and that the Foundation is an organization described in § 509(a)(3) of the Internal Revenue Code, within thirty (30) days of the entry of this Order, effective as of the date the Foundation was created, namely September 29, 1999.

**SO ORDERED.**

/s/
ROSEMARY M. COLLYER
United States District Judge