**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

POLM FAMILY FOUNDATION, INC., )
           )
           )
    **Plaintiff**     )
           )
v.           )
           )    No.  1:08-cv-00514-RBW
UNITED STATES OF AMERICA and  )
THE INTERNAL REVENUE SERVICE, )
           )
           )
    **Defendants**    )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

    Defendants, the United States of America and the Internal Revenue Service ("IRS") have

filed a Motion to Dismiss on the grounds that this Court lacks subject matter jurisdiction under

26 U.S.C. §7428 because Plaintiff, the Polm Family Foundation, Inc. ("Foundation"), has failed

to exhaust its administrative remedies.[1]  However, by statute, the Foundation is deemed to have

exhausted its administrative remedies on these facts and the matter is ripe for adjudication. For

the reasons set forth more fully below, the Defendants' Motion to Dismiss should be denied.

**INTRODUCTION**

    On the date the Foundation's Complaint was filed, 344 days had passed between the time

the Foundation submitted its Form 1023 Application for Exemption to the IRS and the filing of

this declaratory judgment action.  It has now been over a year since that initial application filing

date and during that time the Foundation has been precluded from fully acting in any exempt

---

[1]  This Court undeniably has subject matter jurisdiction here under 28 U.S.C. § 1346(e), 28 U.S.C. § 2201 and 26 U.S.C. § 7428.  The alleged failure to exhaust administrative remedies goes more to ripeness than to jurisdiction.

capacity without some tax risk to its donors, its supported class of organizations and the Foundation itself. Despite this passage of time, there has been no final determination by the IRS on the Foundation's application for tax-exempt status. In fact, it was almost six months between the date the Foundation filed the Form 1023 and the date an IRS agent first contacted the Foundation to request more information.

The applicable statute provides that an organization requesting a judicial determination of tax exempt status shall "be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination...at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination." 26 U.S.C. §7428(b)(2). As the record in this case shows, the Foundation has taken "all reasonable steps" and the IRS has nonetheless failed to act within the prescribed statutory timeframe.

## STATEMENT OF FACTS IN ADMINISTRATIVE RECORD

### 1.  The Form 1023 Application

On April 10, 2007, the Foundation filed a substantially complete Form 1023, with Exhibits, pursuant to Revenue Procedure 2007-52 (the "Application").[2]  *See* Exhibit A to the

---

[2] According to 26 C.F.R. §601.201(n)(7)(i), a substantially completed application is one that:

(*a*) Is signed by an authorized individual;
(*b*) Includes an Employer Identification Number (EIN) or a completed Form SS–4, Application of Employer Identification Number;
(*c*) Includes a statement of receipts and expenditures and a balance sheet for the current year and the three preceding years or the years the organization was in existence, if less then four years (if the organization has not yet commenced operations, a proposed budget for two full accounting periods and a current statement of assets and liabilities will be acceptable);
(*d*) Includes a statement of proposed activities and a description of anticipated receipts and contemplated expenditures;
(*e*) Includes a copy of the organizing or enabling document that the organizing or enabling document that is signed by a principal officer or is accompanied by written declaration signed by an officer authorized to sign for the organization certifying that the document is a complete and accurate copy of the original; and
(*f*) If the organization is a corporation or unincorporated association and it has adopted bylaws, includes a copy that is signed or otherwise verified as current by an authorized officer.

Complaint. This Application and all supporting documentation sufficiently established the Foundation's entitlement to tax-exempt status as a public charity organized under §509(a)(3) of the Internal Revenue Code of 1986, as amended (the "Code"). As detailed below, all supplemental information requested by the IRS was furnished by the Foundation in a timely fashion and provides this Court with a complete record for review.

On April 12, 2007, the IRS acknowledged to the Foundation that it received the Application. *See* Exhibit B to Complaint. In that written acknowledgement, the IRS warned the Foundation that it was "experiencing delays in working applications that require further development" but did not specify a date by which a determination was expected to be reached.

## 2. Additional Correspondence

On September 27, 2007, nearly 6 months after the IRS' acknowledgement of receipt, Mrs. A. Morris, Identification Number 52-06394, Exempt Organizations Specialist in Cincinnati, Ohio ("Mrs. Morris"), requested additional information from the Foundation. *See* Exhibit C to Complaint. In this September 27, 2007 letter, Mrs. Morris raised numerous questions, twenty-two to be precise, concerning the possibility of non-cash contributions being made to the Foundation, organizational issues concerning control, and various operational issues. On October 31, 2007, the Foundation provided a lengthy response to Mrs. Morris' letter with as much specificity as possible considering that the Foundation's activity as an operating entity is limited until a favorable determination is received. *See* Exhibit D to Complaint.

It was not until several months later in early March of 2008 that the Foundation was contacted again by Mrs. Morris, this time by telephone. Over the course of the ensuing days, the Foundation's legal counsel and Mrs. Morris communicated on a variety of issues including: (1) the possible contribution of non-cash assets in the future; (2) the separation of officers on the

Board such that the President and Treasurer were unrelated individuals; (3) the resignation of the Foundation's counsel and former Managing Director, Emanuel J. Kallina, II, from the Foundation's Board and the appointment of two new Managing Directors; and (4) the ability of Richard Polm, the creator of the Foundation ("Settlor") to appoint independent Managing Directors ("Appointment Issue"). Several additional documents and materials were faxed to Ms. Morris during these exchanges. In an effort to address the IRS' concerns, the Foundation agreed to notify the IRS in the case of any non-cash contribution received, it elected a new Treasurer, it modified its organizational documents, it accepted the resignation of Mr. Kallina from the Board and the Executive Committee, and it approved the appointment of two new Managing Directors. *See* Exhibit E to Complaint.

The only matter on which the parties could not reach agreement was the Appointment Issue. On March 19, 2008, the Foundation sent a letter to Mrs. Morris stating that it did not agree with the IRS position on the Appointment Issue and was not willing to modify its appointment process because the IRS position is unsupported by either the Code or implementing Regulations. *See* Exhibit F to Complaint. In the same March 19, 2008 letter, the Foundation notified the IRS that, "barring some further communication or discussion with your office, the Foundation intends to file a Motion for Declaratory Judgment next week." This case was then filed on March 25, 2008.

**ARGUMENT**

In their Motion to Dismiss, Defendants raise, as their single question for this Court's consideration, the issue of whether or not the Foundation has exhausted its administrative remedies.

### 1. Perfected Administrative Record

Defendants assert that "[t]he doctrine of exhaustion is particularly relevant in the context of section 7428 cases because the courts generally only consider as evidence the administrative record." Memorandum in Support of Motion to Dismiss at 7. Defendants continue that "the administrative record is not complete because (1) the Foundation failed to identify the two new Managing Directors, making it impossible to determine whether they are disqualified persons; and (2) the Foundation failed to inform the Service as to whether Kallina resigned from the executive committee."[3] *Id.* at 7-8. However, neither contention is accurate.

On March 5, 2008, the Foundation's legal counsel participated in a conference call with Mrs. Morris during which the issue of whether or not Mr. Kallina had resigned from the Board of Directors was discussed along with the issue of which individuals were appointed as new Managing Directors. During that call, the Foundation's legal counsel assured Mrs. Morris that Mr. Kallina had, in fact, resigned from the Board of Directors of the Foundation, and later confirmed this in writing. *See* Exhibit E to Complaint. At that time Mrs. Morris had no further questions regarding Mr. Kallina's resignation and prior to the filing of its Complaint, the Foundation had not received any further requests on this issue. Mr. Kallina expressly resigned from both the Board of Directors and the Executive Committee. Even if Mr. Kallina had merely

---

[3] Defendants state that they have written to the Foundation seeking this information to perfect the administrative record. The Foundation received a request for additional information on April 2, 2008, a full week *after* the Foundation's Complaint was filed. Any requests submitted to the Foundation after the filing of the Foundation's Complaint should not be admitted to the administrative record. According to *Church of Spiritual Technology v. United States*, 64 AFTR 2d 89-5652, 89-5654 (Cl Ct 1989):

> "Administrative record" includes the request for determination, all documents submitted to the Internal Revenue Service and the applicant in respect of the request for determination or such protests, all pertinent returns filed with the Internal Revenue Service and the notice of determination by the Commissioner.

Any request for additional information received after the Foundation's Complaint was filed does not fall within any category listed above. Regardless, this inquiry is moot as discussed hereinbelow because the information was previously provided to Defendants and is in fact already incorporated as part of the administrative record.

resigned from the Board of Directors, he would not qualify as a member of the Executive Committee because the Foundation's organizational documents require that the Executive Committee be comprised *only* of members of the Board, namely, Managing Directors and Other Directors. Section 2.10 of the Amended and Restated By Laws[4] states that "the Board shall appoint *from among its members* an Executive Committee to manage and oversee the day-to-day operations of the [Foundation].... The Executive Committee, as with all other committees of the Board, *shall consist of Managing Directors* who collectively shall have six (6) votes, *and Other Directors* who collectively shall have five (5) votes, similar to the voting structure of the Board as a whole." No reading of the By Laws could raise a legitimate question about an individual who is not a member of the Board serving on the Executive Committee. Thus, Defendants' assertion that this information is required to perfect the administrative record is moot and without merit because Defendants were in possession of Mr. Kallina's resignation and the By Laws which together answer the very question the Defendants allege remains open.

