# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
POLM FAMILY FOUNDATION, INC.,       )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 08-0514 (RBW)
                                    )
UNITED STATES OF AMERICA and        )
THE INTERNAL REVENUE SERVICE        )
                                    )
            Defendants.             )
                                    )
_____)

## MEMORANDUM OPINION

The plaintiff, the Polm Family Foundation, Inc. ("Foundation"), filed this action on March 25, 2008, seeking a declaratory judgment pursuant to 26 U.S.C. § 7428 (2006), declaring that it qualifies as a tax-exempt organization under 26 U.S.C. § 501(c)(3) (2006) and as a supporting organization under 26 U.S.C. § 509(a)(3) (2006). See generally, Complaint ("Compl."). The plaintiff submitted its initial application to the Internal Revenue Service ("IRS") for tax-exempt status on or about April 10, 2007. Compl. at ¶ 5. Thereafter, the plaintiff and the IRS exchanged communications regarding the structure of the plaintiff's organization, and the plaintiff responded to all requests made by the IRS for further information for nearly a year after the initial application was submitted. Id. at ¶¶ 7-9, 12. However, the IRS never rendered a determination on the plaintiff's application. Id. at ¶ 17. Therefore, because 270 days had elapsed since the plaintiff submitted its initial application for tax exempt status with the IRS, and had timely responded to all requests made by the IRS for additional information, the plaintiff

filed this action.  Currently before the Court are the parties' cross-motions for summary judgment.[1]

Upon consideration of the parties' written submissions, the administrative record presented to the Court, and the applicable legal authority, the Court finds that the plaintiff does not meet the requirements of a supporting organization under § 509(a)(3) and is therefore considered a private foundation.[2]  Specifically, the plaintiff fails to satisfy the requirements under § 509(a)(3)(B)(ii) and § 509(a)(3)(C).[3]

"Under [§] 509(a), all organizations described in [§] 501(c)(3) are private foundations except those excluded under [§] 509(a)(1) through (4)."  Cockerline Mem'l Fund v. Comm'r of Internal Revenue, 86 T.C. 53, 58 (1986).  One of the exemptions from private foundation status is reserved for those § 501(c)(3) organizations that qualify as a supporting organizations under § 509(a)(3).  See § 509(a)(3)(A)-(C) (providing for three circumstances under which an organization may qualify as a supporting organization, only one of which need be satisfied). Section 509(a)(3) organizations are exempted from private foundation status, and therefore excused from the extensive regulation of private foundations, because "their exposure to public scrutiny and their dependence on public support [is believed to] keep them from the abuses to which private foundations [are]

---

[1] The Court considered the following papers filed in connection with this motion: the Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."); the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); the Plaintiff's Statement of Material Facts ("Pl.'s Stmt."); the United States' Motion for Summary Judgment ("Defs.' Mot."); the United States' Memorandum in Support of Its Motion for Summary Judgment ("Defs.' Mem."); the United States' Statement of Material Facts Not in Dispute ("Defs.' Stmt."); the Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"); the United States' Memorandum in Response to Plaintiff's Motion for Summary Judgment ("Defs.' Opp'n"); and the Administrative Record ("Record").

[2] The plaintiff's status as a tax-exempt organization under § 501(c)(3) is not in dispute.

[3] Because the plaintiff has failed to satisfy § 509(a)(3)(B) and § 509(a)(3)(C), it is unnecessary for the Court to give further attention to the question of whether the plaintiff has met the standard of § 509(a)(3)(A).

subject." Quarrie v. Comm'r of Internal Revenue, 603 F.2d 1274, 1277 (7th Cir. 1979), affirming 70 T.C. 182 (1978); see also Roe Found. Charitable Trust v. Comm'r of Internal Revenue, T.C. Memo 1989-566, 1989 WL 123012 (Oct. 19, 1989).  "The Treasury Regulations therefore provide that the supporting organization must be responsive to the needs of the public charity and intimately involved in its operations." Quarrie, 603 F.2d at 1277.

The plaintiff seeks to qualify as a supporting organization under § 509(a)(3)(B)(ii) ("Type II"), and therefore is required to prove that it is "organized . . . and . . . operated . . . exclusively for the benefit of, to perform the functions of, or carry out the purposes of one or more [publicly supported] organizations[,] . . .  is . . . supervised or controlled in connection with one or more such organizations . . . [and] is not controlled directly or indirectly by one or more disqualified persons" in order to qualify as a supporting organization.  Id.  The Court's review of the IRS's action (or inaction) is de novo, but it is limited to a review of the administrative record, see Airlie Found. v. IRS, 283 F. Supp. 2d 58, 61-62 (D.D.C. 2003), and the plaintiff bears the burden of proving that it satisfied all of the requirements necessary to qualify as a Type II supporting organization, see Tax Court Rule 217(b)(3).[4]   As explained below, the plaintiff has not proven that it has satisfied the requirements of § 509(a)(3)(B)(ii) or § 509(a)(3)(C) and therefore does not qualify as a supporting organization under § 509(a)(3), but is rather a private foundation.