Defendants' other assertion, that the Foundation failed to identify the two new Managing Directors, also is incorrect. During the aforementioned conference call of March 5, 2008, the Foundation's legal counsel provided Mrs. Morris with the names of the two new Managing Directors and indicated that a follow up facsimile would be provided with the new Managing Directors' information. In a facsimile dated March 5, 2008, the Foundation submitted to the IRS copies of the Amended and Restated By Laws and the Articles of Amendment and Restatement of the Articles of Incorporation, both signed by the new Managing Directors, Harold Padgett and Pamela Palumbo. Accompanying these documents were Mr. Padgett and Ms. Palumbo's biographical statements, the Appointment of Directors listing Mr. Padgett and Ms. Palumbo, and the Board Resolution approving the Appointment of Mr. Padgett and Ms. Palumbo as Managing

---

[4] A copy of the By Laws was included with the completed Form 1023 Application. *See* Exhibit A to Complaint.

Directors. In addition, on March 6, 2008, the Foundation submitted to the IRS, via facsimile, certified copies of the Amended and Restated organizational documents signed by Mr. Padgett and Ms. Palumbo. Copies of these facsimile transmissions are attached hereto as Exhibits 1 and 2, respectively. Therefore, Defendants' assertion that they did not receive this information is inaccurate.

In short, the Defendants have alleged that two factual questions remain open which makes the administrative record incomplete. Defendants contend that these two items of information precluded this Court from having a perfected administrative record and as a result, "this Court will be ill-positioned to rule on the merits of the dispute." Memorandum in Support of Motion to Dismiss at 8. The Foundation has demonstrated that these two questions already have been fully answered and the supporting information is contained in the administrative record. Accordingly, Defendants' argument is without merit.

**2. Exhaustion of Administrative Remedies**

Defendants argue that because there were ongoing communications in this matter, the Foundation has not exhausted its administrative remedies. There is no dispute that the governing statute provides as follows:

> An organization requesting [tax exempt status] shall be deemed to have exhausted its administrative remedies with respect to a failure by the Secretary to make a determination with respect to such issue at the expiration of 270 days after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination.

26 U.S.C. §7428(b)(2). *See also, Prince Corp. v. Commissioner*, 67 T.C. 318, 327 (1976) ("Our task then is to determine whether, on all of the facts and circumstances presented, petitioner may be deemed to have exhausted its administrative remedies due to respondent's purported failure to process its request expeditiously.") On this factual record, there can be but one answer to the

question presented: the Foundation took all reasonable steps to secure the determination of the IRS and the IRS failed to act in timely fashion. (Indeed, the IRS foresaw as much from the outset when it warned the Foundation in its acknowledgement of receipt that "we are experiencing delays in working applications.")

Defendants cite 26 C.F.R. §601.201(n)(7) to support their argument that the Foundation has not met all requisite steps to fulfill the intention of Code §7428. Specifically, Defendants cite the following "steps and administrative remedies [that] must be exhausted with the Service" before this Court has jurisdiction:

(a) The filing of a substantially completed application form 1023...
(b) The timely submission of all additional information requested to perfect an exemption application or request for determination of private foundation status; and
(c) Exhaustion of all administrative appeals available within the Service..., as well as appeal of a proposed adverse ruling to the Conference and Review Staff of the Exempt Organizations Technical Branch in National Office original jurisdiction exemption application cases.

26 C.F.R. §601.201(n)(7)(iv). The Foundation contends that it has clearly satisfied subsections (a) and (b) above and that the Service failed to act in a reasonable time, thereby precluding the Foundation from fulfilling subsection (c). Accordingly, the Foundation should be deemed to have exhausted all of the administrative remedies available to it. The Foundation believes that Congress has provided the IRS with statutory guidelines to follow in examining applications for exemption, as discussed hereinbelow, and that the IRS should be bound by these guidelines.

### a. Passage of Time Requirement

Code §7428 provides an absolute minimum amount of time –270 days– within which no petitioner will be deemed to have exhausted its administrative remedies. "Congress has granted the Internal Revenue Service a grace period within which to review complex...plans without judicial interference." *Prince Corp., supra*, 67 T.C. at 326. This minimum timing test has been satisfied by the Foundation, whose Application has been pending since April 10, 2007. From the

time of filing its original Application to date, approximately 15 months have passed without any final determination by the IRS.

The Defendants argue that the *Kinkade* decision by this Court (a copy of which is attached to the Complaint as Exhibit G) is distinguishable for two reasons. First, the delay was longer there, and second, there was no ongoing dialogue. These distinctions are without merit. The common denominator in both cases is the passage of the 270-day statutory period without a determination. Judge Collyer noted that "[t]he IRS ignores the unfortunate impact its glacial pace has had on the Foundation's development." *The Thomas Kinkade Foundation Charitable Trust v. United States of America and The Internal Revenue Service*, (Civil Action No. 1:02-CF-01973 RMC). In addition, and more important to the argument being raised by the IRS herein, Judge Collyer went on to state that:

> *The regulation cannot trump the statute.* It is clear that a petitioner who has timely provided all information requested and assiduously assisted the IRS in determining its status has the right, after 270 days without resolution, to seek a court judgment on the question. Since the Foundation has done just that, the Court has jurisdiction to hear and decide this case.

Exhibit G to Complaint at *3 (emphasis added). This Court should not allow the Defendants to re-write the statute and make 2 years (as opposed to 270 days) the new standard for abusive delay.

As to the second point of distinction, the Defendants' argument that in *Kinkade* there was no "ongoing and open dialogue," is incorrect. In that case, there was ongoing and open dialogue and that petitioner was dealing with its 4th agent.[5] Here, the Foundation is dealing with its 2nd agent but, just as in *Kinkade*, "the government has no prediction as to when it might act." Exhibit G to Complaint at *3, n. 2.

---

[5]    Counsel for the Foundation here also represented the Petitioner in the *Kinkade* matter.

**b. All Reasonable Steps Were Taken**

Once the passage of time test has been met, Code §7428 requires further inquiry. The petitioner must then show that "all reasonable steps to secure a determination" from the IRS have been undertaken. 26 U.S.C. §7428(b)(2). In addition, in *Prince v. Commissioner*, the Tax Court held that it was not necessary for a petitioner to "complete all steps in the published administrative process prior to petitioning...for declaratory relief." 67 T.C. 318, 328 (1976). The Court held that "after 270 days have passed a petitioner need only demonstrate that progress is severely hampered *due to causes beyond its control.*" *Id* (emphasis added).

In the present case, the Foundation promptly and fully responded to the IRS' requests for additional information, modified language in the Foundation's organizational documents, altered its officers and directors, and agreed to notify the IRS of any non-cash contributions. And the IRS has yet to make a determination on the Application. With regard to the one remaining unresolved issue pending between the Foundation and the IRS, the IRS attempted to force the Foundation to modify its method of appointing independent Managing Directors in a manner that is neither required nor supported by the Code or Regulations. In addition, and most troubling, the IRS applied a negative inference to many aspects of the organization and operation of the Foundation, especially with regard to issues of control, without support for such negative inference in the administrative record. This "guilty until proven innocent" stance is contrary to the holding in *Church of the Visible Intelligence That Governs the Universe v. United States* which rejected the IRS' negative inference on the actions and intentions of an officer of a tax exempt organization absent anything in the administrative record to support such an inference. *Church of the Visible Intelligence That Governs the Universe v. United States*, 53 AFTR 2d 84-

406 (1983). Defendants applied the same improper negative inference to the facts in the present case, despite the fact that the Foundation's organizational documents expressly prohibit the very situations that the IRS infers hypothetically could occur. Furthermore, the administrative record contains no factual support for such negative inference.

The Service has taken this position informally throughout numerous cases in an effort to administratively rewrite the Code without Congressional input. The Foundation and numerous other charities have suffered as a result of this arbitrary and capricious position. In addition to the present case, the IRS has caused lengthy delays on applications for exemption, especially of supporting organizations. And in an effort to discourage exempt organizations from applying as certain specific types of exempt organizations, the IRS has delivered a constant barrage of requests for additional information to applying organizations until they acquiesce and either reapply as a different type of exempt organization or concede the position of the IRS which is not supported by the Code. In its own Internal Revenue Manual, and internal memoranda and guidelines, the Foundation believes that the IRS directs its agents reviewing Form 1023 Applications to apply a negative inference when approached with a variety of common issues regarding exempt organizations, even when there exists no basis in the administrative record to support such an inference.

The Foundation, in good faith, has gone to great lengths to satisfy the requests of the IRS. At this time, the Foundation believes the IRS is acting outside the scope of its authority and there are no other reasonable steps available for the Foundation to take other than to pursue this declaratory judgment action. In their moving papers, Defendants have not made and cannot make any assertion (other than those regarding the administrative record that the Foundation has

rebutted herein) that the Foundation has *not* taken all reasonable steps in a timely manner, or otherwise delayed the IRS action on its Application in any way.

### 3. Burden of Proof

In most instances, the burden of proof in Code §7428 cases is on the organization seeking exempt status. However, in those instances where the Service has failed to issue a determination, as is the current case before this Court, the burden of proof shall be on the government in regard to all issues relating to the merits of the case. *Indiana Crop Improvement Association v. Commissioner,* 76 T.C. 394 (1981); *Dumaine Farms v. Commissioner,* 73 T.C. 650, 660 (1980) ("Since respondent bears the burden of proof with respect to such issues, it is he who must assume the risk that the facts in the record are insufficient to prove his point."); *World Family Corporation v. Commissioner,* 81 T.C. 958 (1983); Tax Court Rules 142, as amended and 213(a)(2).