---

[4] A previous version of Tax Court Rule 217 stated that the burden of proof was on the IRS if it failed to issue a determination.  See World Family Corp. v. Comm'r of Internal Revenue, 81 T.C. 958, 959, n.2 (1983) (citing to Tax Court Rule 217(c)(2)(ii) in discussing the burden of proof).  The current version of Rule 217 contains no such provision, and consequently, the petitioner to the IRS, the plaintiff here, retains the burden of proving its tax exempt status even when the IRS has failed to make a final determination. See Tax Court Rule 217(b)(3) (stating "[w]henever a trial is required in an action for declaratory judgment, such trial shall be conducted in accordance with . . . [Tax Court Rule 142(a)(1)]," which states that "[t]he burden of proof shall be on the petitioner, except as otherwise provided by statue or determined by the Court").

I.    The Requirements of § 509(a)(3)(B)(ii) Have Not Been Satisfied

"Because the nature of the qualifying relationships between the supporting and publicly supported organizations under [§] 509(a)(3)(B) may determine the applicable criteria under [§] 509(a)(3)(A), [the Court must] first consider [§] 509(a)(3)(B)." Cockerline, 86 T.C. at 58. The plaintiff claims that it is "supervised or controlled in connection with one or more [publicly supported] organizations," and therefore meets the qualifications of § 509(a)(3)(B)(ii). However, in order to satisfy this standard, "the control or management of the supporting organization must be vested in the same persons that control or manage the publicly supported organization[s]" to insure "that the supporting organization will be responsive to the needs and requirements of the publicly supported organizations." Treas. Reg. § 1.509(a)-4(h)(1); see also § 1.509(a)-4(f)(4) (stating that the "distinguishing feature [of a Type II supporting organization] is the presence of common supervision or control among the governing bodies of all organizations involved, such as the presence of common directors"). The relationship between a Type II supporting organization and its publicly supported organizations is often compared to "brother and sister organizations subject to common control." Cockerline, 86 T.C. at 59; see also Roe, 1989 WL 123012.

The plaintiff claims to meet this requirement of common supervision or control because of the structure of its Board. Pl.'s Mem. at 11. The plaintiff has structured its Board such that the managing directors, who are officers, directors, and/or trustees of the publicly supported organizations within the plaintiff's supported class, always have majority voting power over the other, non-managing directors, who are not required to be associated with the publicly supported beneficiaries. Id. However, all directors,

4

including the managing directors, are appointed by Richard Polm, a disqualified person under 26 U.S.C. § 4946 (2006),[5] who is not required to be associated with any publicly supported beneficiary within the plaintiff's supported class. Id. at 12; see Administrative Record at 160.  Additionally, the plaintiff elected to specify a broadly defined supported class rather than specifically naming each supported organization, see Administrative Record at 186 (The Foundation's Articles of Amendment and Restatement state that "the class of [supported] organizations . . . [are those that] support, promote and/or perform public health and/or Christian objectives, including but not limited to Christian evangelism, edification and stewardship (all of such organizations collectively being the 'Supported Class')."), a privilege afforded only to proven §§ 509(a)(B)(i) & (ii) supporting organizations, see § 1.509(a)-4(d).  Therefore, Mr. Polm is free to annually appoint the directors of the Foundation from an infinitely large number of public charities within its supported class, thereby decreasing any assurance that the plaintiff will remain responsive to the needs and requirements of its publicly supported organizations and limiting the scrutiny of members of its supported class, the policy underlying the adoption of the provision for such organizations.

While Type II supporting organizations are permitted to specify a supported class rather than naming its specific publicly supported organizations, when such an organization elects to define its supported class as broadly as the plaintiff has in this case, the power of appointment or election of the directors of the supporting organization who supply the common supervision or control must somehow be vested in or supervised by

---

[5] The Internal Revenue Code defines a disqualified person, for the purposes of this case, as a person who is "a substantial contributor to the foundation."  26 U.S.C. § 4946(a)(1)(A) (Additional definitions are provided in § 4946(a)(1)(A)-(I).); see also Administrative Record at 144 (plaintiff acknowledged to the IRS that Mr. Polm and Theresa E. Polm are disqualified persons with respect to the Foundation).