## CONCLUSION

Defendants are advancing a theory that the IRS has the unilateral right to continue asking as many factual questions, and requiring legal briefings of applicants for exempt status, no matter how long it takes; and that the administrative process cannot end until the IRS is done with its questions and investigation. However, Congress deemed a 270-day period to be sufficient for the IRS to review even complex applications. To allow the IRS to argue that it did not have all of the facts it wanted, that it disagreed with the Foundation on the *interpretation* of facts presented, that it disagreed with the Foundation on the legal right of the Settlor to appoint independent Managing Directors, that it had more questions it might want to ask, that it needed to bring in another agent to handle the case and ask additional questions, etc., would allow the Defendants to subvert the clear language and legislative intent of 26 U.S.C. §7428(b)(2).

In effect, the Defendants are arguing that they should be allowed to take as long as they want to make a determination on an application for exemption. This is precisely the type of posturing by the IRS that 26 U.S.C. §7428(b)(2) was enacted to overcome. The issue presently before this Court is whether, based upon all the facts and circumstances, the Foundation is deemed to have exhausted its administrative remedies due to Defendants' failure to process the Foundation's Application. *Prince Corp., supra,* 67 T.C. at 327. Applying *that* standard to *these* facts, the Foundation has exhausted its administrative remedies and the Motion to Dismiss should be denied.

Respectfully submitted,


/s/ Russell J. Pope

Russell J. Pope (No. 426865)
POPE & HUGHES, P.A.
29 W. Susquehanna Avenue, Suite 110
Towson, Maryland 21204
410-494-7777

*Attorneys for Plaintiff, Polm Family Foundation, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2008, a copy of the foregoing Memorandum in Opposition to Defendants' Motion to Dismiss was served via ECF on:

Jan M. Geht, Esq.
Trial Attorney, Tax Division
U.S. Department of Justice
P. O. Box 227
Washington, D.C. 20044

*Attorneys for the United States of America*
*and the Internal Revenue Service*

/s/ Russell J. Pope

Russell J. Pope

13

EXHIBIT 1

to

POLM FAMILY FOUNDATION'S
MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

EMANUEL J. KALLINA, II *
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ *

* Also licensed to practice in D.C.
* Only licensed to practice in Louisiana
* Also Certified Public Accountant

# KALLINA & ASSOCIATES, LLC
## LAW OFFICE
1122 KENILWORTH DRIVE, SUITE 507
TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Antoinette C. Lew
Erin T. Mayer
Molly K. McCarter
Lorraine M. Smick

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

March 5, 2008

## FACSIMILE TRANSMISSION

**TO:**       Ms. Morris at the IRS (410.962.8193)

**FROM:**     KBP/etm

**SUBJECT:**  Polm Family Foundation

**PAGES:**    This cover sheet *plus* 21 pages
              Original documents will *not* follow

_____

Ms. Morris:
        Pursuant to our call, here are the documents for the Polm Family Foundation.

F:\Work\Polm, Rick\correspondence\fax-080305-polm family foundation docs to IRS.doc

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. We will reimburse you for the postage. Thank you.

**This advice (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties imposed under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

# POLM FAMILY FOUNDATION, INC.
# AMENDMENT AND RESTATEMENT
# OF
# BY-LAWS

## TABLE OF CONTENTS

**Section 1  Purpose and Plan**.................................................................................1
1.1       Statement of Purpose...........................................................................1
1.2       Purpose of these By-Laws ...................................................................1

**Section 2  Board of Directors**..............................................................................1
2.1       Function of Directors............................................................................1
2.2       Number of Directors.............................................................................1
2.3       Classes of Directors.............................................................................1
2.3.1     Managing Directors..............................................................................1
2.3.2     Other Director......................................................................................2
2.3.3     Different Classes..................................................................................2
2.4       Eligibility and Tenure of Directors.......................................................2
2.5       Removal of Director.............................................................................2
2.6       Resignation of Director........................................................................2
2.7       Vacancy on Board................................................................................2
2.8       Chairman of the Board.........................................................................2
2.9       Compensation......................................................................................3
2.10      Committees..........................................................................................3

**Section 3  Meetings of the Directors**...................................................................3
3.1       Annual Meetings..................................................................................3
3.2       Special Meetings..................................................................................3
3.3       Place of Holding Meetings...................................................................3
3.4       Notice of Meetings...............................................................................3
3.5       Quorum................................................................................................4
3.6       Conduct of Meetings............................................................................4
3.7       Order of Affairs....................................................................................4
3.8       Voting...................................................................................................4
3.9       Informal Action by Trustees.................................................................4
3.10      Telephonic Meetings............................................................................4

**Section 4  Officers**.............................................................................................5
4.1       Election, Tenure and Compensation.....................................................5
4.2       Powers and Duties of the President......................................................5
4.3       Powers and Duties of a Vice President.................................................5
4.4       Powers and Duties of a Secretary........................................................6

i

© 2008 Kallina & Associates, LLC

| | | |
|---|---|---|
| 4.5 | Powers and Duties of a Treasurer | 6 |
| 4.6 | Assistant Secretary | 6 |
| 4.7 | Assistant Treasurer | 6 |

**Section 5  Liability and Indemnification of Directors, Officers and Employees ..... 7**
| | | |
|---|---|---|
| 5.1 | Liability | 7 |
| 5.2 | Indemnification | 7 |
| 5.3 | Bonds | 8 |

**Section 6  Bank Accounts and Loans ..... 8**
| | | |
|---|---|---|
| 6.1 | Bank Accounts | 8 |
| 6.2 | Loans | 8 |

**Section 7  Miscellaneous Provisions ..... 9**
| | | |
|---|---|---|
| 7.1 | Books and Records | 9 |
| 7.2 | Fiscal Year | 9 |
| 7.3 | Notices | 9 |
| 7.4 | Amendment of By Laws | 9 |
| 7.5 | Conflicts | 9 |
| 7.6 | Governing Law | 10 |
| 7.7 | Headings | 10 |
| 7.8 | Counterparts | 10 |

© 2008 Kallina & Associates, LLC

# POLM FAMILY FOUNDATION, INC.

# AMENDMENT AND RESTATEMENT OF BY-LAWS

THIS AMENDMENT AND RESTATEMENT OF BY-LAWS ("By-Laws") is made effective this 3rd day of March, 2008, by RICHARD E. POLM, THERESA E. POLM, LEW SCHRUMM, HAROLD L. PADGETT, and PAMELA PALUMBO, the Directors of the POLM FAMILY FOUNDATION, INC., a Maryland non-stock corporation established by the filing of Articles of Incorporation with the Maryland State Department of Assessments and Taxation on July 27, 2006("Corporation").

## SECTION 1  Purpose and Plan

1.1     Statement of Purpose.  POLM FAMILY FOUNDATION, INC. is organized and shall be operated exclusively for those charitable or religious purposes which constitute public charitable purposes under the laws of the State of Maryland by conducting and supporting activities for the benefit of, to perform the functions of, and/or to carry out the purposes of (collectively the "Qualified Purposes") the class of organizations ("Qualified Organizations") described in Section 501(c)(3) and qualified under Sections 509(a)(1) and 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), which support, promote and/or perform public health and/or Christian objectives, including but not limited to Christian evangelism, edification and stewardship (all of such organizations collectively being the "Supported Class").  Each Qualified Purpose must constitute a charitable purpose under Maryland Law.

1.2     Purpose of these By-Laws.  These By-Laws are adopted to provide rules for the Corporation's governance and functioning.

## SECTION 2  Board of Directors

2.1     Function of Directors.  The affairs of the Corporation shall be managed under the direction of its Board of Directors (sometimes "Board" or "Directors").

2.2     Number of Directors.  The number of members of the Board shall be not less than two (2) nor more than twenty-five (25), as determined by the Board.

2.3     Classes of Directors.  The Board shall be divided into two classes: (i) the "Managing Directors," who as a group shall have six (6) votes; and (ii) the "Other Directors," who as a group shall have five (5) votes.

2.3.1   <u>Managing Director.</u>  A Managing Director shall be a person who is an officer, director and/or trustee of a Qualified Organization within the Corporation's Supported Class and who is not a "disqualified person" as defined in Code Section 4946(a).  The number of votes of each Managing Director shall be equal to the result obtained by dividing six (6) by the total number of Managing Directors appointed as Directors.  For example, if there are two (2) Managing Directors, each Managing Director shall have three (3) votes.

2.3.2   <u>Other Director.</u>  Each Other Director shall be a person who is not an officer, director, or trustee of a Qualified Organization within the Corporation's Supported Class and/or is a "disqualified person" as defined in Code Section 4946(a).   The number of votes of each of the Other Directors shall be equal to the result obtained by dividing five (5) by the total number of Other Directors appointed as Directors.  For example, if there are two (2) Other Directors, each of the Other Directors shall have two and one-half (2 1/2) votes.