the common leaders of the organizations in order to insure that the supporting organization remains "subject to the scrutiny of [the] public charit[ies]," see Quarrie, 603 F.2d at 1277-78; see also § 1.509(a)-4(h), and that the substitution of beneficiaries within the supported class "is at all times controlled by a publicly supported beneficiary," Quarrie, 603 F.2d at 1278 (stating that Type II supporting organizations are permitted to specify beneficiary organizations by class, and substitute beneficiaries within the class because "such substitution is at all times controlled by [the] publicly supported beneficiar[ies]"). In fact, the combination of Mr. Polm's appointment power and the plaintiff's broadly defined class prevents the plaintiff from meeting the requirements of any type of supporting organization.[6]

"[T]he public scrutiny [over a supporting organization] derives from the publicly supported beneficiaries, which, in turn, oversee the activities of the supporting organization . . . [and] [t]he provisions of section 509(a)(3) and the regulations thereunder are designed to assure that the publicly supported beneficiaries of a section 509(a)(3) organization have both the ability and the motivation to do so." Quarrie, 70 T.C. at 190, aff'd, 603 F.2d 1274. The plaintiff's publicly supported organizations do not have adequate ability nor necessarily inherent motivation to oversee the activities of the supporting organization, for the directors who provide such common supervision and

---

[6] The identical appointment power vested in an individual who is not required to be associated with a publicly supported organization would bar the plaintiff from qualifying as a § 509(a)(B)(i) ("Type I") supporting organization, an organization more heavily controlled by the publicly supported beneficiaries than a Type II supporting organization, see § 509(a)(3)(B)(i); § 1.509(a)-4(g) (requiring the majority of the leadership of a Type I supporting organization to be appointed or elected by individuals governing or at least associated with a publicly supported organization), as well as prevent the plaintiff from qualifying as a § 509(a)(B)(iii) ("Type III") supporting organization, an organization under less supervision and control by the publicly supported beneficiaries than a Type II supporting organization, see § 509(a)(3)(B)(iii); Quarrie, 603 F.2d at 1278-79 (stating that a Type III organization must designate its publicly supported organizations by name).

control can be replaced every year with leaders from an infinite number of publicly supported organizations, and are appointed by an individual not required to be associated with any publicly supported beneficiary. Consequently, the plaintiff does meet the requirements under § 509(a)(3)(B)(ii) and cannot qualify as a supporting organization.

## II.  The Requirements Under § 509(a)(3)(C) Have Not Been Satisfied

While the plaintiff is considered a private foundation based on the fact that it does not meet the requirements under § 509(a)(3)(B), the plaintiff also fails to satisfy the requirements under § 509(a)(3)(C), a failure which similarly prevents the plaintiff from qualifying as a supporting organization. Section 509(a)(3)(C) states that the plaintiff may "not [be] controlled directly or indirectly by one or more disqualified persons (as defined in [§] 4946)." The Treasury Regulations state that an organization will be considered "controlled," within the meaning of § 509(a)(3)(C), when the disqualified person "may require [the] organization to perform any act which significantly affects its operation or may prevent such organization from performing such act." § 1.509(a)-4(j)(1). The same section concludes by stating that "all pertinent facts and circumstances . . . will be taken into consideration in determining whether a disqualified person does in fact indirectly control an organization." Id.

Mr. Polm is disqualified person as defined by § 4946. See Pl.'s Mem. at 12-13; Administrative Record at 144. Nonetheless, Mr. Polm has the power to appoint all directors, including managing directors, to the Foundation's Board, Pl.'s Mem. at 12; Administrative Record at 160, serves as the President of the Foundation, see Administrative Record at 55, 163 (stating that the President "shall have general charge and control of all the [plaintiff's] affairs and properties . . . [and] shall have the powers

7

and duties of supervision and management generally incident to the officer of president"), and is initially in control of the business and affairs of the Foundation in conjunction with two other directors, one of whom is also a disqualified person under § 4946, see id. at 144, 187 (The amended Articles of Incorporation filed with the State of Maryland on March 6, 2008 state that the business and affairs of the Foundation will be "managed under the [initial] direction of . . . Richard E. Polm, Theresa E. Polm, and Lew Schrumm" even though both Richard and Theresa Polm are disqualified persons.).  In light of the Treasury Regulations governing what amounts to "control" with respect to § 509(a)(3)(C), the Court considers the extensive power and authority of Mr. Polm to constitute indirect control over the Foundation in violation of § 509(a)(3)(C).

Based on its failure to establish that it satisfies either § 509(a)(3)(B) or (C), the plaintiff does not qualify as a supporting organization and is therefore considered a private foundation.  The defendant is therefore entitled to summary judgment, and the plaintiff's cross-motion for summary judgment must be denied.[7]

_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[7] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.