2.3.3   <u>Different Classes.</u>  By amendment to these By-Laws, the Board may divide the Directors into different classes and may delegate rights, duties and authority to one or more classes, to the exclusion, if the Board desires, of another class or other classes; provided, however, that in each class of Directors, the number of votes held by the Managing Directors shall always be six (6), and the number of votes of the Other Directors shall always be five (5).

2.4   <u>Eligibility and Tenure of Directors.</u>  Except as may be specifically provided below to the contrary, the Directors shall be appointed each year at the annual meeting of the Board and shall hold office until the annual meeting of the Board next succeeding their appointment and thereafter until their respective successors have been duly appointed.  In accordance with Regulation Section 1.509(a)-4(h)(1) of the Treasury Regulations, Directors shall be appointed so as to ensure that control or management of the Corporation is vested in the same persons that control or manage Qualified Organization(s) in the Supported Class.  Directors shall be appointed by the following individual(s) or entity(ies) ("Appointor") in the following sequence (the next individual(s)/entity(ies) in the sequence becoming the Appointor in the event of the death, disability, or inability to appoint of the immediately preceding individual(s)/entity(ies): First, Richard E. Polm; Second, Theresa E. Polm; Third, the living adult children of Richard E. Polm and Theresa E. Polm; Fourth, the existing Directors of the Corporation; and Fifth, the majority vote of those Qualified Organizations within the Supported Class who have received grants from the Corporation within the preceding twenty-four (24) months.

2.5   <u>Removal of Director.</u>  Any Director may be removed from office with or without cause by an affirmative vote of at least two-thirds (2/3) of the Board of Directors.

2.6   <u>Resignation of Director.</u>  Any Director may resign upon reasonable notice to all other Directors.

2.7   <u>Vacancy on Board.</u>  In the case of any vacancy on the Board, the Directors may, by an affirmative vote of at least two-thirds (2/3) of the Board of Directors, appoint a Director to fill such vacancy.

2.8    Chairman of the Board. The Directors shall elect a chairman ("Chairman") to preside at all meetings of the Board at which the chairman is present, and the chairman shall be an ex-officio member of all standing committees. The Chairman shall exercise such powers as may be assigned by the Board and shall be subject to the control of the Board.

2.9    Compensation. Each Director shall be entitled to receive reimbursement from the Corporation for expenses incurred in attending any meeting of the Board. In general, the Directors shall not receive any stated salary for their services; provided, however, that the Board may fix a sum to be allowed for attendance at each of its meetings and such sum may be payable, in the Board's discretion, even if a meeting is adjourned because a quorum is not present.

2.10    Committees. The Board shall appoint from among its members an Executive Committee to manage and oversee the day-to-day operations of the Corporation. The Executive Committee shall report and be responsible to the full Board, which shall review and approve (or disapprove) the actions of the Executive Committee at least annually. The Executive Committee, as with all other committees of the Board, shall consist of Managing Directors who collectively shall have six (6) votes, and Other Directors who collectively shall have five (5) votes, similar to the voting structure of the Board as a whole. In addition to the Executive Committee, the Board may appoint by resolution such committee(s) as it may deem appropriate, and may grant such committee(s) the right to exercise the powers of the Board. All such committee(s) shall have all the powers delegated by the Board except for the power to direct distribution of all or substantially all of the Corporation's assets. Each committee may fix rules of procedure for its affairs. Every such committee so established must contain at least two directors including one Managing Director, and the allocation of votes among Managing Directors and Other Directors shall be the same as the voting structure for the overall Board, as outlined above in Section 2.3.

## SECTION 3    Meetings of the Directors

3.1    Annual Meetings. The annual meeting of the Board for the transaction of its affairs shall be held in March, or on such other day as shall be set by the Board.

3.2    Special Meetings. Special meetings of the Board may be called at any time for any purpose by the Chairman of the Board, the President or a majority of the Board, and must be called by the Secretary of the Board upon the request in writing of at least twenty-five percent (25%) of the Directors. Such call and/or request shall state the purpose(s) of the meeting. Matters coming before the Board at a special meeting shall be confined to the purpose(s) stated in the notice of the meeting.

3.3    Place of Holding Meetings. Meetings of the Board shall be held at the principal office of the Corporation, unless otherwise designated by the Board.

3.4    Notice of Meetings. Written notice of each meeting of the Board shall be mailed, postpaid, by the Secretary to each Director at his or her last known post office address, as it appears on the books of the Corporation, at least ten (10) days before the meeting. Each notice shall state the place, day and hour at which the meeting is to be held and, in the case of any

special meeting, shall state briefly the purpose(s) thereof. No failure to give notice or irregularity in such notice shall affect the validity of the proceedings at such meeting. Notwithstanding the foregoing provisions, each person entitled to notice may waive such notice by signing a waiver of notice or consent to holding the meeting or an approval of the minutes thereof, whether before or after the meeting, or by attending the meeting without protest prior to the meeting or at its commencement. These waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meetings.

3.5     Quorum. The presence of Directors comprising a majority vote of all Directors shall constitute a quorum at meetings of the Board. In the absence of a quorum, the meeting may be adjourned from time to time by a majority vote of the Directors present or represented, without any notice other than by announcement at the meeting, until a quorum is present. At any resumption of an adjourned meeting at which a quorum is present, any matters may be transacted which might have been transacted if the meeting had been held as originally called.

3.6     Conduct of Meetings. Meetings of the Board shall be presided over and chaired by the Chairman of the Board or, in his or her absence, by the President or, in his or her absence, by a chairman to be elected at the meeting. The Secretary of the Corporation or, in his or her absence, any Assistant Secretary shall act as secretary of such meetings or, if none of said officers is present, the chairman shall appoint a person to act as secretary of the meeting.

3.7     Order of Affairs. All meetings of the Board shall be conducted in the following order: (a) call to order; (b) proof of the due calling of the meeting; (c) presentation of the oral or written certification of the person who mailed the notice of the meeting, which certification shall be deemed conclusive proof of service; (d) reading and approval or disapproval of the minutes of the most recent meeting of the Board; (e) presentation of reports of officers and committees; (f) notice of appointment of Directors; (g) review of unfinished matters; (h) presentation of new matters; and (i) adjournment.

3.8     Voting. Except as otherwise specifically provided to the contrary herein and subject to Section 2.3 hereinabove, all elections, resolutions and other matters requiring a vote of the Directors shall be had and all questions shall be decided by the affirmative vote of a majority of all votes entitled to be cast thereon at a duly constituted meeting of the Directors; and where these By-Laws require a two-thirds (2/3) vote, it shall mean the affirmative vote of at least two-thirds (2/3) of all votes entitled to be cast thereon at a duly constituted meeting of the Directors.

3.9     Informal Action by Directors. Any action required or permitted to be taken at a meeting of the Board, or of any committee thereof, may be taken without a meeting, if a unanimous written consent setting forth the action so taken is filed with the minutes of the Board or committee and is signed by each Director or committee member entitled to vote on the subject matter of the action so taken.

3.10     Telephonic Meetings. Any meeting of the Board, or of any committee thereof, may be conducted without the physical presence of a quorum of the Directors if a quorum of the

Directors is present in person and/or by telephone, so long as all individuals who are present in person or by telephone may telephonically hear one another.

## SECTION 4   Officers

4.1    Election, Tenure and Compensation. The Directors shall have the power to adopt rules and ordinances for conducting their affairs as necessary and convenient to accomplish the purposes of the Corporation stated in Section 1.1 hereof. Pursuant to this power, the Directors may elect officers, subject to the control and direction of the Executive Committee, to run the day-to-day affairs of the Corporation. Each year, the Directors may elect a President, one or more Vice-Presidents, and such other officers as the Board may consider necessary for the proper conduct of the affairs of the Corporation. Notwithstanding the foregoing, the Directors shall elect a Secretary and a chief financial officer ("Treasurer"). A person may hold more than one office of the Corporation, but may not serve concurrently as both President or Chairman of the Board and Secretary or as President or Chairman of the Board and Treasurer. An individual who holds more than one office may not act in more than one capacity to execute, acknowledge or verify any instrument required to be executed, acknowledged or verified by more than one officer.

The election of an individual as an officer and the terms and conditions of employment and continued employment of each officer shall be determined by the Board, based upon the recommendation of the Executive Committee. Assuming officers are elected, the officers shall be elected by the Board at their annual meeting or, whenever a vacancy requires, at a special meeting called for that purpose. In the event that any office shall not be filled by the Board or, once filled, subsequently becomes vacant, then such office and all references thereto in these By-Laws shall be deemed inoperative unless and until such office is filled in accordance with the provisions of these By-Laws. Any officer may be removed from his position with or without cause by a two-thirds (2/3) affirmative vote of the Board.

4.2    Powers and Duties of the President. The President (or if there is no President, the Chairman of the Board) shall have general charge and control of all the Corporation's affairs and properties. The President may sign and execute, in the name of the Corporation, all authorized deeds, mortgages, bonds, contracts or other instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, these By-Laws or the Board to some other officer or agent of the Corporation. The President shall preside at all meetings of the Board in the absence of the Chairman of the Board or in the event of a vacancy in such office, and shall be ex-officio a member of all standing committees of the Board. In general, the President shall have the powers and duties of supervision and management generally incident to the office of president and such other duties as may be assigned by the Executive Committee, and shall be subject to the control of the Executive Committee.

4.3    Powers and Duties of a Vice-President. The Board may elect and appoint a Vice-President or more than one Vice-President. Any Vice-President may sign and execute, in the name of the Corporation, all authorized deeds, mortgages, bonds, contracts or other

instruments, except in cases in which the signing and execution thereof shall have been expressly delegated by law, these By-Laws or the Board to some other officer or agent of the Corporation. In case of the absence or disability of the President, or at the President's request, the duties of the President may be performed by any Vice-President, and the taking of any action by any Vice-President in lieu of the President shall be conclusive evidence of the absence or disability of the President. Each Vice-President shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.4    <u>Powers and Duties of a Secretary.</u> The Secretary shall give, or cause to be given, notice of all meetings of the Board and all other notices required by law or these By-Laws; provided that if the Secretary fails to do so for any reason, such notice may be given by any person directed to do so by the President or by those Directors upon whose written request the meeting is called as provided in these By-Laws. The Secretary shall record all proceedings of the Board meetings, of any committees of the Board in the books provided for that purpose, and shall be custodian of the books, records, and seal of the Corporation. The Secretary shall witness all documents on behalf of the Corporation, the execution of which are duly authorized. In general, the Secretary shall have the powers and duties generally incident to the office of secretary and such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.5    <u>Powers and Duties of a Treasurer.</u> The Treasurer shall have custody and charge of, and be responsible for, all funds, securities, receipts, and disbursements of the Corporation and shall keep full and accurate records of receipts and disbursements in books belonging to the Corporation. The Treasurer shall deposit, or cause to be deposited, all monies and other valuables in the name and to the credit of the Corporation in such depositories as shall be designated by the Board or the President. The Treasurer shall disburse the funds of the Corporation as may be ordered by the President or the Board, taking proper vouchers for such disbursements. When requested, the Treasurer shall render to the President and the Board an account of all his transactions as Treasurer and of the financial condition of the Corporation. In general, the Treasurer shall have the powers and duties generally incident to the office of treasurer and such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.6    <u>Assistant Secretary.</u> The Board may elect and appoint an Assistant Secretary or more than one Assistant Secretary. In the case of the absence or disability of the Secretary, the duties of the office shall be performed by any Assistant Secretary, and the taking of any action by an Assistant Secretary in lieu of the Secretary shall be conclusive evidence of the absence or disability of the Secretary. Each Assistant Secretary shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

4.7    <u>Assistant Treasurer.</u> The Board may elect and appoint an Assistant Treasurer or more than one Assistant Treasurer. In case of the absence or disability of the Treasurer, the

duties of the office shall be performed by any Assistant Treasurer, and the taking of any action by an Assistant Treasurer in lieu of the Treasurer shall be conclusive evidence of the absence or disability of the Treasurer. Each Assistant Treasurer shall have such other powers and perform such other duties as may be assigned by the Executive Committee and/or the President, and shall be subject to the control of the Executive Committee and the President.

## SECTION 5    Liability And Indemnification Of Directors, Officers and Employees

5.1    Liability. No Director shall be responsible for the acts of omission or commission of any other Director or of any predecessor Director. The Directors shall not at any time be held liable for mistake of law or of fact, or of both law and fact, or errors of judgment, or any loss coming to the Corporation's assets or the Corporation, or to any other person, except through actual fraud or willful misconduct on the part of the Director to be charged. If this provision shall be held invalid as to any class of persons or instances, such fact shall not impair its application to all other classes of persons and instances.

5.2    Indemnification. The Corporation shall indemnify a Director or officer and may, but shall not be required to, indemnify an employee or agent of the Corporation in connection with a suit or proceeding as permitted in this SECTION 5.

5.2.1    To the extent that a Director or officer incurs or accrues expenses in the defense of any suit or proceeding, the Corporation shall pay reasonable expenses including, but not limited to, attorneys fees, court costs, deposition costs, other fees, judgments, fines and amounts paid in settlement, in advance of the final disposition of the suit or proceeding upon receipt by the Corporation of:

(i) A written affirmation by the Director or officer of his or her good faith belief that he or she is not liable under Section 5.1 above; and

(ii) A written undertaking by or on behalf of the Director or officer to repay the amount if it shall ultimately be determined that he or she is in fact liable under Section 5.1 above.

5.2.2    To the extent that an employee or agent of the Corporation successfully defended himself or herself on the merits or otherwise in any proceeding, including a proceeding brought by or on behalf of the Corporation, such indemnification against expenses actually and reasonably incurred in relation to the proceeding may include, fees, judgments, fines and amounts paid in settlement, and shall only be granted in each specific case upon a determination and authorization by the majority of a quorum of the Board.

5.2.3    Nothing contained in this SECTION 5 shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Director, officer, employee, and/or agent of the Corporation, or the ability of the Corporation to otherwise indemnify or advance expenses to any such individual. It is the intent of this SECTION 5 to

provide indemnification to Directors and officers to the fullest extent now or hereafter permitted by law. Therefore, indemnification shall be provided in accordance with any theory upon which a claim is made, including but not limited to negligence, breach of duty, mismanagement, corporate waste, breach of contract, breach of warranty, strict liability, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal laws.

       5.2.4   Notwithstanding any other provision of this SECTION 5, there shall be no indemnification with respect to matters as to which indemnification would result in inurement of net earnings of the Corporation to the benefit of any individual within the meaning Section 501(c)(3) of the Code.

    5.3   <u>Bonds.</u> The Executive Committee may require any officer, agent or employee of the Corporation to give a bond to the Corporation, conditioned upon the faithful discharge of his or her duties, with one or more sureties and in such amount and with such companies as may be satisfactory to the Executive Committee. No bond or surety shall be required of a Director.

## SECTION 6  Bank Accounts And Loans

    6.1   <u>Bank Accounts.</u> The Board shall designate such Directors or officers of the Corporation who shall have the authority to deposit any funds of the Corporation in such bank(s) or savings institution(s) as shall be designated by the Board. The Board shall also designate such Directors or officers who may withdraw any or all of the funds of the Corporation in any bank or savings institution, upon checks, drafts or other instruments or orders for the payment of money which are drawn against the account or in the name or on behalf of the Corporation and made or signed by such Directors, officers or agents. Each bank or savings institution holding funds of the Corporation is authorized to accept, honor, cash and pay, without limit as to amount, all checks, drafts or other instruments or orders for the payment of money, when drawn, made or signed by Directors or officers so designated by the Board until written notice of the revocation by the Board of the authority of such Directors or officers has been received by such bank or savings institution. The secretary of the Board shall certify to the bank(s) or savings institution(s) holding funds of the Corporation the signature(s) of the Directors or officers of the Corporation so designated by the Board to draw against such funds. If the Board fails to designate the persons having authority to sign checks, drafts or other instruments or orders for the payment of money, as provided in this Section 6.1, all such checks, drafts and other instruments or orders for the payment of money shall be signed by the President and countersigned by the Secretary, Treasurer, an Assistant Secretary or an Assistant Treasurer of the Corporation.

    6.2   <u>Loans.</u> The Board shall designate such Directors or officers who shall have authority to make loans and advances or to establish other forms of credit for the Corporation from such banks, trust companies, institutions, corporations, firms or persons designated by the Board; and as security for the repayment of such loans, advances or other forms of credit, to assign, transfer, endorse and deliver, either originally or in addition to or substitution for any or all stocks, bonds, rights and interests of any kind in or to stocks or bonds, certificates of such

rights or interests, deposits, accounts, documents covering merchandise, bills and accounts receivable and other commercial paper and evidences of debt at any time held by the Corporation; and as evidence of such loans, advances or other forms of credit, to make, execute and deliver one or more notes, acceptances or written obligations of the Corporation on such terms and with such provisions as to the security, sale or disposition thereof as such Directors or officers shall deem proper; and also to sell to, or discount or rediscount with, such banks, trust companies, institutions, corporations, firms or persons any and all commercial paper, bills receivable, acceptances and other instruments and evidences of debt at any time held by the Corporation, and to that end to endorse, transfer and deliver the same. The secretary of the Board shall certify to each such bank, trust company, institution, corporation, firm or person the signatures of such designated Directors or officers; and each such bank, trust company, institution, corporation, firm or person is authorized to rely upon such certification until written notice of the revocation by the Board of the authority of such Directors or officers has been received by such bank, trust company, institution, corporation, firm or person.

**SECTION 7  Miscellaneous Provisions**

7.1    <u>Books and Records.</u> The Corporation shall keep accurate and complete books and records of its accounts and transactions and minutes of the proceedings of its Board and of its committees. The books and records of the Corporation may be in written form or in any other form which can be converted within a reasonable time into written form for visual inspection. Minutes shall be recorded in written form but may be maintained in the form of a reproduction.

7.2    <u>Fiscal Year.</u> The fiscal year of the Corporation shall end on the last day of December.

7.3    <u>Notices.</u> Whenever under the provisions of these By-Laws, notice is required to be given to any Director or officer, it shall be by a communication in writing, signed by the party sending such communication, delivered by certified mail, postpaid, return receipt requested, personally hand delivered, a dated receipt being obtained, or via facsimile transmission, written confirmation obtained. The effective date of such notice shall be deemed to be the third day following the date of mailing of such certified mail, the actual date of hand delivery or facsimile transmission or the date such facsimile is transmitted. Any Director or officer may waive any notice required to be given under these By-Laws.

7.4    <u>Amendment of By-Laws.</u> Anything in these By-Laws to the contrary notwithstanding, these By-Laws or any provision hereof may be altered, amended or supplemented only upon proper notice and upon a two-thirds (2/3) affirmative vote of the Directors. Notwithstanding the Directors' ability to amend these By-Laws, no amendment shall authorize the Directors or any officer to conduct the affairs of the Corporation in any manner or for any purpose contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code. Any amendment which purports to allow the Directors or officers to conduct the affairs of the Corporation in any manner or for any purposes contrary to the provisions of Sections 501(c)(3) and 509(a)(3) of the Code shall be invalid and void ab initio.

© 2008 Kallina & Associates, LLC    9

7.5     Conflicts.  In the event that there should be a conflict between the Articles of Incorporation and these By-Laws, the Articles of Incorporation shall control.

7.6     Governing Law.  These By-Laws shall be governed by the same law of the state or commonwealth as shall govern the Articles of Incorporation.

7.7     Headings.  Section headings are for reading convenience only and should be disregarded in construing these By-Laws.

7.8     Counterparts.  These By-Laws may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument.

The above Amended and Restated By-Laws were adopted effective as of March 3, 2008.

RICHARD E. POLM, Director

THERESA E. POLM, Director

LEW SCHRUMM, Director

HAROLD L. PADGETT, Director

PAMELA PALUMBO, Director

F:\Work\Polm, Rick\Documents\Polm Family Foundation\By-Laws-amended & restated.doc

© 2008 Kallina & Associates, LLC                              10

**POLM FAMILY FOUNDATION, INC.**

**RESOLUTION OF THE BOARD OF DIRECTORS**

March 3, 2008

The undersigned, constituting all of the members of the Board of Directors ("Board") of the POLM FAMILY FOUNDATION, INC. ("Foundation"), do hereby take the action below set forth, and to evidence their waiver of any right to dissent from such action, do hereby resolve and consent as follows:

Pursuant to Section 2.4 of the Foundation By-Laws, RICHARD E. POLM appointed the following individuals as Directors:

Managing
~~Independent~~ Directors:
LEW SCHRUMM
HAROLD L. PADGETT
PAMELA PALUMBO

Other
~~Family~~ Directors:
RICHARD E. POLM
THERESA E. POLM

**RESOLVED:**    That the Foundation's Articles of Incorporation and By-Laws shall be amended and restated in their entirety, in the form attached hereto, and that the Articles of Amendment and Restatement be filed with the Maryland State Department of Assessments and Taxation; and

**RESOLVED:**    The Board adopted the Conflicts of Interest Policy attached hereto.

WITNESS the execution hereof as of the day and year first above written.

WITNESS:

_____    _____(SEAL)
                                    RICHARD E. POLM, Director

_____    _____(SEAL)
                                    THERESA E. POLM, Director

_____    _____(SEAL)
                                    LEW SCHRUMM, Director

_____    _____(SEAL)
                                    HAROLD L. PADGETT, Director

_____    _____(SEAL)
                                    PAMELA PALUMBO, Director

**POLM FAMILY FOUNDATION, INC.**

**APPOINTMENT OF DIRECTORS**

I, RICHARD E. POLM, hereby appoint the following individuals as members of the Board of Directors for 2008, pursuant to Section 2.4 of Article II of the By-Laws:

Managing Directors:                    Other Directors:

Lew Schrumm                            Richard E. Polm
Harold L. Padgett                      Theresa E. Polm
Pamela Palumbo

Such appointment shall be effective as of _March 4, 08_, 2008.

_____
RICHARD E. POLM

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Appointment of Directors-2008.doc

*Bio*

Harold L. Padgett was born and raised in the Washington DC area. After his schooling he worked for TBN Associates in Beltsville, MD in the field and later in their office as a Project Manager.

In 1987, Harold Padgett and James Fain established Fain-Padgett Insulation Inc. Mr. Fain worked until his retirement a few years ago as Partner. Presently, Mr. Padgett is Owner, President and is assisted by his Son, Scott. Fain-Padgett is a mechanical insulation business doing work in the DC/MD/VA area.

In 2003, Harold and his wife Jean became founding members of Mid Atlantic Community Church in Crofton, MD. Harold now serves the church as a Trustee, Member of the Building Committee, Member of the Operations Committee, and Life Group Leader.

Harold's personal life consists of staying active at his gym where he plays racquetball several times a week, model trains, boating, gardening and enjoying life on the Bay! Harold and his wife Jean are the parents of two grown children living in the area.

Harold L. Padgett
7677 Colonial Beach Road
Pasadena, MD 21122
410-255-4206
240-876-5802

Pamela Palumbo
91 Scotts Cove
Edgewater, Maryland 21037
410.703.5791
pamela@pregnancyclinic.org



Pamela currently serves as the Executive Director of the Bowie Crofton and Severna Park Pregnancy Clinics and is founder and President of the Maryland Coalition of Medical Pregnancy Centers which represents twelve medical pregnancy centers in Maryland.

Pamela serves as a speaker and facilitator at national pregnancy conferences, sits on the President's Council for Heartbeat International and is a nationally certified Abstinence Educator. She has been nominated as an Outstanding Citizen of Bowie, given testimony in the Maryland House and Senate and spoken at the White House. In 2005 and 2006 interviews she gave with the New York Times and Washington Post made the front page, was featured on AOL and picked up by over 250 newspapers across the nation. Media interviews include CNN Live, Laura Ingraham, Fox News , CBN's 700 Club, and City TV in Canada.

Since helping establish the ministry in 1982 they have served over 20,000 women facing unexpected pregnancies and reproductive health issues with totally free services. During this time the budget has grown from 21K to 4000K, the staff from one to eleven and the Laurel Pregnancy Center was established. In 1999, they were one of the first pregnancy centers in the nation to add licensed medical staff and offer women a Window to their Womb through free ultrasounds. In 2005 a satellite office in Severna Park was opened in the 4,000 sq.ft former office of an abortion clinic. Both offices are equipped with 3D/4D Ultrasound and offer STD/HIV testing.

Pamela and her husband Joe have been married for 35 years have 7 children, 7 grandchildren and are founding members of Grace Evangelical Presbyterian in Davidsonville.

Author Nancy Rue's recent book *Tristan's Gap* has a forward by Pamela who gave Nancy an inside glimpse of the abortion industry. Pamela encouraged Nancy to visit an abortion clinic, which she did and used in the book. This same clinic location was reclaimed for the Lord when Pamela acquired the lease and transformed it into Severna Park Pregnancy Clinic.

# ARTICLES OF AMENDMENT AND RESTATEMENT
## OF
## ARTICLES OF INCORPORATION
## OF
## POLM FAMILY FOUNDATION, INC.

POLM FAMILY FOUNDATION, INC., a Maryland non-stock corporation, having its principal office in Baltimore County, Maryland ("Corporation"), hereby certifies to the State Department of Assessments and Taxation of Maryland that:

**FIRST:** The Articles of Incorporation of the Corporation are hereby amended and restated in their entirety to read as follows:

"FIRST: The undersigned, Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204, being over eighteen (18) years of age and acting as incorporator, hereby forms a non-stock corporation under the Maryland General Corporation Law, as amended from time to time ("Maryland General Corporation Law").

SECOND: The name of the Corporation is: POLM FAMILY FOUNDATION, INC.

THIRD: (A) The Corporation is organized and shall be operated exclusively for charitable or religious purposes which constitute public charitable purposes under the laws of the State of Maryland by conducting and supporting activities for the benefit of, to perform the functions of, and/or to carry out the purposes of (collectively, the "Qualified Purposes") the class of organizations ("Qualified Organizations") described in Section 501(c)(3) and qualified under Sections 509(a)(1) or 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), which support, promote and/or perform public health and/or Christian objectives, including but not limited to Christian evangelism, edification and stewardship (all of such organizations collectively being the "Supported Class").

(B) Within the Supported Class, the Corporation may substitute Qualified Organizations, benefit new or additional Qualified Organizations, and vary the amount of its support among Qualified Organizations, in any manner consistent with Treasury Regulation Section 1.509(a)-4(d)(3), other Treasury Regulations, and Internal Revenue Service pronouncements.

(C) The Corporation shall be supervised or controlled in connection with one or more of the Qualified Organizations which are defined in the Supported Class.

1 of 5

(D)    The Corporation is authorized to accept gifts of property, whether real or personal, tangible or intangible, to be used in furtherance of its tax-exempt purpose.

(E)    The Corporation shall have and exercise to the extent necessary or desirable for the accomplishment of the aforesaid purposes, and to the extent that they are not inconsistent with the charitable purposes of the Corporation, any and all powers conferred upon non-stock corporations by the Maryland General Corporation Law.

FOURTH:    The post office address of the principal office in this State is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. The resident agent of the Corporation in this State is Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. Said resident agent is a citizen of the State of Maryland and actually resides therein.

FIFTH:    The Corporation is not authorized to issue any capital stock.

SIXTH:    (A)    The business and affairs of the Corporation shall be managed under the direction of its Board of Directors ("Board"), consisting initially of RICHARD E. POLM, THERESA E. POLM and LEW SCHRUMM.

(B)    Notwithstanding anything in these Articles of Incorporation, the Charter, or the By-Laws to the contrary, control and management of the Corporation shall be vested in members of the Board who are officers, directors, and/or trustees of Qualified Organizations within the Supported Class ("Managing Directors"). Managing Directors shall always have majority vote on the Board and on every committee of the Board.

(C)    Election and appointment of the Board, the maximum and minimum number, and the classification thereof, shall be set forth in the Corporation's By-Laws. The number of members of the Board may be increased or decreased in the manner provided in the By-Laws, but shall never be less than the minimum number required by the Maryland General Corporation Law.

SEVENTH:    Notwithstanding any other provision of these Articles, the powers of the Corporation shall be subject to the following terms, provisions and limitations:

(A)    No part of the net earnings of the Corporation shall inure to the benefit of any member, director or officer of the Corporation, or any private person, except that reasonable compensation may be paid for services actually rendered to or for the Corporation, and no member, director or officer of the Corporation or any private person shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the Corporation.

(B)    Except as provided and permitted under Code Sections 501(h) and 4911, no substantial part of the activities of the Corporation shall be the carrying on

of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidates for public office.

        (C)     The Corporation shall not directly or indirectly conduct or carry on any activities not permitted to be conducted or carried on (i) by an organization exempt from federal income taxation under Code Section 501(c)(3) of the Code, specifically Code Section 509(a)(3); or (ii) by an organization, contributions to which are deductible under Code Section 170(c)(2).

        EIGHTH:     Upon the dissolution of the Corporation, the Board shall, after paying or making provision for the payment of all of the liabilities of the Corporation, distribute all assets of the Corporation, pursuant to a plan of distribution adopted by the Directors, to any Qualified Organization within the Supported Class, or to the federal government, or to a state or local government. Any assets not so disposed of shall be disposed of by the Circuit Court of the county in which the principal office of the Corporation is then located, exclusively for the purposes specified in such plan of distribution (or if there is no plan of distribution, for purposes similar or analogous to the purposes described in Article THIRD above), as determined by such court.

        NINTH:     To the maximum extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation Law, no director or officer of the Corporation shall have any liability to the Corporation or its members for money damages. This limitation on liability applies to events occurring at the time a person serves as a director or officer of the Corporation whether or not such person is a director or officer at the time of any proceeding in which liability is asserted. No amendment or repeal of this Article NINTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article NINTH, shall apply to or affect in any respect the liability of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

        TENTH:     To the maximum extent permitted by the Maryland General Corporation Law, the Corporation shall (i) indemnify its currently acting, and its former, directors and officers against any and all liabilities and expenses incurred in connection with their services in such capacities, and shall indemnify its employees and agents and persons who serve and have served, at its request as a director, officer, partner, trustee, employee or agent of another corporation, partnership, joint venture or other enterprise, and (ii) advance expenses to its directors, officers and other indemnified persons, if any. In addition, the Corporation may, by By-Law resolution or agreement, make further provision for indemnification of directors, officers, employees and agents. No amendment or repeal of this Article TENTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article TENTH, shall apply to or affect in any respect the indemnification of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

ELEVENTH:  The Corporation reserves the right to make from time to time, by the vote or written assent of a majority of its Board, any amendments to these Articles which may now or hereafter be authorized by law.

TWELFTH:    If, for any reason, the Corporation does not qualify as a supporting organization under Code Section 509(a)(3), then the Board shall attempt to qualify the Corporation as either a "private operating foundation" under Code Section 4942(j), or as a private foundation qualifying under Code Section 170(b)(1)(E)(ii), a so-called "conduit foundation," including, for example, amending this organizing instrument to qualify the Corporation as a private operating foundation or a conduit foundation.  If, for any reason, the Corporation does not qualify as a supporting organization or a conduit foundation, then the Board shall attempt to qualify the Corporation as a "private foundation" within the meaning of Code Section 509, and the Corporation's income for each taxable year shall be distributed at such time and in such manner as not to subject it to tax under Code Section 4942, the Corporation shall be prohibited from engaging in any act of self-dealing as defined in Code Section 4941(d), from retaining any excess business holdings as defined in Code Section 4943(c), from making any investments in such manner as to subject this Corporation to tax under Code Section 4944, and from making any taxable expenditures as defined in Code Section 4945(d)."

**SECOND**:    The undersigned, constituting all of the members of the Board of Directors of the Corporation, do hereby approve the amendment and restatement set forth above, and by their signature below do hereby evidence their waiver of any right to dissent from such action.

This document may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument.

*[the rest of this page intentionally left blank]*

WITNESS the execution hereof as of this 3rd day of March, 2008.

WITNESS:

_____          _____
                                          Richard E. Polm, Director

_____          _____
                                          Theresa E. Polm, Director

_____          _____
                                          Lew Schrumm, Director

_____          _____
                                          Harold L. Padgett, Director

_____          _____
                                          Pamela Palumbo, Director

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Articles of Amendment & Restatement of AOI.doc

5 of 5

```
                    *********************
                    ***   TX REPORT   ***
                    *********************


        TRANSMISSION OK

        TX/RX NO              0738
        DESTINATION TEL #
        DESTINATION ID
        ST. TIME             03/05 18:06
        TIME USE             08'43
        PAGES SENT            22
        RESULT               OK
```

EXHIBIT 2

to

POLM FAMILY FOUNDATION'S
MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

EMANUEL J. KALLINA, II •
ELLEN B. HENNESSEY
K. BRIGID PETERSON

Of Counsel:
ROBERT L. PEREZ •

• Also licensed to practice in D.C.
• Only licensed to practice in Louisiana
• Also Certified Public Accountant

# KALLINA & ASSOCIATES, LLC
## LAW OFFICE
### 1122 KENILWORTH DRIVE, SUITE 507
### TOWSON, MARYLAND 21204

STAFF:
Cheryl A. Jones
Antoinette C. Lew
Erin T. Mayer
Molly K. McCarter
Lorraine M. Smiok

(410) 377-2170
FAX: (443) 797-1147
E-MAIL: *administrator@kallinalaw.com*
*www.kallinalaw.com*

March 6, 2008

## FACSIMILE TRANSMISSION

**TO:**       Ms. Morris - IRS

**FROM:**     Cheryl Jones

**SUBJECT:**  Polm Family Foundation
             EIN No. 20-5661841

**PAGES:**    This cover sheet *plus* 7

---

Dear Mrs. Morris:

Pursuant to the call yesterday, attached is a copy of the certified Articles of Amendment &
Restatement for Polm Family Foundation, as filed with the Maryland State Department of
Assessments and Taxation earlier today.

Thank you.

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or
the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us
immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. We will reimburse
you for the postage. Thank you.

**This advice (including any attachments) is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties imposed under the
Internal Revenue Code or (ii) promoting, marketing, or recommending to another
party any transaction or matter addressed herein.**



State of Maryland
**Department of
Assessments and Taxation**

Charter Division

Martin O'Malley
*Governor*

C. John Sullivan, Jr.
*Director*

Paul B. Anderson
*Administrator*

Date: 03/06/2008


POLM FAMILY FOUNDATION, INC.
KALLINA & ASSOCIATES
1122 KENILWORTH DR.
STE.507
TOWSON                MD  21204

THIS LETTER IS TO CONFIRM ACCEPTANCE OF THE FOLLOWING FILING:

ENTITY NAME        : POLM FAMILY FOUNDATION, INC.
DEPARTMENT ID      : D11418563
TYPE OF REQUEST    : ARTICLES OF AMENDMENT AND RESTATEMENT
DATE FILED         : 03-06-2008
TIME FILED         : 11:11 AM
RECORDING FEE      : $100.00
EXPEDITED FEE      : $70.00
COPY FEE           : $25.00
POSTAGE FEE        : $5.00
FILING NUMBER      : 1000361996057794
CUSTOMER ID        : 0002096605
WORK ORDER NUMBER  : 0001539643


PLEASE VERIFY THE INFORMATION CONTAINED IN THIS LETTER. NOTIFY THIS DEPARTMENT
IN WRITING IF ANY INFORMATION IS INCORRECT. INCLUDE THE CUSTOMER ID AND THE WORK
ORDER NUMBER ON ANY INQUIRIES.

Charter Division
Baltimore Metro Area (410) 767-1350
Outside Metro Area (888) 246-5941

*301 West Preston Street-Room 801-Baltimore, Maryland 21201-2395*
*Telephone (410)767-4950 / Toll free in Maryland (888)246-5941*
*MRS (Maryland Relay Service) (800)735-2258 TT/Voice- Fax (410)333-7097*
*Website: www.dat.state.md.us*

0005051787

CACCPT

## ARTICLES OF AMENDMENT AND RESTATEMENT
### OF
### ARTICLES OF INCORPORATION
### OF
### POLM FAMILY FOUNDATION, INC.

POLM FAMILY FOUNDATION, INC., a Maryland non-stock corporation, having its principal office in Baltimore County, Maryland ("Corporation"), hereby certifies to the State Department of Assessments and Taxation of Maryland that:

**FIRST:**    The Articles of Incorporation of the Corporation are hereby amended and restated in their entirety to read as follows:

"**FIRST:**    The undersigned, Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204, being over eighteen (18) years of age and acting as incorporator, hereby forms a non-stock corporation under the Maryland General Corporation Law, as amended from time to time ("Maryland General Corporation Law").

**SECOND:**    The name of the Corporation is: POLM FAMILY FOUNDATION, INC.

**THIRD:**    (A)    The Corporation is organized and shall be operated exclusively for charitable or religious purposes which constitute public charitable purposes under the laws of the State of Maryland by conducting and supporting activities for the benefit of, to perform the functions of, and/or to carry out the purposes of (collectively, the "Qualified Purposes") the class of organizations ("Qualified Organizations") described in Section 501(c)(3) and qualified under Sections 509(a)(1) or 509(a)(2) of the Internal Revenue Code of 1986, as amended from time to time ("Code"), which support, promote and/or perform public health and/or Christian objectives, including but not limited to Christian evangelism, edification and stewardship (all of such organizations collectively being the "Supported Class").

(B)    Within the Supported Class, the Corporation may substitute Qualified Organizations, benefit new or additional Qualified Organizations, and vary the amount of its support among Qualified Organizations, in any manner consistent with Treasury Regulation Section 1.509(a)-4(d)(3), other Treasury Regulations, and Internal Revenue Service pronouncements.

(C)    The Corporation shall be supervised or controlled in connection with one or more of the Qualified Organizations which are defined in the Supported Class.

STATE OF MARYLAND

I hereby certify that this is a true and complete copy of the page document in 1.(C) in this office. DATED: 3/6/08

DEPARTMENT OF ASSESSMENTS AND TAXATION

BY: _____ , Custodian

This stamp replaces our previous certification system. Effective: 6/95

6

(D)    The Corporation is authorized to accept gifts of property, whether real or personal, tangible or intangible, to be used in furtherance of its tax-exempt purpose.

(E)    The Corporation shall have and exercise to the extent necessary or desirable for the accomplishment of the aforesaid purposes, and to the extent that they are not inconsistent with the charitable purposes of the Corporation, any and all powers conferred upon non-stock corporations by the Maryland General Corporation Law.

FOURTH:    The post office address of the principal office in this State is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. The resident agent of the Corporation in this State is Emanuel J. Kallina, II, whose post office address is 1122 Kenilworth Drive, Suite 507, Towson, Maryland 21204. Said resident agent is a citizen of the State of Maryland and actually resides therein.

FIFTH:    The Corporation is not authorized to issue any capital stock.

SIXTH:    (A)    The business and affairs of the Corporation shall be managed under the direction of its Board of Directors ("Board"), consisting initially of RICHARD E. POLM, THERESA E. POLM and LEW SCHRUMM.

(B)    Notwithstanding anything in these Articles of Incorporation, the Charter, or the By-Laws to the contrary, control and management of the Corporation shall be vested in members of the Board who are officers, directors, and/or trustees of Qualified Organizations within the Supported Class ("Managing Directors"). Managing Directors shall always have majority vote on the Board and on every committee of the Board.

(C)    Election and appointment of the Board, the maximum and minimum number, and the classification thereof, shall be set forth in the Corporation's By-Laws. The number of members of the Board may be increased or decreased in the manner provided in the By-Laws, but shall never be less than the minimum number required by the Maryland General Corporation Law.

SEVENTH:    Notwithstanding any other provision of these Articles, the powers of the Corporation shall be subject to the following terms, provisions and limitations:

(A)    No part of the net earnings of the Corporation shall inure to the benefit of any member, director or officer of the Corporation, or any private person, except that reasonable compensation may be paid for services actually rendered to or for the Corporation, and no member, director or officer of the Corporation or any private person shall be entitled to share in the distribution of any of the corporate assets upon dissolution of the Corporation.

(B)    Except as provided and permitted under Code Sections 501(h) and 4911, no substantial part of the activities of the Corporation shall be the carrying on

2 of 5

of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidates for public office.

    (C)  The Corporation shall not directly or indirectly conduct or carry on any activities not permitted to be conducted or carried on (i) by an organization exempt from federal income taxation under Code Section 501(c)(3) of the Code, specifically Code Section 509(a)(3); or (ii) by an organization, contributions to which are deductible under Code Section 170(c)(2).

    EIGHTH:  Upon the dissolution of the Corporation, the Board shall, after paying or making provision for the payment of all of the liabilities of the Corporation, distribute all assets of the Corporation, pursuant to a plan of distribution adopted by the Directors, to any Qualified Organization within the Supported Class, or to the federal government, or to a state or local government. Any assets not so disposed of shall be disposed of by the Circuit Court of the county in which the principal office of the Corporation is then located, exclusively for the purposes specified in such plan of distribution (or if there is no plan of distribution, for purposes similar or analogous to the purposes described in Article THIRD above), as determined by such court.

    NINTH:  To the maximum extent that limitations on the liability of directors and officers are permitted by the Maryland General Corporation Law, no director or officer of the Corporation shall have any liability to the Corporation or its members for money damages. This limitation on liability applies to events occurring at the time a person serves as a director or officer of the Corporation whether or not such person is a director or officer at the time of any proceeding in which liability is asserted. No amendment or repeal of this Article NINTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article NINTH, shall apply to or affect in any respect the liability of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

    TENTH:  To the maximum extent permitted by the Maryland General Corporation Law, the Corporation shall (i) indemnify its currently acting, and its former, directors and officers against any and all liabilities and expenses incurred in connection with their services in such capacities, and shall indemnify its employees and agents and persons who serve and have served, at its request as a director, officer, partner, trustee, employee or agent of another corporation, partnership, joint venture or other enterprise, and (ii) advance expenses to its directors, officers and other indemnified persons, if any. In addition, the Corporation may, by By-Law resolution or agreement, make further provision for indemnification of directors, officers, employees and agents. No amendment or repeal of this Article TENTH, or the adoption of any provision of the Corporation's Charter inconsistent with this Article TENTH, shall apply to or affect in any respect the indemnification of any director or officer of the Corporation with respect to any alleged act or omission which occurred prior to such amendment, repeal or adoption.

ELEVENTH: The Corporation reserves the right to make from time to time, by the vote or written assent of a majority of its Board, any amendments to these Articles which may now or hereafter be authorized by law.

TWELFTH: If, for any reason, the Corporation does not qualify as a supporting organization under Code Section 509(a)(3), then the Board shall attempt to qualify the Corporation as either a "private operating foundation" under Code Section 4942(j), or as a private foundation qualifying under Code Section 170(b)(1)(E)(ii), a so-called "conduit foundation," including, for example, amending this organizing instrument to qualify the Corporation as a private operating foundation or a conduit foundation. If, for any reason, the Corporation does not qualify as a supporting organization or a conduit foundation, then the Board shall attempt to qualify the Corporation as a "private foundation" within the meaning of Code Section 509, and the Corporation's income for each taxable year shall be distributed at such time and in such manner as not to subject it to tax under Code Section 4942, the Corporation shall be prohibited from engaging in any act of self-dealing as defined in Code Section 4941(d), from retaining any excess business holdings as defined in Code Section 4943(c), from making any investments in such manner as to subject this Corporation to tax under Code Section 4944, and from making any taxable expenditures as defined in Code Section 4945(d)."

**SECOND:** The undersigned, constituting all of the members of the Board of Directors of the Corporation, do hereby approve the amendment and restatement set forth above, and by their signature below do hereby evidence their waiver of any right to dissent from such action.

This document may be signed in one or more counterparts, each of which shall be deemed an original, and when taken together shall constitute one and the same instrument.

*[the rest of this page intentionally left blank]*

4 of 5

WITNESS the execution hereof as of this 3rd day of March, 2008.

WITNESS:

_____                    _____
                                             Richard E. Polm, Director

_____                    _____
                                             Theresa E. Polm, Director

_____                    _____
                                             Lew Schrumm, Director

_____                    _____
                                             Harold L. Padgett, Director

_____                    _____
                                             Pamela Palumbo, Director

F:\Work\Polm, Rick\Documents\Polm Family Foundation\Articles of Amendment & Restatement of AOI.doc

5 of 5

# CORPORATE CHARTER APPROVAL SHEET
## **EXPEDITED SERVICE**    ** KEEP WITH DOCUMENT **

DOCUMENT CODE _____ *13*    BUSINESS CODE _____

# D11418563

Close _____    Stock _____    Nonstock _____

P.A. _____  · Religious _____

Merging (Transferor) _____

_____

_____

_____

Surviving (Transferee) _____

_____

_____

_____

Affix Barcode Label Here

Affix Barcode Label Here

New Name _____

_____

_____

### FEES REMITTED

| | |
|---|---|
| Base Fee: | *100* |
| Org. & Cap. Fee: | |
| Expedite Fee: | *70* |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| *1* Certified Copies | *25* |
| Copy Fee: | |
| Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Mail Processing Fee: | *5* |
| Other: | |
| TOTAL FEES: | *200* |

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
         and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name

_____

_____ Other Change(s)

_____

_____

Credit Card _____    Check _X_    Cash _____

Code _____

Attention: _____

_____ Documents on _____ Checks

Approved By: _4_

Keyed By: _____

COMMENT(S):

Mail: Name and Address,
*Palm Family Foundation*
*Kallina + Associates*
*1122 Kenilworth Dr ste 507*
*Towson MD 21204*

Stamp Work Order and Customer Number HERE

```
            ***********************
            ***   TX REPORT   ***
            ***********************


TRANSMISSION OK

TX/RX NO              0741
DESTINATION TEL #
DESTINATION ID
ST. TIME             03/06 20:01
TIME USE             02'38
PAGES SENT               8
RESULT               OK
```